UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| ) | | |
| IN RE: SEARCH OF THE PREMISES ) | Case No.: 25-MC-91442-LTS | |
| LOCATED AT 2260 E SANTA PAULA ) | | |
| DR, BREA, CA 92821 ) | **FILED UNDER SEAL** | |
| ) | | |
| _____ ) | | |

**MOTION TO INTERVENE AND ENJOIN THE GOVERNMENT SEARCH OF
COMMUNICATIONS PROTECTED BY MARITAL PRIVILEGE
WITH INCORPORATED MEMORANDUM OF LAW**

Now comes the Movant, Nowel Milik, by and through undersigned counsel, pursuant to

Fed. R. Crim. P. 41(g), and hereby respectfully moves the Court for an order allowing Mr. Milik

to intervene and enjoin any review by the government investigative team of Mr. Milik's private,

confidential communications with his wife, which are presumptively protected by the marital

communications privilege. *See, e.g.*, *United States v. Wood*, 924 F.2d 399, 401 (1st Cir. 1991)

(marital communications privilege "protects the confidentiality of private communications made

between spouses during their marriage"). Any such spousal communications should be subject

to review only by filter attorneys segregated from the government's investigative team.

**REQUEST FOR ORAL ARGUMENT**

Mr. Milik respectfully requests that oral argument be held on this Motion.

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

Undersigned counsel conferred with the government and the government opposes the

relief requested herein.

1

**MEMORANDUM OF LAW**

A Rule 41(g) motion "is the proper way to come before the court to seek an injunction regarding the government's use of a filter team to review seized documents." *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1245 n.6 (11th Cir. 2021); *see also Matter of O'Donovan*, 635 F. Supp. 3d 40 (D. Mass. 2022) (addressing challenge to government's search protocol under Rule 41(g)). In ruling upon such a motion, courts have applied the familiar four-factor test for obtaining a preliminary injunction. *See In re Sealed Search Warrant*, 11 F.4th at 1248; *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 171 (4th Cir. 2019). Accordingly, Mr. Milik must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## I.      Background.

On September 4, 2025, the Honorable Magistrate Judge Brianna Fuller Mircheff, in the Central District of California,[1] issued a search warrant for Mr. Milik's residence. The warrant, attached hereto as Exhibit A, authorized seizure of "evidence, contraband, fruits, or instrumentalities" of alleged wire fraud, money laundering, securities fraud, false statements, obstruction of justice, or conspiracy to commit those offenses. The warrant extended to "[a]ny digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Target Offenses . . . ." The warrant was executed on September 9, 2025, and agents seized

---

[1] While the warrant was issued and executed in the Central District of California, the government investigation is based in the District of Massachusetts. The parties, accordingly, jointly consent to the jurisdiction of this Court over the instant motion.

Mr. Milik's cellular telephone.

Upon notice of the warrant's execution, undersigned counsel promptly notified the government that Mr. Milik's phone likely contained privileged information, including confidential communications with his wife protected by the marital communications privilege.[2] The government has taken the position that the marital communications privilege does not apply during the investigatory stage. In other words, the government has refused to institute any protocol to protect confidential and privileged marital communications from review by the prosecution team. The government further requested that Mr. Milik seek Court intervention to the extent he believed his confidential and private marital communications are privileged and shielded from review by the government prosecution team.

## II. Argument.

### A. Mr. Milik is likely to succeed in establishing that review of his confidential communications with his wife violates the marital communications privilege.

There are "two marital privileges recognized under the Federal Rules of Evidence": (1) the "spousal testimonial privilege," and (2) "the marital communications privilege." *United States v. Pineda-Mateo*, 905 F.3d 13, 21 (1st Cir. 2018). The first privilege is strictly testimonial. "It allows one spouse to refuse to testify adversely against the other in criminal or related proceedings . . . ." *Id.* (citation omitted). But "[t]he marital communications privilege . . . is separate and distinct" from the spousal testimonial privilege, *United States v. Picciandra*,

---

[2] Mr. Milik also notified the government that his phone likely contained attorney-client privileged communications. Accordingly, the government agreed to filter out all communications with lawyers identified by Mr. Milik and segregate such communications from the prosecution team. The government would not agree to similarly segregate the marital communications.

788 F.2d 39, 43 (1st Cir. 1986), and it "protects the confidentiality of private communications made between spouses during their marriage." *United States v. Wood*, 924 F.2d 399, 401 (1st Cir. 1991). "Because marital communications are presumptively confidential[,] the government has the burden of demonstrating that they are not." *United States v. Fomichev*, 899 F.3d 766, 771 (9th Cir. 2018) (citation omitted).

