UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE: SEARCH OF THE PREMISES | ) | No. 25-MC-91442-LTS |
| LOCATED AT 2260 E SANTA PAULA | ) | |
| DR, BREA, CALIFORNIA 92821 | ) | **Filed Under Seal** |
| | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO INTERVENOR'S
MOTION TO ENJOIN SEARCH OF MARITAL COMMUNICATIONS**

LEAH B. FOLEY
United States Attorney

IAN J. STEARNS
KAITLIN R. O'DONNELL
Assistant United States Attorneys

**<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION…………………………………………………………………...1

II. BACKGROUND...……………………………………………………………….....1

III. LEGAL STANDARD...…………………………………………………………...2

IV. ARGUMENT...……………………………………………………….………...3

    A.     Intervenor Has Not Satisfied His Burden on the Merits…………………………..3

        1.     Intervenor's Position is Contrary to Well-Established Precedent…………4

        2.     A Filter Review for Marital Communications is Unwarranted...………..10

    B.     Intervenor Has Not Met His Burden to Demonstrate Irreparable Harm…………16

    C.     Intervenor Has Not Met His Burden to Demonstrate that
the Balance of Equities and Public Interest Warrant Injunctive Relief….………18

V. CONCLUSION…………………………………………………………….……20

# <u>TABLE OF AUTHORITIES</u>

<u>Cᴀsᴇs</u>

Charlesbank Equity Fund II v. Blinds To Go, Inc.,
370 F.3d 151 (1st Cir. 2004)…………………………………………………...……..16

Cushing v. Packard,
30 F.4th 27 (1st Cir. 2022)…….................................................................................3

In re Sealed Search Warrant & App.
for a Warrant by Tel. or Other Reliable Elec. Means ("Optima"),
11 F.4th 1235 (11th Cir. 2021)………………………...………………………………….2, 3

In re Search of Elec. Commc'ns in
the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.,
802 F.3d 516 (3d Cir. 2015)…………………………………………………………..8

In re Search of Information Associated with "Staceypromrenke@gmail.com",
2016 WL 9752136 (W.D. Va. June 21, 2016)………………………………………...…….9

In re Search Warrant Issued June 13, 2019,
942 F.3d 159 (4th Cir. 2019)………………………………………………………….2

Martino v. United States,
No. 24-1404, 2024 WL 3963681 (3d Cir. Aug. 28, 2024)…………………...……5, 7, 17

Mazurek v. Armstrong,
520 U.S. 968 (1997)……………………………………………………………...……..3

Munaf v. Geren,
553 U.S. 674 (2008)………………………………………………………………...2

New Comm Wireless Servs., Inc. v. SprintCom, Inc.,
287 F.3d 1 (1st Cir. 2002)……………………………………………………...…15

Port v. Heard,
764 F.2d 423 (5th Cir. 1985)………………………………………………………5

Rosario-Urdaz v. Rivera-Hernandez,
350 F.3d 219 (1st Cir. 2003)……………………………………………..………..16

Schall v. Nodak Ins. Co.,
2024 WL 2355714 (D. Neb. May 23, 2024)……...………………………………10

<u>Simpson v. Neal,</u>
986 F.2d 1424 (7th Cir. 1993)…………………………………………..………5

<u>Trammel v. United States,</u>
445 U.S. 40 (1980)…………………………………………………..6, 10, 11, 18

<u>United States v. Acker,</u>
52 F.3d 509 (4th Cir. 1995)…………………………………………………...5

<u>United States v. Banks,</u>
556 F.3d 967 (9th Cir. 2009)………………………………………….…5

<u>United States v. Bey,</u>
188 F.3d 1 (1st Cir. 1999)………………………………………..4, 11, 18

<u>United States v. Breton,</u>
740 F.3d 1 (1st Cir. 2014)……………………………….…4, 5, 8, 16, 18

<u>United States v. Carlson,</u>
946 F. Supp. 2d 1115 (D. Or. 2013)…………………………..…………6

<u>United States v. Doe,</u>
478 F.2d 194 (1st Cir. 1973)…………………………………………5

<u>United States v. Ellefsen,</u>
2008 WL 2977347 (W.D. Mo. July 30, 2008)…………………………………..7

<u>United States v. Griffin,</u>
440 F.3d 1138 (9th Cir. 2006)……………………………...…………..18

<u>United States v. Hamilton,</u>
19 F.3d 350 (7th Cir. 1994)………………………………………...5

<u>United States v. Lefkowitz,</u>
618 F.2d 1313 (9th Cir. 1980)……………………………………...5, 6

<u>United States v. Marashi,</u>
913 F.2d 724 (9th Cir. 1990)…………………………….………5, 6

<u>United States v. Mavroules,</u>
813 F. Supp. 115 (D. Mass. 1993)……………………………………...10

<u>United States v. Montgomery,</u>
384 F.3d 1050 (9th Cir. 2004)……………………………………...8

