UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
| --- | --- | --- |
| _____ | ) | |
| | ) | |
| IN RE: SEARCH OF THE PREMISES | ) | Case No. 25-MC-91442-LTS |
| LOCATED AT 2260 E SANTA PAULA | ) | |
| DR, BREA, CA 92821 | ) | **FILED UNDER SEAL** |
| | ) | |
| _____ | ) | |

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO ENJOIN SEARCH OF COMMUNICATIONS PROTECTED BY MARITAL PRIVILEGE**

What the government presents as a straightforward application of established law is, in reality, an attempt to substantially limit a privilege that has been recognized by the Supreme Court as "essential" for nearly a century. The very purpose underlying the longstanding protection of confidential marital communications, namely spouses' ability to freely and openly communicate with and confide in each other, would be profoundly undermined by an order that the privilege has no application, at all, absent a criminal trial. Contrary to the government's claim, no precedent compels that result. Rather, the only case cited by either party squarely addressing the issue has required a filter review of spousal communications. And there are many other cases in which the government has utilized such a filter review. Mr. Milik and his spouse are entitled to that same protection here.

**I. Mr. Milik Is Likely to Succeed in Establishing that Review of His Confidential Communications with His Wife Violates the Marital Communications Privilege.**

The government claims it should be "permitted to review and rely on a broader universe of marital communications as part of criminal investigations, including derivatively to collect other evidence." Opposition at 11. Indeed, under the government's construction of the law, the

1

government could compel production of marital communications via grand jury subpoena, and then freely review the universe of those communications—emails and texts touching the most intimate subject matters possible—without any significant limitations. This is antithetical to the very purpose of the long-recognized privilege: "the protection of marital confidences, regarded as *so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails*." *Wolfle v. United States,* 291 U.S. 7, 14 (1934) (emphasis added); *see also, e.g.*, *United States v. Fomichev*, 899 F.3d 766, 772 (9th Cir. 2018*)* ("[T]he marital communications privilege recognizes that society has an enormously strong interest in preserving a particular social institution—here, the institution of marriage. We afford special protection to private communications exchanged in the confines of . . . these relationships because the relationships are uniquely important, and because the law has long recognized that they will be compromised if spouses . . . are not secure in the knowledge that their communications will be kept confidential." (citation omitted)). The government fails to so much as acknowledge, much less address in any meaningful way, these underpinnings of the privilege which, no doubt, would be significantly diluted by adoption of the government's position. Spouses cannot possibly be "secure in the knowledge that their communications will be kept confidential" if the government possesses the unfettered ability to compel production of those communications and use them to further a criminal investigation.

None of the government's various rationales for treating the marital communications privilege as a second-class privilege withstands scrutiny. First, the government states that the protection of marital communications "is an 'evidentiary privilege' governed by Fed. R. Evid. 501." Opposition at 4. But the very case cited by the government on this point refers to

2

"attorney client privilege" as falling within the same classification.  *United States v. Bey*, 188 F.3d 1, 5 (1st Cir. 1999); *see also, e.g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011) ("The attorney-client privilege ranks among the oldest and most established ***evidentiary privileges*** known to our law." (emphasis added)).  The government, of course, does not contend that it is free to use concededly privileged attorney-client communications to further a criminal investigation.  Second, the government asserts that the marital privilege is not "constitutionally-based."  Opposition at 5.  Again, the same is generally true of attorney-client privilege.  *See United States v. Caraballo-Rodriguez*, 480 F.3d 62, 72 n.7 (1st Cir. 2007) (referring to attorney-client privilege as among "common law privileges," as contrasted with constitutional privileges); *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985) ("Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right.");[1] *see also, e.g.*, *United States v. Tyerman*, No. 09-CR-00023, 2009 WL 10678142, at *2 (S.D. Iowa Aug. 11, 2009); *Brown v. Padgett*, No. 20-CV-81, 2020 WL 1963941, at *2 (M.D. Ala. Mar. 20, 2020); *United States v. Segal*, 313 F. Supp. 2d 774, 780 (N.D. Ill. 2004).  Third, that the "fruit-of-the-poisonous-tree doctrine" does not apply to the marital communications privilege, Opposition at 6, is both (a) beside the point given that Mr. Milik has raised the privilege issue before the underlying communications have been reviewed;[2]

---

[1] "In some situations, however, government interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights." *Id.*  That does not, though, affect in any manner the fact that the attorney-client privilege, like the marital communications privilege, is an evidentiary privilege.