As the Supreme Court has explained, the "basis" of the marital communications privilege "is the protection of marital confidences, regarded as *so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails*." *Wolfle v. United States,* 291 U.S. 7, 14 (1934) (emphasis added); *see also, e.g.*, *Fomichev*, 899 F.3d at 772 ("[T]he marital communications privilege recognizes that society has an enormously strong interest in preserving a particular social institution—here, the institution of marriage. We afford special protection to private communications exchanged in the confines of . . . these relationships because the relationships are uniquely important, and because the law has long recognized that they will be compromised if spouses . . . are not secure in the knowledge that their communications will be kept confidential." (citation omitted)).

Unlike the spousal testimonial privilege which is, on its face, strictly testimonial, the marital communications privilege applies to documentary evidence. *See Wood*, 924 F.2d at 401 (expressing "doubt" that letter between spouses "was admitted properly," but finding any error harmless); *United States v. Montgomery*, 384 F.3d 1050, 1056–57 (9th Cir. 2004) (finding letter between spouses to be within privilege); *United States v. Pugh*, 945 F.3d 9, 18–19 (2d Cir. 2019) (finding privilege did not apply to draft letter absent "evidence that [husband] intended to send the draft" (citation omitted)).

The rationale underlying the marital communications privilege applies equally to the present investigatory stage as it does to in-court proceedings. *See United States v. Griffin*, 440 F.3d 1138, 1144 (9th Cir. 2006) ("assum[ing], without deciding," that "the marital communications privilege is not merely a privilege protecting against the introduction of evidence at trial or before the grand jury" but instead "is a broader privilege, protecting against disclosure of recordings or documents containing confidential marital communications to an adverse party during an investigation, whether or not those recordings or documents are eventually introduced into evidence"); *SEC v. Lavin*, 111 F.3d 921, 923 (D.C. Cir. 1997) (finding privilege potentially applicable to SEC subpoena requiring disclosure of recorded conversations); *Kasza v. Browner*, 133 F.3d 1159, 1179–80 (9th Cir.1998) (Tashima, J., concurring) ("These privileges [including the marital communication privilege] exist not because we fear the impact that certain kinds of information might have on a trial. Rather, we are motivated by a more general social policy goal of keeping certain kinds of information secret. Secret from the court. Secret from the jury. Secret from the world.").

Indeed, a contrary rule, allowing the government to search and review confidential communications between spouses, but prohibiting those communications from being entered into evidence at an eventual trial, would do little to "ensur[e] that spouses . . . feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *United States v. Breton*, 740 F.3d 1, 10 (1st Cir. 2014) (citation omitted). Indeed, in a criminal justice system where approximately 98% of federal criminal cases end in guilty pleas,[3]

---

[3] *See* NPR, *The vast majority of criminal cases end in plea bargains, a new report finds* (Feb. 22, 2023), *available at* https://www.npr.org/2023/02/22/1158356619/plea-bargains-criminal-cases-

such a construction of the privilege would yield little practical protection to marital confidences. To the contrary, it would leave the government free to review all such confidential communications and use them to further its investigation. Few restrictions would exist on the government's use of spousal communications, except in the increasingly rare event of a criminal trial. Mr. Milik respectfully submits that this result is not compelled by any binding precedent, and it would undermine the important interests underlying the longstanding recognition of the marital communications privilege.

Consistent with the foregoing, several district courts have held that the marital communications privilege prohibits an adverse party from accessing confidential communications between husband and wife. *See Matter of Search of Info. Associated With "Staceypromrenke@gmail.com" Located at Google, Inc.*, No. 16-MJ-00073, 2016 WL 9752136, at *4 (W.D. Va. June 21, 2016) ("To protect the marital communications privilege, I will order that the filter team also must review all email communications between [the spouses] contained in the records disclosed to determine whether they were made in confidence or whether they should be disclosed pursuant to the joint criminal participation exception."); *SEC v. Karroum*, No. 15-590, 2015 WL 8483246, at *3 (D.D.C. Dec. 9, 2015) ("[R]esolving the contours of the marital privilege is unnecessary here because the SEC's protocol includes a privilege review team of attorneys unrelated to the investigation who will ensure that communications between [defendant] and his wife . . . will be removed from the production . . . ." (citation omitted)); *Schall v. Nodak Ins. Co.*, No. 22-CV-317, 2024 WL 2355714, at *4 (D. Neb. May 23, 2024)

---

justice#:~:text=In%20any%20given%20year%2C%2098%25%20of%20criminal,new%20report %20from%20the%20American%20Bar%20Association.

6

(holding in the context of civil requests for production "that Plaintiff has properly invoked the marital confidential communications privilege as to his communications, such as text messages or other electronic messages, exchanged only between him and his wife"); *Smartdesks, Inc. v. CBT Supply, Inc.*, No. 05-3456, 2009 WL 10682042, at *3 (D. Md. Feb. 24, 2009) (observing in context of civil requests for production, "[i]f emails at issue . . . were indeed intended to be confidential between husband and wife, the marital communications privilege applies . . . .").