United States v. Picciandra,
788 F.2d 39 (1st Cir. 1986)……………………………………………………..10, 11

United States v. Pugh,
945 F.3d 9 (2d Cir. 2019)…………………………………………………...…………8

United States v. Rakes,
136 F.3d 1 (1st Cir. 1998)………………………………………………….....…11

United States v. Squillacote,
221 F.3d 542 (4th Cir. 2000)………………………………………………………….7

United States v. White,
974 F.2d 1135 (9th Cir. 1992)…………………………………………...……….5

United States v. Wilson,
505 F. Supp. 3d 3 (D. Mass. 2020)……………………………………..……6, 7, 8, 19

Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,
645 F.3d 26 (1st Cir. 2011)……………………………………………………2, 16

**STATUTES, RULES, AND OTHER AUTHORITIES**

Fed. R. Crim. P. 41……………………………………………………………...…………1, 2

Fed. R. Evid. 501……………………………………………………………….…4

98 Corpus Juris Secundum, Witnesses § 304……………………………………….....…7

## I.    <u>INTRODUCTION</u>

This sealed MBD matter arises from an insider trading, money laundering, and obstruction of justice investigation. Pursuant to a search warrant, law enforcement seized the cell phone of Intervenor Nowel Milik. Under Fed. R. Crim. P. 41 and the standard for preliminary injunctions, Intervenor now moves to enjoin the government's review of his marital communications, contending that a filter review for the marital communications privilege is warranted.

Intervenor's motion must satisfy the four-part test for the extraordinary relief it seeks, and it must satisfy that burden by a clear showing on each factor. But his motion does not satisfy that burden by a clear showing as to any of the four factors, much less all of them. As to the merits, well-established precedent—from the Supreme Court, across circuits, and in this District— provides that the marital communications privilege is an evidentiary privilege that does not inhibit the government from gathering and reviewing evidence at this stage of an investigation. Intervenor's motion fares no better as to the additional three factors on which he must prevail. Accordingly, and for the reasons more fully set forth below, Intervenor's motion should be denied.

## II.    <u>BACKGROUND</u>

On September 4, 2025, Magistrate Judge Fuller Mircheff authorized a search warrant for Intervenor's residence in the Central District of California. Mot. Ex. A at 2. The search warrant authorized law enforcement to seize all evidence, contraband, fruits, or instrumentalities of certain target offenses, including obstruction of justice, securities fraud, money laundering, and conspiracy to commit those offenses, for the period from April 1, 2022, to the present. <u>Id.</u> at 7. The search warrant authorized law enforcement to search any digital device which is itself or contains such evidence, including Intervenor's cell phone ending in x9925. <u>Id.</u> at 9. The search warrant provided for a specified search procedure for digital devices. <u>See</u> <u>id.</u> at 11–15.

1

On September 9, 2025, FBI agents executed the search warrant, seizing Intervenor's cell phone. A forensic image of the phone is located in the District of Massachusetts. Thereafter, Intervenor's counsel contacted government counsel and provided a list of attorneys to be included as part of a filter protocol for attorney-client privileged communications. Because all but one of the attorneys on the list were employees of and/or associated with Attorney Goldstein's law firm, government counsel notified Intervenor's counsel that it would not, at this stage, conduct a filter review of attorney-client communications, and would instead simply segregate all such communications and attachments from the investigation team. The parties conferred regarding the issue of the marital communications privilege and did not reach agreement. On September 19, 2025, Intervenor's counsel filed a Rule 41 motion to enjoin the government's search of marital communications on the cell phone, and to initiate a filter review for such communications. The government has agreed not to review such communications pending the resolution of his motion.

### III.    LEGAL STANDARD

The preliminary injunction standard applies to Intervenor's Rule 41 motion to enjoin the government's review of search warrant material and to impose a filter protocol on marital communications therein. See In re Sealed Search Warrant & App. for a Warrant by Tel. or Other Reliable Elec. Means ("Optima"), 11 F.4th 1235, 1248 (11th Cir. 2021) (explaining that preliminary injunction standard applies to Rule 41 motion to modify filter protocol); In re Search Warrant Issued June 13, 2019, 942 F.3d 159, 170–71 (4th Cir. 2019) (same).

"A preliminary injunction is an 'extraordinary and drastic remedy.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)); accord Optima, 11 F.4th at 1248. Injunctive relief "should

not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion" on each of four factors. <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original).

The four factors that Intervenor must carry the burden of persuasion on by a clear showing are: "(1) [his] likelihood of success on the merits; (2) the likelihood of [his] suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." <u>Cushing v. Packard</u>, 30 F.4th 27, 35–36 (1st Cir. 2022); <u>accord</u> <u>Optima</u>, 11 F.4th at 1248.