[2] The cases cited by the government rejecting after-the-fact arguments for wholesale suppression are, therefore, entirely inapt.  *See United States v. Carlson*, 946 F. Supp. 2d 1115, 1130 (D. Or. 2013) ("[T]he Court is not convinced that an evidentiary mistake can render a probable cause

and (b) equally applicable to attorney-client privilege.  *See United States v. Warshak*, 631 F.3d 266, 295 (6th Cir. 2010) ("[E]vidence derived from a violation of the attorney-client privilege is not fruit of the poisonous tree.").[3]  Fourth and finally, the marital communications privilege is no more (and probably much less) "in derogation of the truth" than the attorney-client privilege. Opposition at 5 (citation omitted); *see also, e.g.*, *Menninger v. PPD Dev., L.P.*, No. 19-CV-11441, 2021 WL 1408069, at *1 (D. Mass. Apr. 14, 2021) (Sorokin, J.) ("[T]he attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." (quoting *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003)); *United States v. McLellan*, No. 16-CR-10094, 2018 WL 9439896, at *3 (D. Mass. Jan. 19, 2018) (Sorokin, J.) ("Because the attorney-client privilege can and often does seriously impede the search for truth in a particular case, courts are naturally reluctant to extend it beyond the narrowest limits required to achieve its purpose of fostering effective attorney-client communication." (citation omitted)).  A privilege may, to be sure, be construed narrowly to avoid undue interference with the grand jury's truth-seeking function.  It may not, however, be entirely disregarded until trial (and disregarded altogether for the 98% of defendants who plead guilty, *see* Motion at 5).

The government certainly may ***want*** to review confidential communications between

---

finding *constitutionally* deficient such that suppression of evidence seized in reliance on the warrant would be an appropriate sanction."); *United States v. Ellefsen*, No. 07-CR-5015, 2008 WL 2977347, at *2 (W.D. Mo. July 30, 2008) (observing that defendant "improperly styled his motion as a motion to suppress").

[3] One of the authorities relied upon by the government, *United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000) (citation omitted), cited a case involving attorney-client privilege in support of the assertion that "no court has ever applied the [fruit-of-the-poisonous-tree] theory to any evidentiary privilege."

spouses, and a tiny subset of those communications may be "relevant" to the government investigation, but that does not give the government the right to do so. Building off the hypothetical posited in the government's Opposition, a target's statement to his lawyer, "Matt told me to buy those stocks," would undoubtedly be relevant and of significant interest to the government. *See* Opposition at 11. But, provided the statement was made confidentially to an attorney for the purposes of obtaining legal advice, the government would not be able to compel its disclosure. In short, the law affords citizens the ability to communicate freely with their spouses, just as it does with their attorneys, without fear that the government may seize, review, and use those communications to further a criminal investigation. The government remains free to seize an investigative target's relevant communications with virtually any other person (*e.g.*, "Matt" or "Dan"), and to subpoena records relating to any pertinent individual's financial accounts. *See* Opposition at 12.

The government's argument to the contrary is built upon repeated misreadings of precedent. It is simply not accurate to say, as the government does, that "well-established precedent," including from the Supreme Court, "provides that the marital communications privilege is an evidentiary privilege that does not inhibit the government from gathering and reviewing evidence at this stage of an investigation." Opposition at 1. As noted in Mr. Milik's opening motion, and not addressed in any respect in the opposition, the only Supreme Court precedent cited by the government on this issue, *Trammel v. United States*, 445 U.S. 40 (1980), ***expressly did not address the marital communications privilege***. *See* Motion at 7-8.

In fact, the government cites ***no case***, far from an "overwhelming weight of precedent," "hold[ing] that the marital communications privilege . . . does not warrant a filter review of

5

search warrant returns." Opposition at 3.[4]  The government cites *United States v. Doe*, 478 F.2d 194 (1st Cir. 1973), as "holding that [a] spouse can be compelled to testify about spousal communications in [the] Grand Jury." Opposition at 5.  Like *Trammel*, however, *Doe* involved an assertion of the spousal testimony privilege, not the marital communications privilege.  *See* 478 F.2d at 195 (noting that spouses invoked "the husband-wife privilege against testifying against the other, the only issue now raised").  The First Circuit held that it would be "an unwarranted extension" of the spousal testimony privilege "to allow either spouse to invoke it when both are immunized from prosecution and are asked questions about the same transaction." *Id.*  This is a straightforward application of the limitation of the spousal testimony privilege to testimony "adverse[]" to the other spouse.  Opposition at 4 (citation omitted).