Mr. Milik acknowledges that one Judge of this Court has opined that both the spousal testimonial privilege and the marital communications privilege "are testimonial and not constitutional," rejecting a defense argument that "[t]he government's review and retention of spousal emails seized pursuant to a search warrant" was grounds for suppression. *United States v. Wilson*, 505 F. Supp. 3d 3, 12 (D. Mass. 2020) (Gorton, J.). But *Wilson* should not govern here. For one thing, *Wilson* involved an after-the-fact challenge to the government's review of spousal communications, seeking (a) "blanket suppression" and (b) disqualification of the prosecutors. *See id.* at 12-13. Here, by contrast, Mr. Milik is asserting the privilege at his earliest opportunity in an effort to prevent any infringement before it infects the government's investigation. Second, the only authority cited by *Wilson* in support of its characterization of the marital communications privilege as solely testimonial was *Trammel v. United States*, 445 U.S. 40 (1980). But *Trammel* importantly dealt only with the spousal testimony privilege, not the marital communications privilege. *See id.* at 43 (appeal from order allowing wife to "testify in support of the Government's case to any act she observed during the marriage and to any communication 'made in the presence of a third person,'" but holding "confidential

7

communications between petitioner and his wife . . . to be privileged and inadmissible"); *id.* at 45 n.5 ("The privilege as to confidential marital communications is not at issue in the instant case . . . .").

**B.** **Mr. Milik and his wife are likely to suffer irreparable harm absent the requested injunctive relief.**

Once a government intrusion on privileged communications occurs, there is simply no way to "unring the bell." *Maness v. Meyers*, 419 U.S. 449, 460 (1975). Several federal courts have held that infringement upon attorney-client privileged communications, in itself, constitutes irreparable harm sufficient to support issuance of an injunction or other similar relief. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) (concluding that a party had demonstrated the likelihood of irreparable harm predicated on "the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party"), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (explaining that "forced disclosure of privileged material may bring about irreparable harm"); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960-61 (3d Cir. 1984) (ruling that law firm had demonstrated likelihood of irreparable harm where government seized thousands of files containing privileged information); *Matter of 636 South 66th Terrace, Kansas City*, 835 F. Supp. 1304, 1306 (D. Kan. 1993) ("[I]nvasion of the attorney-client privilege through a search and seizure generates an irreparable injury to the possessor of the privilege . . . ."). Mr. Milik submits that the same analysis should apply to privileged marital communications. *See Griffin*, 440 F.3d at 1142 (finding a "real possibility" of irreparable harm from disclosure of spousal letters).

**C.** **The balance of equities weighs in favor of granting injunctive relief.**

The harm to Mr. Milik and his wife outweighs any harm to the government that might result from requiring spousal communications to be reviewed, in the first instance, by a filter team. The government cannot credibly claim harm from an order requiring confidential marital communications be reviewed in this manner.[4]

**D.** **The requested injunctive relief will serve the public interest.**

The relief requested by Mr. Milik supports the important public interests underlying the marital communications privilege. *See supra* page 4. By contrast, government investigators have no valid interest in reviewing purely confidential communications between Mr. Milik and his wife. To the extent the government claims that any confidential communication bears some relevance to the matter under investigation, the taint team can determine whether or not any exception to the privilege applies.

**III.** **Conclusion.**

For the foregoing reasons, Mr. Milik respectfully requests an order compelling the government to segregate any and all communications by and between Mr. Milik and his wife, ordering that any and all such communications be subject to a taint-review protocol, and prohibiting the government investigation team from reviewing any such materials unless and until any such communication is cleared through the taint review process.

---

[4] Indeed, the parties reached a preliminary agreement regarding a filter review protocol for attorney-client communications. Prior to filing the instant pleading, Mr. Milik shared language he intended to include in this pleading describing that protocol to ensure it matched the government's understanding of the agreement. In response, the government notified Mr. Milik that it no longer intended to have any potentially privileged attorney-client communications reviewed by the filter team, though the government further advised that it would alert Mr. Milik if it later decided to initiate a filter review for attorney-client communications.

Respectfully Submitted,  
Nowel Milik,  
By His Attorney,

**/s/ Robert M. Goldstein**  
Robert M. Goldstein, Esq.  
Mass. Bar No. 630584  
20 Park Plaza, Suite 1000  
Boston, MA 02116  
(617) 742-9015  
rmg@goldstein-lawfirm.com

Respectfully Submitted,  
Nowel Milik,  
By His Attorney,

**/s/ Michael Pabian**  
Michael Pabian, Esq.  
Mass. Bar No. 684589  
20 Park Plaza, Suite 1000  
Boston, MA 02116  
(617) 227-3700  
pabianlaw38@gmail.com

Dated: September 19, 2025

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby certify that on this date, September 19, 2025, a copy of the foregoing document has been served via electronic mail on Assistant United States Attorneys Ian Stearns and Kaitlin O'Donnell.

**/s/ Robert M. Goldstein**  
Robert M. Goldstein, Esq.