## IV. <u>ARGUMENT</u>

Intervenor's motion seeking the extraordinary remedy of injunctive relief does not satisfy his burden of persuasion by a clear showing on any of the four factors, much less all of them. As to the merits, the overwhelming weight of precedent holds that the marital communications privilege is an evidentiary privilege, and therefore, does not warrant a filter review of search warrant returns. Further, Intervenor's proposed filter review for marital communications would, in practice, hamper the truth-seeking function of federal Grand Jury investigations significantly and in ways not contemplated by his motion. The remaining three factors do not favor Intervenor's position any more than the merits. Review of his marital communications will not cause him irreparable harm, and he will retain his ability to argue that the privilege bars the admissibility of any such communications in a future proceeding, if any. Finally, the balance of equities and the public interest do not support a filter review for marital communications in this investigation or others, which is partly why Intervenor's motion provides so little precedent for the relief it seeks.

### A. <u>Intervenor Has Not Satisfied His Burden on the Merits</u>

The merits factor turns on the following issue: whether the marital communications privilege triggers a filter review and prevents the investigation team from reviewing spousal communications at the pre-charge phase of a criminal investigation, or whether it is an evidentiary privilege that bears on the admissibility of marital communications at a later phase of a proceeding,

3

if any. Intervenor must carry his burden by a clear showing to establish that the answer is the former. But the weight of legal authority establishes that the answer is the latter: the marital communications privilege is an evidentiary privilege that bears on issues of admissibility. And even if this Court were deciding the issue on a blank slate, which it is not, logic likewise compels the denial of his motion because, as demonstrated below, a filter protocol for marital communications in this investigation and others would not work practically.

### 1. Intervenor's Position is Contrary to Well-Established Precedent

"The common law recognizes two related but distinct marital privileges: (1) the spousal testimony privilege, which allows one spouse to refuse to testify adversely against the other in criminal or related proceedings; and (2) the marital communications privilege, which permits a defendant to refuse to testify, and allows a defendant to bar his spouse or former spouse from testifying, as to any confidential communications made during their marriage." United States v. Breton, 740 F.3d 1, 9–10 (1st Cir. 2014). Only the latter privilege is at issue here, and the government acknowledges that the marital communications privilege applies similarly to confidential written communications introduced into evidence equally as it does to oral communications introduced through testimony. Mot. at 4. In other words, for example, an inculpatory written statement from one spouse to the other that is offered as an exhibit is treated no differently than the same oral statement between spouses that is offered through testimony.

It well-established that the marital communications privilege is an "evidentiary privilege" governed by Fed. R. Evid. 501. See, e.g., United States v. Bey, 188 F.3d 1, 5 (1st Cir. 1999) (explaining that marital communications privilege is an "evidentiary privilege," and that the admission of evidence in violation of such a privilege is, like other evidentiary rulings, reviewed for abuse of discretion). Unlike the attorney-client privilege, for example, which "finds its

grounding in the Sixth Amendment right to effective assistance of counsel," the marital communications privilege is evidentiary and not constitutionally-based. See, e.g., Martino v. United States, No. 24-1404, 2024 WL 3963681, at *3 (3d Cir. Aug. 28, 2024) (discussing evidentiary privileges and contrasting constitutionally-based attorney-client privilege); accord United States v. Lefkowitz, 618 F.2d 1313, 1319 (9th Cir. 1980) (explaining that spousal privileges "do not have constitutional underpinnings"); United States v. Doe, 478 F.2d 194, 195 (1st Cir. 1973) (explaining that spousal privilege is "not a constitutional one," holding that spouse can be compelled to testify about spousal communications in Grand Jury, and affirming contempt orders). As an evidentiary privilege, "[t]he marital privilege has never been placed on a constitutional footing." Simpson v. Neal, 986 F.2d 1424, 1993 WL 47204, at *3 (7th Cir. 1993) (quoting Port v. Heard, 764 F.2d 423, 430 (5th Cir. 1985)).

Accordingly, "[l]ike other evidentiary privileges, the marital communications privilege is in derogation of the truth," and "must be construed narrowly." United States v. Hamilton, 19 F.3d 350, 353–54 (7th Cir. 1994); accord Breton, 740 F.3d at 11 ("[L]ike all privileges, the marital privileges hamper the truth-seeking process and must be interpreted narrowly."); United States v. Banks, 556 F.3d 967, 974 (9th Cir. 2009) ("However, because the marital communications privilege obstructs the truth seeking process, its use in criminal proceedings requires a particularly narrow construction because of society's strong interest in the administration of justice.") (quoting United States v. White, 974 F.2d 1135, 1138 (9th Cir. 1992)) (emphasis in original); United States v. Acker, 52 F.3d 509, 515 (4th Cir. 1995) ("The marital communications privilege is in derogation of the truth, as are other evidentiary privileges . . . ."); United States v. Marashi, 913 F.2d 724, 730 (9th Cir. 1990) ("[W]e have emphasized that we will narrowly construe the marital communications privilege because it obstructs the truth-seeking process.").