Contrary to the government's suggestion, Mr. Milik did not cite *United States v. Montgomery*, 384 F.3d 1050 (9th Cir. 2004) and *United States v. Pugh*, 945 F.3d 9 (2d Cir. 2019), for the proposition "that the government should have employed a filter team or that the government was not authorized to seize and review" marital communications.  Opposition at 8. Neither opinion had occasion to address that issue, as the relevant appellate arguments were limited to claims of evidentiary error.  Rather, Mr. Milik cited these cases in response to the government's original position, expressed in communications with undersigned counsel in an effort to dissuade Mr. Milik from seeking Court intervention, that the marital communications privilege was solely "testimonial."  The government has since abandoned that position and now acknowledges, as *Montgomery*, *Pugh*, and other cases make clear "that the marital

---

[4] *United States v. Wilson*, 505 F. Supp. 3d 3 (D. Mass. 2020) (Gorton, J.), came the closest, but it should not govern here for reasons set forth in Mr. Milik's opening motion.  *See* Motion at 7.

communications privilege applies similarly to confidential written communications introduced into evidence equally as it does to oral communications introduced through testimony." Opposition at 4.[5]

The only case cited by either party squarely addressing the issue here held that filter review of spousal communications was required. *See Matter of Search of Info. Associated With "Staceypromrenke@gmail.com" Located at Google, Inc.* ("*Pomrenke*"), No. 16-MJ-00073, 2016 WL 9752136, at *4 (W.D. Va. June 21, 2016). There, the government argued, just as it does here, "that the marital privilege . . . is a testimonial privilege and would not bar the gathering of evidence of a crime." *Id.* at *2. The Court rejected that argument, holding that "[t]he marital communications privilege protects information that is privately disclosed between spouses in the confidence of the marital relationship as privileged." *Id.* at *3. The government's attempts to distinguish *Pomrenke* fall flat. While it is true that the defendant in *Pomrenke* was awaiting sentencing at the time of the search, the Court's opinion in no way alludes to any "meaningful risk that [the] government would seize spousal communications about the trial itself and/or legal strategy." Opposition at 9. And it is not accurate to say that "the scope of the materials seized under the scope of the warrant's attachment were essentially one and the same with the joint criminal participation exception to the marital communications privilege." *Id.* Rather, the

---

[5] The government's concession on this point is also inconsistent with the treatise it cites for the proposition that the "marital or spousal communications privilege is a rule of evidence or a testimonial privilege, and *private communications in a nontestimonial setting do not fall within its scope.*" Opposition at 7 (quoting 98 Corpus Juris Secundum, Witnesses § 304) (emphasis added). The only authority the treatise cites in support of the italicized language is a 1998 Iowa state court opinion applying a state law privilege that, unlike the federal privilege, only prohibits spouses from being "examined in any case" as to marital communications. *State v. McPhillips*, 580 N.W. 2d 748, 754-55 (Iowa 1998) (citation omitted).

warrant broadly sought any and all communications "that constitutes fruit, contraband, evidence and instrumentalities" of suspected offenses, including obstruction of justice and witness tampering. *Pomrenke*, 2016 WL 9752136, at *1.

If anything, in *Pomrenke*, the government presented a far better case for infiltration of marital confidences than it has here. The defendant's husband had left a voicemail for a potential witness shortly before trial saying, "when you're testifying . . . there might be a couple things that you could do that would really help" his wife (the defendant). *Id.* at *2. The Court concluded that there was probable cause to believe that the husband, as well as the defendant herself, "had engaged in witness tampering and/or obstruction of justice," and that "this evidence would be more than sufficient to meet the prima facie showing required to apply the crime-fraud exception . . . ." *Id.* at *4. Even so, the Court ordered that a filter team review all spousal communications "to determine whether they were made in confidence or whether they should be disclosed pursuant to the joint criminal participation exception." *Id.* Here, Mr. Milik, who has not yet been charged (much less convicted) of any offense, and whose wife the government has failed to implicate in any suspected wrongdoing,[6] should be entitled to no less protection.