Evidentiary privileges are just that—evidentiary. As the Supreme Court and other courts have observed, "testimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence," and therefore, the government may rely on spousal communications to investigate crimes. See Trammel v. United States, 445 U.S. 40, 50, 53 & n.12 (1980) (cleaned up) (explaining that marital communications privilege does not "prevent[] the government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension" because "[i]t is only the spouse's testimony in the courtroom that is prohibited"). For example, the Ninth Circuit has concluded that it was not improper for the government to use confidential marital communications in a search warrant affidavit to gather additional evidence, explaining that "[b]ecause we reject [] [his] argument that the marital privileges are somehow constitutionally grounded . . . we doubt that a secondary source of information obtained through information protected by the confidential marital communications privilege would in any way be 'tainted.'" United States v. Lefkowitz, 618 F.2d at 1318–19 & n.8; see also Marashi, 913 F.2d at 731 & n.11 ("Suffice it to say that no court has ever applied [the fruit-of-the-poisonous-tree doctrine] to any evidentiary privilege") (emphasis in original). In other words, as an evidentiary privilege, the marital communications privilege bears on whether such communications are admissible in a proceeding, if any; it does not, however, affect the collection of evidence during a federal Grand Jury investigation. See, e.g., United States v. Carlson, 946 F. Supp. 2d 1115, 1128 (D. Or. 2013) (explaining that "[c]ourts have consistently held that police may use confidential marital communications to investigate crimes") (collecting cases).

As an example from this District, in United States v. Wilson, the court denied a defendant's motion to suppress marital communications seized pursuant to an e-mail search warrant and rejected the defendant's contention that a taint team was necessary to review such

6

communications. <u>United States v. Wilson</u>, 505 F. Supp. 3d 3, 12 (D. Mass. 2020). In so ruling, the Court noted that the defendant, like Intervenor here, raised little caselaw in his favor, and held that the marital communications privilege is an evidentiary privilege "applicable only at trial" and that "if [defendant] seeks to exclude the contents of those e-mails at trial, he may do so via a motion in <u>limine</u>." <u>Id.</u>; <u>see also</u> <u>United States v. Ellefsen</u>, 2008 WL 2977347, at *2 (W.D. Mo. July 30, 2008) ("It is clear that the marital confidential communication privilege is an evidentiary rule of exclusion and does not have a constitutional foundation. Rather, the issue of privilege should be addressed, if at all, at the proper stage of the trial proceedings . . . or through a motion in limine") (cleaned up).

In sum, as one treatise has stated: "The marital or spousal communications privilege is a rule of evidence or a testimonial privilege, and private communications in a nontestimonial setting do not fall within its scope." 98 Corpus Juris Secundum, Witnesses § 304. And for context, courts treat other evidentiary privileges similarly. For example, in <u>United States v. Squillacote</u>, the Fourth Circuit held that "suppression of evidence derived from the privileged conversations [between the defendant and her psychotherapist]" was not appropriate "given that the privilege is a testimonial or evidentiary one, and not constitutionally-based." <u>United States v. Squillacote</u>, 221 F.3d 542, 560 (4th Cir. 2000). In so reasoning, the court analogized the patient-psychotherapist privilege to the marital communications privilege. <u>Id.</u>; <u>see also</u> <u>Martino v. United States</u>, 2024 WL 3963681, at *2–3 (3d Cir. Aug. 28, 2024) (per curiam) (explaining that filter team was not necessary for review of evidentiary privilege and affirming denial of injunctive relief where individual sought filter review of search warrant material containing communications with his psychotherapist); <u>In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.</u>, 802 F.3d 516, 525 (3d Cir. 2015) (holding that Speech or Debate

7

privilege, "as applied to records, is one of non-use versus non-disclosure" and "does not prohibit disclosure of records to the government in the course of an investigation").

Against the backdrop of the above caselaw, it is clear that the marital communications privilege is an evidentiary one that does not limit the seizure and review of such materials; instead, it is an issue that should be litigated at the motion in limine stage of proceedings. That is the stage at which the First Circuit and courts in this District have resolved such issues. See, e.g., Breton, 740 F.3d at 9–12 (addressing marital communications, which were collected by government in course of its investigation, and affirming district court's admission of such communications at motion in limine stage); see also Wilson, 505 F. Supp. 3d at 12 (noting that "if [defendant] seeks to exclude the contents of those e-mails at trial, he may do so via a motion in limine").

Indeed, the authority cited in Intervenor's motion is consistent with that conclusion. For example, in Montgomery (Mot. at 4), law enforcement obtained a search warrant and seized an inculpatory letter from the defendant's residence authored by his spouse. United States v. Montgomery, 384 F.3d 1050, 1054 (9th Cir. 2004). Concluding that the letter was protected by the privilege (and that no exception applied), the Ninth Circuit did not hold that the government should have employed a filter team or that the government was not authorized to seize and review such a communication; instead, the court held that the letter raised an "evidentiary issue" that the district court wrongly decided in admitting the letter at trial, and vacated the defendant's convictions. Id. at 1056–60. As another example, in Pugh (Mot. at 4), law enforcement obtained a search warrant for the defendant's laptop and seized an inculpatory draft letter to his spouse. United States v. Pugh, 945 F.3d 9, 16 (2d Cir. 2019). Again, neither the Second Circuit nor the district court even discussed a filter review for marital communications; instead, the court affirmed

the district court's ruling on the government's motion in limine to admit the draft letter because, as a draft, it was not actually a marital "communication." Id. at 19.