Contrary to the government's representation, *Pomrenke* is not the only case in "which the government conducted, or the court ordered, a filter review for marital communications." Opposition at 9; *see also United States v. Jackson*, No. 24-CR-56, 2025 WL 2715258, at *2 (N.D. Ga. Sept. 3, 2025) (reflecting government "offer[] to self-suppress . . . files located on the

---

[6] The mere allegation that "some of the trading that is a focus of the government's investigation was conducted in brokerage accounts of" Mr. Milik's spouse, Opposition at 20, does not, without more, suggest that she participated in any criminal act and falls far short of the showing in *Pomrenke*.

phone by the filter team that were identified as possibly privileged—either under the attorney-client privilege or under the marital privilege"); *United States v. Vepuri*, 585 F. Supp. 3d 760, 763 (E.D. Pa. 2021) ("The individual defendants may supply the names of their spouses so that their spousal privilege may be protected."); *United States v. Cummings*, No. 17-CR-518, 2019 WL 9240240, at *3 (D. Ariz. Dec. 12, 2019) (government "[c]ounsel . . . indicated that the Taint Team was directed to segregate emails that implicated the marital, attorney-client, and doctor-patient privileges"); *United States v. Aguilar*, 831 F. Supp. 2d 1180, 1193 (C.D. Cal. 2011) ("[T]he filter team AUSA disclosed to the Court that the recorded calls were between [the defendant] and her co-Defendant husband . . . ."); *SEC v. Karroum*, No. 15-CV-590, 2015 WL 8483246, at *3 (D.D.C. Dec. 9, 2015) ("[R]esolving the contours of the marital privilege is unnecessary here because the SEC's protocol includes a privilege review team of attorneys unrelated to the investigation who will ensure that communications between [defendant] and his wife . . . will be removed from the production . . . ." (citation omitted)).  Mr. Milik also cited civil cases applying the marital communications privilege to requests for production, clearly contrary to the government's contention that the privilege applies only at trial.  *See* Motion at 6-7.  The government cites no precedent for its suggestion that the privilege applies differently in any meaningful respect in criminal cases than it does in civil ones.  *Cf. Swidler & Berlin v. United States*, 524 U.S. 399, 408-09 (1998) ("[T]here is no case authority for the proposition that the [attorney-client] privilege applies differently in criminal and civil cases . . . .").  Moreover, while *Pomrenke* has not been widely cited in subsequent judicial opinions, it has been cited in the Department of Justice Journal of Federal Law and Practice for the proposition that, "[a]s with the attorney-client or work product privilege, a filter team protocol may be necessary to review

9

materials seized or subpoenaed that may be subject to a privilege," including marital communications privilege. Gretchen C. F. Shappert & Christopher J. Costantini, *Recent Case Law Developments Involving the Crime-Fraud Exception: The Attorney-Client Privilege, Filter Team Protocols, and Other Privileges*, 69 DOJ J. Fed. L. & Prac. 289, 335 & n.239 (2021).[7]

It is the government, not Mr. Milik, whose rationale, if adopted by this Court, would carry "far-reaching" negative "implications." Opposition at 12. As construed by the government, the marital communications privilege would pose no barrier at all to seizing and reviewing any investigatory target or subject's most private confidences. The present case bears a far greater resemblance to the mine-run than the government's elaborate hypothetical. That hypothetical, in addition to being far afield from the present context of an insider trading investigation, involves a single communication of clear and facial relevance to the crime under investigation. *See* Opposition at 12-13. Here, by contrast, as will often be the case in investigations involving electronic evidence, the government is in possession of a universe of electronic communications between Mr. Milik and his wife over a years-long period. The vast majority of those communications will surely have nothing at all to do with the government's investigation. At the very least, there is no conceivable justification for permitting the investigative team to review that full universe of spousal communications. *See Wilson*, 505 F. Supp. 3d at 12 (noting government's segregation of spousal communications and use of "search terms to filter out unresponsive material"). Additionally, in the government hypothetical, the wife's false "den[ial] [of] any relevant knowledge" when interviewed by law enforcement,

---

[7] The article was co-authored by the former U.S. Attorney for the U.S. Virgin Islands and for the Western District of North Carolina. *Id.* at 289 n.a1.

Opposition at 13, could trigger the joint participant exception to the privilege. *See United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984) ("[C]onversations between husband and wife about crimes in which they conspire or participate or, after the fact, participate in, are not privileged marital communications for the purpose of protection as confidential marital communications."); *United States v. Cooper*, 85 F. Supp. 2d 1, 31-32 (D.D.C. 2000) (holding that wife's "conversations with [defendant] in an effort to lie about the gun's use or whereabouts and thwart police efforts to retrieve the gun" rendered her "a joint participant").[8] Finally, all privileges, by their very nature, have costs. But, in the specific context of marital communications, the Supreme Court has expressly found that the interests underlying the privilege are "so essential . . . as to outweigh" those costs. *Wolfle*, 291 U.S. at 14.