Undersigned counsel is aware of no search warrant in this District for which the government conducted, or a court ordered, a filter review for marital communications. Indeed, based on the government's research and Intervenor's motion, there appears to be only one such criminal case in the country. See Mot. at 6. And that case is unique in that it arose from an e-mail search warrant of a criminal defendant in the Western District of Virginia who had recently been convicted of, and was pending sentencing on, various fraud offenses, and the only marital communications the government was seeking involved a spousal conspiracy to tamper with trial witnesses. See In re Search of Information Associated with "Staceypromrenke@gmail.com", 2016 WL 9752136, at *1, *4–5 (W.D. Va. June 21, 2016). There were important distinctions from the warrant here executed at the investigation stage: there was, for example, a meaningful risk that government would seize spousal communications about the trial itself and/or legal strategy, and in any event, the scope of the materials seized under the scope of the warrant's attachment were essentially one and the same with the joint criminal participation exception to the marital communications privilege. See id.

In any event, that case appears to be an outlier: it did not cite any cases for the proposition that a filter review of marital communications was appropriate, and in ten years, it does not appear to have been cited by any other decision (save for one decision distinguishing it on unrelated grounds). The attempt to buttress that decision in Intervenor's Motion with string citations to decisions from "several district courts" is unavailing: The remaining three cases cited by Intervenor are all civil cases. See Mot. at 6. Without belaboring the issue and discussing all of the important distinctions between federal Grand Jury investigations and, for example, requests

9

for production in a civil employment disability case—as well as the differing treatments of privileges in the criminal and civil contexts—the government respectfully submits that those decisions carry little weight here, particularly when viewed in context of the weight of authority above, most of which Intervenor's motion does not address.  See, e.g., Schall v. Nodak Ins. Co., 2024 WL 2355714, at *4 (D. Neb. May 23, 2024).

In sum, Intervenor's argument on the merits is contrary to the weight of authority—from the Supreme Court's decision in Trammel, to caselaw across circuits explaining that the privilege is an evidentiary one, to in-District precedent on this very issue. See Trammel, 445 U.S. at 53. Against the backdrop of that precedent, his motion fails to satisfy its burden of persuasion by a clear showing.

**2.     A Filter Review for Marital Communications is Unwarranted**

Even were this Court to disregard the precedent set forth above and address the issue on a blank slate on the merits, it should still reach the same result, striking the appropriate balance between (i) the need to review marital communications as part of confidential Grand Jury investigations, including for derivative evidence, and (ii) upholding the evidentiary privilege and preventing the use of confidential marital communications at trial unless an exception applies.

Intervenor's proposal of a filter review for marital communications does not work in practice.  Assume, for example, that all of the text messages and e-mails directly between Intervenor and his spouse were segregated and placed in a filter protocol.  Assuming for present purposes that all of those text messages and e-mails were confidential between the spouses, the only issue the filter team would be reviewing for is whether an exception to the privilege applies, and specifically under the circumstances, whether the joint participant exception applies. See United States v. Mavroules, 813 F. Supp. 115, 119 (D. Mass. 1993) (citing United States v.

10

<u>Picciandra</u>, 788 F.2d 39, 43 (1st Cir. 1986)). In other words, the only spousal communications that would be released to the investigation team are communications in which the Intervenor and his wife were jointly engaged in criminal activity, and where the communication was in furtherance of that joint activity. See <u>United States v. Rakes</u>, 136 F.3d 1, 4 n.5 (1st Cir. 1998); accord <u>Bey</u>, 188 F.3d at 5..

But investigators are permitted to review and rely on a broader universe of marital communications as part of criminal investigations, including derivatively to collect other evidence. See <u>Trammel</u>, 445 U.S. at 53 n.12. Consider the following hypothetical: Investigators do not yet know the identity of who "tipped" the Intervenor to buy a particular stock in advance of an M&A deal. Text messages show, however, that the Intervenor texted his wife, "I'm going to see Matt to discuss stocks and then I'll be home," minutes before his trading records show him buying hundreds of thousands of dollars' worth of that stock. That communication—at least when considered in isolation—likely would not satisfy the joint participant exception and would not be released by the filter team to the investigation team. But it is certainly a relevant communication falling within the scope of the government's investigation and the search warrant, and it could be used in an array of investigative ways: to identify "Matt"; to find other evidence either on the phone or elsewhere connecting the Intervenor to "Matt"; to find other evidence connecting "Matt" to other aspects of the investigation through subpoenas, etc.; to locate "Matt" and interview him; and potentially, to seek legal process related to Matt. Regardless of that isolated exchange's potential admissibility in future court proceedings, an evidentiary privilege should not bar the government, at this stage, from using that communication (including derivatively) to further the truth-seeking function of a federal Grand Jury investigation, to pursue investigative leads, and to collect other standalone evidence.