## II.     Mr. Milik and His Wife are Likely to Suffer Irreparable Harm Absent the Requested Injunctive Relief.

The law is clear that, in the context of attorney-client privilege, "an adverse party's review of privileged materials," in itself, "seriously injures the privilege holder." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019). The harm is irreparable because the government's "review of those privileged materials cannot be undone." *Id.* Mr. Milik respectfully submits that the result should be the same in the context of the marital communications privilege. In arguing otherwise, the government misreads *United States v. Griffin*, 440 F.3d 1138 (9th Cir. 2006), which, contrary to the government's characterization,

---

[8] Other courts have held that the exception does not apply unless the spouse was a joint participant in criminal activity at the time of the relevant communication. *See, e.g.*, *Montgomery*, 384 F.3d at 1060 (citing cases); *see also Bey*, 188 F.3d at 6 (referring to exception as permitting admission of "relevant confidential marital communications that take place after the spouse has become a joint participant in the criminal activity," but not addressing any argument that after-the-fact participation could render earlier communications admissible).

found a "real possibility" of irreparable harm based on the marital communications privilege, ***not*** the attorney-client privilege. Opposition at 18. As the government correctly notes, the district court in *Griffin* had ordered disclosure of only those letters that "[we]re not protected by either the attorney-client privilege or the work-product doctrine." *Id.* (citation omitted). Accordingly, when the defendant sought to bring an interlocutory appeal, invoking the collateral order doctrine, he had to show a real possibility of harm from the district court's ruling regarding the marital communications privilege. The Court observed, as squarely applicable here, "if [the defendant] is correct in his assertion of privilege, by the time of trial he will have suffered the very harm that he seeks to avoid, namely the erroneous disclosure of privileged material." 440 F.3d at 1142 (citation omitted). The Ninth Circuit did ultimately affirm the district court, but only because "prison authorities . . . had the right to read" letters from an inmate to his spouse, such that the communications were not confidential. *Id.* at 1444.

The government's sole authority for its contrary position is an unpublished Third Circuit opinion involving the psychotherapist privilege. *See Martino v. United States*, No. 24-1404, 2024 WL 3963681 (3d Cir. Aug. 28, 2024) (unpublished). As an initial matter, that non-precedential opinion has not been cited even once. More substantively, *Martino*'s statement that the "claim of privilege can be addressed if implicated at a future court proceeding" was simply wrong. *Id.* at *3. One of the very authorities cited by the Third Circuit panel was a Supreme Court opinion expressly "hold[ing] that confidential communications between a licensed psychotherapist and her patients . . . are ***protected from compelled disclosure***," refuting any suggestion that the privilege is limited to admission of communications in court proceedings. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (emphasis added). Courts have, accordingly, applied

12

filter review protocols to communications potentially protected by the psychotherapist privilege. *See United States v. Brown*, No. 22-CR-00033, 2023 WL 4353162, at *2-4 (W.D. Ky. July 5, 2023); *United States v. Loughner*, 782 F. Supp. 2d 829, 833–34 (D. Ariz. 2011).

## III.     Conclusion.

For the foregoing reasons, as well as those set forth in his opening motion, Mr. Milik respectfully requests an order compelling the government to segregate any and all communications by and between Mr. Milik and his wife, ordering that any and all such communications be subject to a taint-review protocol, and prohibiting the government investigation team from reviewing any such materials unless and until any such communication is cleared through the taint review process.

|  |  |
|---|---|
| Respectfully Submitted, | Respectfully Submitted, |
| Nowel Milik, | Nowel Milik, |
| By His Attorney, | By His Attorney, |
|  |  |
| **/s/ Robert M. Goldstein** | **/s/ Michael Pabian** |
| Robert M. Goldstein, Esq. | Michael Pabian, Esq. |
| BBO# 630584 | BBO# 684589 |
| 20 Park Plaza, Suite 1000 | 20 Park Plaza, Suite 1000 |
| Boston, MA 02116 | Boston, MA 02116 |
| (617) 742-9015 | (617) 227-3700 |
| rmg@goldstein-lawfirm.com | pabianlaw38@gmail.com |

Dated: October 10, 2025

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby certify that on this date, October 10, 2025, a copy of the foregoing document has been served via electronic mail on Assistant United States Attorneys Ian Stearns and Kaitlin O'Donnell.

**/s/ Robert M. Goldstein**
Robert M. Goldstein, Esq.