The possible communications and the potential derivative uses that would further the federal Grand Jury investigation are, if not innumerable, difficult to quantify. Consider other hypotheticals that illustrate why this evidentiary privilege should not be narrowly applied at the investigative stage and should instead be construed consistently with established precedent:

- A hypothetical text message from Intervenor to his spouse after he met with "Matt": "Sorry, one more stop, and then I'll be home. I have to go see Dan after what I learned from Matt." Who is "Dan," and did he trade in the stock in question? Such information could be highly relevant in identifying other potential tippees and co-conspirators in the insider trading scheme, even if a court were to determine that the marital communications privilege barred the text message's admissibility at trial.

- A hypothetical e-mail from Intervenor to his wife: "What is your 401K online login and password? I just want to check your retirement balance." If there were suspicious trading in the brokerage account of the Intervenor's spouse, the marital communications privilege might bar the admission of this e-mail—standing alone—at a trial of the Intervenor. But investigators could at least use that communication derivatively, for example, to identify the brokerage firm and seek and collect records from the firm to learn, for example, what trading was executed, and whether the IP logins tie to the Intervenor's devices.

- A hypothetical instant message communication between Intervenor and his spouse about a bank account that investigators did not yet know about in which Intervenor remarked about needing to withdraw several thousands of dollars in cash on short notice, shortly after profitably selling securities following an M&A deal announcement.

None of the above messages would likely clear a "filter review" for the marital communications privilege. The above hypotheticals are only a few examples relevant to a specific search warrant executed in this one investigation. But the issue raised by Intervenor's motion is a purely legal one, and if decided to the contrary of the weight of authority set forth above, could have far-reaching implications in other investigations and greatly hinder the federal Grand Jury's truth-seeking function. Consider the following hypothetical:

An unidentified shooter assassinates a public figure in Massachusetts. State police and the FBI develop a preliminary list of persons of interest based on grainy surveillance footage of a man wearing a mask leaving the scene. Earlier that day, the shooter left a written note for his wife at their home, which she found later that day: "To my wife: Turn on the news. It was me—I hated

him. I didn't want to tell you because I knew you would have tried to stop me. I love you—I'm going up to our favorite place until things die down. By the way, don't let the dog in the woods behind the yard for a while." The shooter's wife turns on the news, sees the surveillance footage, and recognizes the masked individual as her husband based on clothing, gait, and physical appearance. Hoping to have authorities take her husband into custody without further violence, but not wanting to affect the case against him, the wife anonymously dials the FBI's tip line and says that the shooter looks like the name of her husband. When law enforcement visits the shooter's home, his wife answers questions evasively and denies any relevant knowledge. Based on that and other facts demonstrating probable cause that the shooter is her husband, and that evidence, fruits, and instrumentalities will be found in his residence, law enforcement obtains a search warrant for their home. Inside, law enforcement finds the handwritten note.

Both logic and the caselaw above regarding the marital privilege dictate that law enforcement should be able to use that note for investigative purposes, including derivatively. For example, investigators could rely on the note to search the woods behind the house (where they otherwise might not look) and find a covered ditch containing the rifle used in the assassination, bearing the suspect's DNA and fingerprints, and clothes that matched the surveillance footage of the suspect. They could rely on the note to divert resources to locating that suspect, who may continue to pose a safety threat to himself and to other members of the public, and thereby minimize intrusion into the lives of other persons of interest. Further, the note could direct authorities during their house search to other relevant evidence, such as photographs of the suspect and his wife posing at an apparent cabin in Maine (seemingly their favorite place). They then could rely on the note, and the derivative investigative observations made during the search warrant's execution, to alert Maine state police to be on the lookout for the suspect's car. And

based on that investigative lead, Maine state police could then conduct a traffic stop of the suspect as he drove towards the town where the cabin was located. After safely taking the suspect into custody, state police could then search the car, which could result in finding other evidence tying him to the assassination.

The evidentiary marital communications privilege presumably would prevent the government from introducing the note into evidence at a trial of the suspect (as a confession). But its use as a shield at trial on evidentiary grounds does not mean it should be extended to ongoing investigations where it could have obstructive implications. In the above scenario, the fallout from Intervenor's proposal here would most likely result in a filter team withholding the husband/shooter's note altogether from the investigative team. The filter team presumably would conclude that no exception to the marital communications privilege applied to the note: the husband and wife were not divorced or permanently separated; the wife was not a joint participant; and the note did not implicate a crime against the wife or a child. With the note segregated, the filter team would watch while investigators searched the husband's house, finding no import in the pictures at the cabin, or left the property without searching the woods behind the backyard. They would watch the news as other innocent persons of interest were targeted and questioned while the manhunt dragged on. The government does not offer this hypothetical as a parade of horribles, but rather as a reminder that the marital communications privilege—and all evidentiary privileges, for that matter—should and will be treated similarly in all situations, regardless of the kind or seriousness of the criminal conduct being investigated, the exigency of the situation, and the type of search warrant being executed. The correct result needs to be the appropriate one in investigating all crimes, from white-collar offenses, to narcotics and violent crime, to national security; in all districts; in all types of search warrants.

The below visual depiction shows why Intervenor's "filter protocol" for marital communications on a device seized pursuant to a search warrant is not a workable solution.



The Intervenor's proposed "filter protocol" would remove from investigators' review not only evidence that was—<u>potentially</u>—inadmissible under an evidentiary privilege at trial, but also relevant and derivatively relevant spousal communications that could result in further inculpatory (or exculpatory) evidence that is independently admissible. The Supreme Court and courts in the precedent discussed above have explained that the marital communications privilege is evidentiary and does not, and should not, compel such a result.

*        *        *

For the reasons discussed above, Intervenor's motion does not satisfy his burden of persuasion by a clear showing to prevail on the merits. "The <u>sine qua non</u> of th[e] four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." <u>New Comm Wireless Servs., Inc. v. SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002). Accordingly, the Court need not go further. But even if it does, for the following reasons, the remaining factors also do not support the institution of a filter protocol for marital communications.

**B.** **Intervenor Has Not Met His Burden to Demonstrate Irreparable Harm**

Intervenor has not satisfied his burden to demonstrate irreparable harm by a clear showing. A demonstration of a likelihood of irreparable harm, in particular, is a mandatory "prerequisite" to obtaining a preliminary injunction. Voice of the Arab World, 645 F.3d at 32. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). And by definition, irreparable harm is harm that cannot be avoided, cannot be undone, and does not have an "adequate remedy at law." See Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir. 2003).

The investigation team's review of marital communications in furtherance of a confidential Grand Jury investigation will not cause Intervenor irreparable harm. Any communications that are, in fact, protected by the marital communications privilege remain subject to an evidentiary privilege, and are therefore inadmissible (subject to the Court's determination), if the communications are deemed to fall within the scope of the search warrant's Attachment B, if a criminal proceeding is initiated against Intervenor, and if the government offered any such communications into a public setting as evidence at a trial. A mountain of "ifs" does not amount to irreparable harm—and that is *even before* Intervenor has a full opportunity to argue that any such communications are inadmissible in a court of law, which is the purpose of the privilege. See Breton, 740 F.3d at 10 (marital communications privilege exists to ensure confidentiality of such communications "without fear of eventual exposure in a court of law") (emphasis added).

The Third Circuit recently denied injunctive relief to an individual claiming irreparable harm arising from government review of search warrant materials potentially subject to an evidentiary privilege, stating "a claim of privilege can be addressed if implicated at a future court

16

proceeding. He therefore cannot demonstrate that he would be irreparably harmed absent a taint team." Martino, 2024 WL 3963681, at *3. The one-paragraph argument in Intervenor's motion to the contrary rests entirely on comparing the evidentiary marital communications privilege to irreparable harm arising from failure to institute a filter review of attorney-client communications. Mot. at 8. This comparison fails for two principal reasons.

First, the Third Circuit in Martino recently contrasted the irreparable harm arising from an investigation team's review of attorney-client communications from review of communications potentially subject to an evidentiary privilege that is non-constitutionally based. See Martino, 2024 WL 3963681, at *3 (contrasting ability to litigate evidentiary privilege from irreparable harm arising from failure to impose filter review on attorney-client communications "because of the role the [latter] privilege plays in ensuring the Sixth Amendment right to effective assistance of counsel"). Recognizing the distinction between the two potential harms, government counsel has significantly differentiated its treatment of attorney-client and spousal communications.

As to Intervenor's communications with the list of attorneys provided by his counsel, the government will have a non-investigation team member search the seized phone for all such communications and segregate them from the investigation team sine die; given the list of attorneys that his counsel provided, the government will not even have a filter AUSA conduct a review of such communications (unless a reason for one develops, at which point government counsel will notify Intervenor's counsel and confer regarding an attorney-client communications filter protocol). As to his communications with his spouse, the government believes the Intervenor's assertion of the marital communications privilege at this pre-charge stage is premature. Indeed, it would be odd for courts, including the First Circuit, to whistle past irreparable harm resulting from government review of marital communications at the investigative

17

stage while later weighing the admissibility of marital communications under an abuse of discretion standard at the evidentiary stage.  See Bey, 188 F.3d at 5.

Second, the government is aware of no case, anywhere, which found irreparable harm arising from an investigation team's review of marital communications.  Intervenor's motion cites one case, Griffin, for the proposition that the harm arising from disclosure of attorney-client communications is comparable to the disclosure of marital communications.  See United States v. Griffin, 440 F.3d 1138 (9th Cir. 2006).  The Court should note three things about Griffin.  *First*, the communications at issue were between the defendant and a woman who was "both his wife and his attorney."  Id. at 1140 (emphasis added).  *Second*, the Ninth Circuit affirmed the district court's order granting disclosure to the government of letters between the defendant and his wife that "[we]re not protected by either the attorney-client privilege or the work-product doctrine"; in other words, the court did not prevent disclosure of spousal communications to the government based on the marital communications privilege.  Id. at 1145.  *Third*, and most relevant to this factor of the four-part test, Intervenor's motion here cites Griffin for the proposition that the court found "a 'real possibility' of irreparable harm from disclosure of spousal letters".  Mot. at 8.  But the court found that "real possibility" based on the attorney-client privilege, not the marital privilege.  Moreover, the court found the potential for irreparable harm under the collateral order doctrine triggering jurisdiction, *not* for injunctive relief (which was not granted).  See id. at 1142.

**C.      Intervenor Has Not Met His Burden to Demonstrate that the Balance of Equities and Public Interest Warrant Injunctive Relief**

The balance of equities and public interest do not favor injunctive relief here, by a clear showing or otherwise.  "[L]ike all privileges, the marital privileges hamper the truth-seeking process and must be interpreted narrowly."  Breton, 740 F.3d at 11; accord Trammel, 445 U.S. at 50 (explaining that because "[t]estimonial exclusionary rules and privileges contravene the

fundamental principle that the public ... has a right to every man's evidence," any such privilege "must be strictly construed.").

Courts "have emphasized that the policies underlying the marital communications privilege pale in the face of public concerns about bringing criminals to justice." <u>Marashi</u>, 913 F.2d at 731. Without belaboring the issue, both the government and the public have a strong interest in the truth-seeking process of federal Grand Jury investigations. Undersigned counsel will not overstate those interests and is sensitive to the discomfort of being a target of a federal Grand Jury investigation and the unease of having one's personal effects, including marital communications, subjected to a search warrant. In that vein, the government respectfully submits that to the extent there are potentially embarrassing or sensitive marital communications, they likely would not fall within the scope of the search warrant's Attachment B. In any event, if any proceeding is instituted necessitating production of Intervenor's marital communications, government counsel will work reasonably with Intervenor's counsel to balance complying with its discovery obligations with sensitivity to Intervenor's privacy. <u>See, e.g.</u>, <u>Wilson</u>, 505 F. Supp. 3d at 12 (noting that government took reasonable steps to minimize the intrusion into the spousal e-mails during course of investigation and discovery).

The government will not unfairly minimize Intervenor's concerns or belabor a balancing test; it must, however, respond to two overstatements in Intervenor's motion regarding these two factors of the four-part test.

<u>First</u>, in addressing the public interest, Intervenor's motion states that "government investigators have no valid interest in reviewing purely confidential communications between Mr. Milik and his wife." Mot. at 9. That is, at least, an overstatement. The government does not believe that this Court needs to review the affidavit in support of the warrant to resolve the purely

legal issue raised by Intervenor's motion. However, the government would be remiss to have this Court, in a vacuum of this record, believe that the government seeks to review Intervenor's spousal communications if his spouse, and his communications with his spouse, had no relevance to the investigation, and to believe that the government is burdening this Court's docket purely on principle without any practical impact on the investigation. Both parties are aware of it, and so the Court should be as well: some of the trading that is a focus of the government's investigation was conducted in brokerage accounts of Intervenor's spouse. When agents approached the Intervenor, he initially denied that his wife traded in the securities in question, and then later stated that he traded in the securities in question in her accounts.[1] These facts were presented to the Magistrate Judge who authorized the warrant. Accordingly, the government has an interest in searching defendant's marital communications for evidence, fruits, and instrumentalities of the target offenses, both for direct evidence and evidence that may be used derivatively.

Second, in addressing the balance of equities, Intervenor's motion states that "the government cannot credibly claim harm from an order requiring confidential marital communications be reviewed [by a filter team]." For all the reasons discussed supra (Section IV.A.2), the government respectfully submits that it "credibly claim[s]" harm to the collection of evidence, including derivative evidence, that flows from Intervenor's proposal.

## V. CONCLUSION

Intervenor's motion is contrary to the weight of authority and provides little precedent for the extraordinary relief it seeks. It does not satisfy his burden of persuasion by a clear showing on any of the four factors, much less all of them. Accordingly, his motion should be denied.

---

[1] It is also notable that, based on only a preliminary review, Intervenor's phone contains communications between Intervenor and multiple other immediate family members that are—to say the least—relevant to the government's investigation and within the scope of the warrant.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:     /s/ Ian J. Stearns
IAN J. STEARNS
KAITLIN R. O'DONNELL
Assistant United States Attorneys

Date:  October 2, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document filed under seal will be served upon counsel of record for all parties.

By:     /s/ Ian J. Stearns
IAN J. STEARNS
Assistant United States Attorney

Dated:  October 2, 2025