UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | |
| IN RE SEARCH OF THE PREMISES ) | Case No. 25-mc-91442-LTS |
| IN CALIFORNIA ) | |
| ) | |
| ) | |
| ) | |

ORDER ON MOTION TO ENJOIN THE GOVERNMENT SEARCH OF
COMMUNICATIONS PROTECTED BY MARITAL PRIVILEGE (DOC. NO. 3)

November 21, 2025

SOROKIN, J.

"Target"[1] is the subject of an ongoing criminal investigation. Target has moved this

Court, under Federal Rule of Criminal Procedure 41(g), to enjoin the government from

reviewing any confidential marital communications it has seized pursuant to a search warrant.

Doc. No. 3. The government opposes. Doc. No. 4. After a contested hearing and careful review

of the papers, Target's Motion is ALLOWED.

I.    BACKGROUND

   A.    Facts

   On September 4, 2025, Magistrate Judge Fuller Mircheff, sitting in the Central District of

California, issued a search warrant for Target's residence.[2] Doc. No. 3 at 2; Doc. No. 3-1. The

warrant authorized seizure of "evidence, contraband, fruits, or instrumentalities" of wire fraud,

money laundering, securities fraud, obstruction of justice, and conspiracy to commit those

---

[1] Target's counsel disclosed Target's identity in sealed filings. Doc. No. 3 at 1. Because Target is the subject of an ongoing criminal investigation, this decision does not use Target's name.
[2] The relevant investigation is based in the District of Massachusetts, despite the warrant being issued and executed in the Central District of California. Doc. No. 3 at 2 n.1. The parties have jointly consented to this Court's jurisdiction to resolve the instant motion. Id.

offenses, dated between April 1, 2022, and the date of the warrant's execution.  Doc. No. 3-1 at 7.  It permitted the seizure of digital devices, including Target's cell phone.  Id. at 9.  The warrant also included a search procedure for digital devices, which allowed law enforcement to use forensic examination tools to scour any seized devices for targeted evidence and to make and retain copies of any data within the scope of the warrant.  Id. at 11–15.  The warrant was executed on September 9, 2025, and Target's cell phone was seized.  Doc. No. 3 at 2–3.

Soon after the warrant's execution, Target's counsel alerted the government that the seized phone contained two categories of privileged communications: attorney-client communications and confidential marital communications.  Id. at 3 & n.2.  The government agreed to segregate from its investigation team all communications between Target and identified attorneys.[3]  Id. at 3 n.2, 9 n.4; Doc. No. 4 at 7.  Target's assertion of the attorney-client privilege is therefore not presently at issue before the Court.

Target asked the government to subject all marital communications on Target's phone to a filter protocol to ensure the investigation team reviews only those spousal communications not covered by the privilege.  Doc. No. 3 at 9.  The government refused to institute a filter protocol, though it agreed not to review any seized spousal communications during the pendency of this motion.  Id. at 7.  The government argues, in short, that the marital communications privilege has no application at the investigatory stage; instead, the privilege only precludes the government from introducing confidential marital communications as evidence at trial.  Doc. No. 4 at 8–15.

B.    Privilege Definition

The marital communications privilege protects (1) "words or acts intended as communication to the other spouse" that (2) are "made during a valid marriage" and (3) are

---

[3] The government also agreed to confer with Target's counsel if it later decides to initiate a filter review of the segregated attorney-client communications.  Doc. No. 3 at 9 n.4; Doc. No. 4 at 22.

"confidential."[4]  <u>United States v. Griffin</u>, 440 F.3d 1138, 1143 (9th Cir. 2006) (citation

modified).  "The party asserting a privilege bears the burden of showing that the privilege

applies."  <u>United States v. Breton</u>, 740 F.3d 1, 9 (1st Cir. 2014) (citation modified).  Private

communications between spouses are presumptively privileged.  <u>Wolfle v. United States</u>, 291

U.S. 7, 14 (1934).  The communication's nature and circumstances—such as the presence of a

third party—may rebut that presumption.  <u>Id.</u> at 14–15.  Federal courts recognize several

exceptions to the marital communications privilege, including the "joint participant" exception.

<u>See</u> <u>United States v. Bey</u>, 188 F.3d 1, 4 (1st Cir. 1999) ("Communications concerning crimes in

which the spouses are jointly participating . . . do not fall within the protection of the marital

communications privilege."  (citation modified)); <u>see also</u> <u>Breton</u>, 740 F.3d at 11–12 (adopting

"offense against spouse" exception); <u>Trammel v. United States</u>, 445 U.S. 40, 46 n.7 (1980)

(discussing other exceptions).  The government concedes that the privilege applies with equal

force to written and oral communications, whether introduced as evidence or through testimony.[5]

Doc. No. 4 at 9.  The parties do not dispute this definition of the privilege, nor the proposition

that at least some of Target's seized communications may qualify as privileged under it.

II.   DISCUSSION

The government argues that the marital communications privilege does not restrict in any

way its collection and use of confidential marital communications in criminal investigations.  It

contends that the privilege restricts only the admissibility of certain evidence at trial.  Doc. No. 4

---

[4] Federal common law recognizes two distinct marital privileges: the marital communications
privilege and the spousal testimonial privilege.  <u>See, e.g.</u>, <u>United States v. Breton</u>, 740 F.3d 1, 9–
10 (1st Cir. 2014).  The two are independent, and authority addressing one does not govern the
other.  <u>See, e.g.</u>, <u>Trammel v. United States</u>, 445 U.S. 40, 45 n.5, 53 (1980) (refining spousal
testimonial privilege while observing holding did not disturb marital communications privilege).
[5] The government's brief is arguably somewhat ambiguous on this point, Doc. No. 4 at 9, but at
oral argument, counsel for the government confirmed the government agrees that the privilege
applies equally to documentary evidence as to testimony.

at 12. A close review of the case law and principles undergirding the privilege refutes the government's position: the privilege is one of confidentiality that applies in all judicial proceedings, including the court-authorized gathering of evidence in a criminal investigation.

A.     Marital Communications Privilege

The Supreme Court recognized seventy-five years ago that the government may not compel a person to reveal confidential marital communications before a grand jury, even if their testimony would be used only for investigative purposes. See Blau v. United States, 340 U.S. 332 (1951). The Court expressed "no doubt" that a grand jury witness was "entitled to claim his privilege" and refuse to reveal information he learned through confidential marital communications—namely, the location of his wife, whom the grand jury sought as a witness. Id. at 334. In short, the Supreme Court held that the privilege applies to the gathering of evidence by the grand jury. Id. Two decades later, the Supreme Court reaffirmed and broadened this holding when it ruled: "[T]he grand jury's subpoena power is not unlimited. . . . [I]t may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law. . . . Judicial supervision is properly exercised in such cases to prevent the wrong before it occurs." United States v. Calandra, 414 U.S. 338, 346 (1974); see also In re Grand Jury Investigation of Hugle, 754 F.2d 863, 864–66 (9th Cir. 1985); In re Grand Jury Investigation, 603 F.2d 786, 788–89 (9th Cir. 1979); Fed. R. Evid. 1101(d). This authority plainly undercuts the government's position: the Supreme Court has expressly held that the marital communications privilege is not limited to excluding evidence at a trial.

Limiting the application of the marital communications privilege to the exclusion of evidence at trial would eviscerate the very purpose of the privilege, as defined by the Supreme Court. The marital communications privilege protects what the Supreme Court once termed the "best solace of human existence": confidences made within a marriage. See Stein v. Bowman,

4

38 U.S. (13 Pet.) 209, 223 (1839); see also Trammel, 445 U.S. at 51 (quoting Stein, 38 U.S. at 223). The privilege's essential function is "protect[ing] information privately disclosed" between spouses "in the confidence of the marital relationship." Trammel, 445 U.S. at 51. Like the attorney-client and psychotherapist-patient privileges, the marital communications privilege is "rooted in the imperative need for confidence and trust." Jaffee v. Redmond, 518 U.S. 1, 10–11 (1996). The privilege "promotes marital harmony and stability by ensuring that spouses feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." Breton, 740 F.3d at 10 (citation modified); see also 2 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 5:40 (4th ed. 2025) (identifying three bases for the privilege: that "human privacy merits respect, especially in the context of the marital relationship," that "it is unseemly and even offensive to use the power of the state to force revelation of marital confidences," and that marital confidences are "utterly essential to the complete fulfillment of marriage").

Were the marital communications privilege limited to questions of admissibility, the privilege would provide cold comfort—the possibility of forced disclosure to government investigators would destroy the assurance of confidentiality at the heart of the privilege. Cf. Jaffee, 518 U.S. at 11 ("[T]he mere possibility of disclosure may impede development of the confidential relationship necessary for successful [psychotherapy] treatment."). This is why "privileges have an important role as a pre-trial constraint on compulsory process such as criminal subpoenas and civil discovery demands." Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges § 1.3.8, at 101 (4th ed. 2021).

Confidentiality privileges exist to safeguard against the compelled revelation of private information. "The whole point of privilege is privacy." Harbor Healthcare Sys., L.P. v. United

<u>States</u>, 5 F.4th 593, 599 (5th Cir. 2021). Privileges exist to protect the confidentiality necessary to certain relationships by shielding communications made within them from public view.[6] <u>See</u> 1 Glen Weissenberger, <u>Weissenberger's Federal Evidence</u> § 501.3 (2025 ed.) ("A privilege allows a person to resist any governmental process aimed at eliciting protected information."); <u>see also</u> Imwinkelried, <u>supra</u>, § 1.1, at 3 (defining "privileges" as rules that "allow a person who communicated in confidence . . . to shield the communication . . . from compelled disclosure during litigation"); 1 <u>McCormick on Evidence</u> § 72 (9th ed. 2025).

Privileges operate differently than typical rules of evidence, and for good reason: the latter serve to "enhance the reliability of the fact-finding process," Imwinkelried, <u>supra</u>, § 1.3.8, at 96, while the former act, to some degree, in derogation of that process, justified by "a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." <u>Jaffee</u>, 518 U.S. at 9 (citation modified). In the case of the marital communications privilege, that "public good" is the "protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." <u>Wolfle</u>, 291 U.S. at 14. To effectuate the purpose of the privilege as defined by the Supreme Court, a privilege-holder must be able to shield against compelled disclosures at any stage of a judicial proceeding. And,

---

[6] Not every doctrine that is called a "privilege" operates in this manner. <u>Cf.</u> 31 <u>Wright & Miller's Federal Practice and Procedure</u> § 5423 (2d ed. 2025) (discussing competing definitions of "privilege" and distinguishing "quasi-privileges"). The Speech or Debate Clause privilege provides a useful counterexample. That privilege prevents, among other things, the "use of legislative-act evidence against a Member" of Congress. <u>In re Search of Elec. Commc'ns in the Acct. of chakafatta@gmail.com at Internet Serv. Provider Google, Inc.</u>, 802 F.3d 516, 528 (3d Cir. 2015). The privilege serves to protect the independence of the legislative process—not to "encourage confidences by maintaining secrecy." <u>Id.</u> (citation modified). Accordingly, the Speech or Debate Clause privilege does not prohibit disclosure to the government during an investigation. <u>Id.</u>

correspondingly, if a holder sleeps on their privilege during pretrial proceedings despite "realiz[ing] that the once-confidential communication is being revealed," the privilege may be waived. See United States v. Brock, 724 F.3d 817, 820–22 (7th Cir. 2013) (marital communications privilege waived for trial when not asserted during pretrial detention hearing).

The Federal Rules of Evidence give force to these principles, providing that the rules of privilege apply to "all stages of a case or proceeding," including those stages to which evidentiary rules generally do not apply. Fed. R. Evid. 1101(c)–(d). "The reason to insist on across-the-board observance of privileges is that the values protected by privileges would be undercut not merely by use of privileged matter at trial, but by forced disclosure itself." 5 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 11:4 (4th ed. 2025); see also 31 Wright & Miller's Federal Practice and Procedure § 8076 (2d ed. 2025) ("The policy behind extending privilege law to all proceedings is that the values protected by privileges can be destroyed by permitting disclosure of privileged material in any judicial context. . . . The promise that the protection of the privilege would be restored at trial might be insufficient to soothe the concern that a grand jury could compel disclosure."). The harm against which the privilege protects is unconsented intrusion into a confidential sphere, not any harm that the particular information disclosed may cause. Thus, private marital communications, from the mundane to the intimate, are presumptively privileged. See Wolfle, 291 U.S. at 14.

Privileges—including the marital communications privilege—apply at trial (as the government acknowledges), at grand jury proceedings (as established by the Supreme Court), and also to "search warrant[s]" (as directed by Federal Rule of Evidence 1101(d)). Rule 1101 not only encompasses the information offered in support of the search warrant, see, e.g., United States v. Estes, 609 F. Supp. 564, 570–71 (D. Vt. 1985), but also authorizes the imposition of

restrictions or filtering processes on the information seized pursuant to the warrant, cf. Griffin, 440 F.3d at 1144 (assuming without deciding that marital communications privilege shielded confidential communications from disclosure to government during investigation (citing SEC v. Lavin, 111 F.3d 921 (D.C. Cir. 1997))). That federal judicial officers may limit seizures under the authority of a warrant is obvious; every warrant limits its reach to material for which the submission establishes probable cause. Judicial officers possess, and regularly exercise, the authority to impose guardrails on the government's review of material seized pursuant to a judicially authorized search warrant. See, e.g., Doc. No. 3-1 at 11–12 (imposing, inter alia, a one-year limitation on government's search of Target's digital devices); In re the Search of Apple iPhone, IMEI 013888003738427, 31 F. Supp. 3d 159, 165–68 (D.D.C. 2014) (requiring government to specify search protocol before authorizing warrant to search cell phone).

Longstanding practice demonstrates that federal judicial officers likewise can and do restrict government investigators' review of potentially privileged material. At oral argument, the government conceded it must establish a filter process to exclude material subject to the attorney-client privilege when reviewing evidence obtained in this or any other case. This practice is deeply entrenched.[7] See, e.g., In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means, 11 F.4th 1235, 1249–50 (11th Cir. 2021) (discussing widespread approval of filter teams for attorney-client privileged documents); see

---

[7] Those cases that have rejected the government's use of a filter team for attorney-client privileged materials have done so not because the privilege could not be asserted in response to a search warrant or grand-jury subpoena but because, under the specific circumstances presented, a filter team "failed to sufficiently protect" the privilege. See In re Sealed Search Warrant, 11 F.4th at 1250–51 (discussing In re Grand Jury Subpoenas 04-123-03 and 04-124-05, 454 F.3d 511 (6th Cir. 2006), and In re Search Warrant Issued June 13, 2019, 942 F.3d 159 (4th Cir. 2019)). The concerns expressed in those cases do not presently apply here, where Target has requested the imposition of a filter team.

also U.S. Dep't of Just., Just. Manual § 9-13.420 (Jan. 2025) (providing guidelines for safeguarding attorney-client privilege during execution of search warrants for premises of attorneys). Restrictions on investigators' review apply to all attorney-client privileged material, not just material pertaining to a criminal defense. See, e.g., In re Sealed Search Warrant, 11 F.4th at 1239–43, 1246. Plainly, privileges established under Federal Rule of Evidence 501 apply to the review of material seized pursuant to a search warrant, by way of Rule 1101.

The government stresses that the attorney-client privilege differs from the marital communications privilege. Doc. No. 4 at 9–12. It does. But not in a manner that matters for present purposes. The marital communications privilege is not, as the government seems to imply, "of a lower order of privilege." In re Hugle, 754 F.2d at 864. No doubt, the attorney-client privilege is essential to the functioning of our legal system; it serves "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The marital communications privilege protects important private and societal interests not directly connected to the legal system. These differences may lead to different outcomes in some circumstances, but not here. The Supreme Court has ruled that the marital communications privilege outweighs the public's interest in every person's evidence, see Wolfle, 291 U.S. at 14; Blau, 340 U.S. at 334—and that the privilege, like the attorney-client and psychotherapist-patient privileges, protects the confidences at the heart of an important relationship, see Jaffee, 518 U.S. at 10–11.

In the face of all of the foregoing, the government points to various case law discussing the marital communications privilege in terms of its operation at trial, that is, as a tool to exclude certain testimony or evidence. See, e.g., Bey, 188 F.3d at 4–5 ("The marital communications

privilege permits a federal criminal defendant to bar his or her spouse from testifying regarding confidential communications that took place during the marriage."); accord United States v. Picciandra, 788 F.2d 39, 43 (1st Cir. 1986); Breton, 740 F.3d at 10. The Court acknowledges many decisions use these terms. These opinions appropriately recite a definition that applies to the issue presented in those cases: whether a defendant may invoke the privilege to limit certain trial testimony. See, e.g., Breton, 740 F.3d at 9 ("Breton invokes the marital communications privilege to challenge the district judge's admission of Paradis's testimony regarding two groups of statements Breton made to Paradis . . . ."). But, in most cases, these opinions do not purport to describe the full extent of the privilege's scope.[8]

At least one decision from another Judge in this District does state that the "marital communication privilege is a testimonial privilege applicable only at trial." United States v. Wilson, 505 F. Supp. 3d 3, 12 (D. Mass. 2020). The undersigned concurs with the result reached in that case, but to the extent the government reads this language as saying the privilege applies only during a bench or jury trial (as opposed to any compelled disclosure in connection with a judicial proceeding), this Court disagrees. In Wilson, the government had already segregated the spousal emails, filtered out unresponsive materials, redacted explicit contents, and "produc[ed] them for other defendants" at the time of the motion to suppress. Id. In that posture, there was no role for a filter review to play; the toothpaste was already out of the tube, so to speak. Moreover, any violation of the marital communication privilege that occurred in Wilson—or, for that matter, in any other case—would result not in suppression, see, e.g., United States v.

---

[8] For example, the above-quoted definition of the privilege refers to the privilege as belonging to a "federal criminal defendant," Bey, 188 F.3d at 4–5, but the marital communications privilege also applies in civil investigations, Lavin, 111 F.3d at 925, and grand-jury investigations, Blau, 340 U.S. at 334, and it belongs to both spouses, see United States v. Pineda-Mateo, 905 F.3d 13, 21 (1st Cir. 2018).

Squillacote, 221 F.3d 542, 560 (4th Cir. 2000), but at most only in the exclusion of the privileged material from a later trial. That is the precise outcome reached in Wilson; indeed, that result comports fully with the reasoning and result of the instant decision. By contrast, the present case involves an ex ante motion to safeguard the privilege before the communications are reviewed by investigators—to prevent a violation rather than to remedy one.

The government also relies heavily on a recent decision from the Third Circuit, Martino v. United States, No. 24-1404, 2024 WL 3963681 (3d Cir. Aug. 28, 2024) (per curiam). Doc. No. 4 at 12, 21–22. In that case, the target of a criminal investigation appealed from the denial of his request that the government be required to conduct a filter review as to seized property over which he asserted the attorney-client privilege, work-product doctrine, and psychotherapist-patient privilege. Martino, 2024 WL 3963681, at *2–3. In an unpublished opinion, the Third Circuit determined that the target's assertion of the psychotherapist-patient privilege could be adequately addressed in later court proceedings, and that he therefore could not "demonstrate that he would be irreparably harmed absent a taint team." Id. at *3.

Several factors substantially limit the persuasive force of the Martino decision. It "does not constitute binding precedent" even in the Third Circuit under that court's rules. Id. at n.* (citing Internal Operating Procedures of the United States Court of Appeals for the Third Circuit 5.7). The appellant was pro se. The decision never acknowledges let alone grapples with the Supreme Court's observation that "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful [psychotherapy] treatment." Jaffee, 518 U.S. at 10. Instead, it hinges on the proposition that suppression does not lie as a remedy for privilege violations, Martino, 2024 WL 3963681, at *3, without distinguishing between suppression and filter review, see In re Sealed Search Warrant, 11 F.4th at 1247 ("Rule 41(g) . . .

11

offers the remedy of returning . . . any improperly seized documents protected by privilege

<u>before</u> the government has reviewed them. Unlike suppression, that is a remedy that can redress

any potential injury by ensuring it does not occur in the first place." (citations omitted)).

Finally, the government stresses that the marital communications privilege is not a

constitutional privilege. Doc. No. 4 at 9–12. The cases the government cites hold that the "fruit

of the poisonous tree" doctrine is inapplicable to violations of "evidentiary" privileges. <u>See</u>

<u>United States v. Lefkowitz</u>, 618 F.2d 1313, 1318 n.8 (9th Cir. 1980); <u>United States v. Marashi</u>,

913 F.2d 724, 731 n.11 (9th Cir. 1990); <u>Squillacote</u>, 221 F.3d at 560; <u>United States v. Ellefsen</u>,

No. 07-5015-01-CR-SW-FJG, 2008 WL 2977347, at *2 (W.D. Mo. July 30, 2008). But this

argument is ultimately beside the point. Target does not seek suppression; Target seeks relief

under Rule 41(g). <u>See</u> <u>In re Sealed Search Warrant</u>, 11 F.4th at 1247. And no part of the Court's

reasoning turns on whether the common-law marital communications privilege is of

constitutional dimension, nor whether suppression of fruits is available as a remedy (it is not).[9]

As the Supreme Court has recognized, the question when a privilege may be asserted is distinct

from the remedy available if the privilege is violated. <u>See</u> <u>Calandra</u>, 414 U.S. at 346, 349.

In summary, the essence of the marital communications privilege is confidentiality. For

that reason, under binding law, the privilege applies at "all stages" of a judicial proceeding,

including grand jury investigations and the issuance of search warrants. Fed. R. Evid. 1101(c)–

(d); <u>Blau</u>, 340 U.S. at 334. Treating the privilege as a mere rule of admissibility does not

comport with Supreme Court case law or with the rules of privileges.

---

[9] For that matter, courts generally do not apply the "fruit of the poisonous tree" doctrine to
violations of the attorney-client privilege, either. <u>See, e.g.</u>, <u>United States v. Warshak</u>, 631 F.3d
266, 294–95 (6th Cir. 2010).

Before turning to the specifics of the Rule 41(g) analysis in the present case, two more points bear mention.

First, the Court acknowledges the dearth of case law addressing this precise issue: whether a court may order the government to use a filter process to protect presumptively privileged spousal communications from its investigation team in the review of material seized pursuant to a search warrant.[10]  To the extent this bears on what should happen procedurally after the Court's ruling, the Court addresses it below.  The record before the Court suggests a variety of explanations for the dearth of case law.  For one, perhaps in some districts the government engages in such a filter review with or without a court order.[11]  For another, defendants may not learn about the government's collection of confidential communications until after an indictment, at which point the only response in the criminal case is a motion in limine to exclude the communications from trial.  See, e.g., United States v. Montgomery, 384 F.3d 1050, 1054 (9th Cir. 2004); United States v. Pugh, 945 F.3d 9, 16 (2d Cir. 2019).

---

[10] Target cites a case in which a magistrate judge ordered that the defendant was entitled to have a filter team segregate any correspondence falling under either the attorney-client or marital communications privileges.  Matter of Search of Info. Associated With "Staceypromrenke@gmail.com" Located at Google, Inc., No. 1:16-MJ-00073, 2016 WL 9752136, at *2–4 (W.D. Va. June 21, 2016).  The Court is unaware of any other case squarely on point, and a single unpublished district court decision from outside of this Circuit—especially one that did not expressly analyze the question whether the privilege could be asserted during a criminal investigation—is an insufficient ground on which to base the instant decision.

[11] For example, Target cites several criminal cases in which the government used a filter protocol to screen for privileged marital communications and a court impliedly sanctioned that practice. See Doc. No. 6 at 8–9 (citing United States v. Jackson, No. 24-cr-00056-LMM-JKL, 2025 WL 2715258, at *2 (N.D. Ga. Sep. 3, 2025); United States v. Vepuri, 585 F. Supp. 3d 760, 763 (E.D. Pa. 2021); United States v. Cummings, No. 17-cr-00518-TUC-RM, 2019 WL 9240240, at *3 (D. Ariz. Dec. 12, 2019); United States v. Aguilar, 831 F. Supp. 2d 1180, 1193 (C.D. Cal. 2011)); see also In re Search of Info. Associated With Rickmaike@yahoo.com That Is Stored at Premises Controlled by Yahoo! Inc., No. 15-mj-000420-HBB-JHM, 2020 WL 4369448, at *1 (W.D. Ky. July 30, 2020), adopting R. & R., 2020 WL 4373447 (W.D. Ky. July 10, 2020).

Second, the Court is mindful of the competing values at stake in the assertion of a privilege, particularly in the criminal context. Although the Supreme Court has observed there is no case authority for the proposition that "the [attorney-client] privilege applies differently in criminal and civil cases," Swidler & Berlin v. United States, 524 U.S. 399, 408–09 (1998), it is of course true as a practical matter that the issuance and execution of a search warrant in a criminal case is different from a motion to compel civil discovery. Moreover, our judicial system has adopted the principle in criminal cases that "the public has a right to every man's evidence, except for those persons protected by a constitutional, common-law, or statutory privilege."[12] United States v. Nixon, 418 U.S. 683, 709 (1974) (citation modified). Privileges, which by their very nature "hamper the truth-seeking process," Breton, 740 F.3d at 11, are an important but limited exception to this maxim. See Calandra, 414 U.S. at 346 ("[T]he grand jury's subpoena power is not unlimited. It may consider incompetent evidence, but it may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law." (footnote omitted)). The application of privileges in a criminal proceeding must therefore be "strictly construed," ensuring the privilege extends far enough to protect the policies it serves, yet not so far as to unduly shield evidence to which the public is entitled. See Trammel, 445 U.S. at 50. But the Supreme Court has concluded that the "protection of marital confidences" is "so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails," Wolfle, 291 U.S. at 14, such that it may be asserted during grand jury investigations, Blau, 340 U.S. at 334. This Court now applies those teachings to the present case.

---

[12] "This maxim traces at least as far back as Lord Chancellor Hardwicke, in a 1742 parliamentary debate." Trump v. Vance, 591 U.S. 786, 791 n.1 (2020) (citing 12 Parliamentary History of England 693 (1812)).

B.      Injunctive Relief

The parties agree that a motion under Federal Rule of Criminal Procedure 41(g) is the proper mechanism by which to seek an injunction regarding the government's use of a filter protocol.  Doc. No. 3 at 2; Doc. No. 4 at 7; see also In re Sealed Search Warrant, 11 F.4th at 1245 n.6 (identifying Rule 41 as proper basis for filter review challenge); Matter of O'Donovan, 635 F. Supp. 3d 40 (D. Mass. 2022) (addressing same).  The parties also agree that the familiar four-part test for a preliminary injunction applies to Target's Rule 41(g) motion.  Doc. No. 3 at 2; Doc. No. 4 at 7.  To obtain a preliminary injunction, a movant must demonstrate that four factors weigh in their favor: "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest."  Shurtleff v. City of Boston, 928 F.3d 166, 171 (1st Cir. 2019).  Target has made the required showing.

The privilege's raison d'être is to keep confidential marital communications confidential. To serve that purpose, it must shield against compelled disclosure of protected information.  The government's position—that its investigators may, over Target's objection, review any and all spousal communications responsive to the search warrant, whether mundane or intimate—would render the privilege close to meaningless.[13]  For this and all the reasons discussed at length above, Target is likely to prevail.

_____

[13] The government suggested at oral argument that there is no material difference between review by government agents or attorneys working on a taint team and review by government agents or attorneys conducting a criminal investigation.  The Court respectfully disagrees.  In the context of a criminal investigation, every assertion of privilege requires some process of review to evaluate the privilege claim, thus necessitating disclosure to a judge or a special master or a "taint" team of government employees.  This limited review, with its concomitant limitations of further disclosure or use, does not destroy the legal existence of the privilege and differs substantially from the much more wide-ranging use and further dissemination permitted for government agents or employees conducting a criminal investigation.  See, e.g., In re Grand Jury Subpoenas, 454 F.3d at 522–23 (noting that when "potentially-privileged documents are already

15

Second, Target has shown a likelihood of suffering irreparable harm if Target's spousal communications are disclosed to the investigation team without a filter review. The Supreme Court has made clear that the marital communications privilege is about the confidentiality of the marital relationship, see, e.g., Wolfle, 291 U.S. at 14—a relationship whose "transcendent importance" the Supreme Court has recognized, Obergefell v. Hodges, 576 U.S. 644, 656–57 (2015). Marriage is "one of the basic civil rights of man, fundamental to our very existence and survival," Loving v. Virginia, 388 U.S. 1, 12 (1967), and the intimacy of the marital relationship is "to the degree of being sacred," Griswold v. Connecticut, 381 U.S. 479, 486 (1965). The privilege's protection of the marital relationship is destroyed—and the privilege holder is harmed—when the government compels one spouse to disclose their private communications in service of a criminal investigation, regardless of whether the communications are later used as evidence. "The very idea" of such government intrusion "is repulsive to the notions of privacy surrounding the marriage relationship." Id.

Subsequent exclusion of privileged communications from evidence does not repair the harm to marital privacy caused by compelled disclosure. Cf. Griffin, 440 F.3d at 1142 (concluding, while evaluating collateral order doctrine, that defendant had shown irreparable harm because "if [defendant] is correct in his assertion of privilege, by the time of trial he will have suffered 'the very harm that he seeks to avoid,' namely erroneous disclosure of privileged material" (citation omitted) (quoting Sell v. United States, 539 U.S. 166, 177 (2003))); In re Sealed Search Warrant, 11 F.4th at 1247. Moreover, exclusion is a potential remedy only if

---

in the government's possession, . . . the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege"); cf. United States v. Zolin, 491 U.S. 554, 568 (1989) ("[D]isclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege.").

Target (or Target's spouse) is eventually charged with a crime and brought to trial. "If no charges are brought but a [motion in limine] is [Target's] only means of redress, [Target] would never have an opportunity to challenge the government's seizure of [Target's] privileged materials." Harbor Healthcare, 5 F.4th at 600. For these reasons, Target has demonstrated a likelihood of irreparable harm.

Third, the balance of equities between the parties in this case favors the relief Target seeks. Target's interest is weighty. As described above, the marital communications privilege protects those "sacred" confidences that are the "best solace of human existence." Griswold, 381 U.S. at 486; Stein, 38 U.S. at 223. On the other side of the scale, the filter protocol Target seeks imposes a modest burden on the government. As illustrated by the widespread use of such a protocol to protect the attorney-client privilege, the government is equipped to filter out privileged spousal communications. See also supra note 11. Both the burden on the filter team and the effect on the investigation team's access to information are limited. The filter team will review only those documents that (1) are otherwise responsive to the warrant and (2) do not include third parties. This most likely reduces to the email and messaging threads between Target and Target's spouse. The filter team, in turn, may determine that some communications are not privileged, either because they are not private,[14] or because they fall under an exception to the privilege, including the joint participant exception, see Bey, 188 F.3d at 5, subject to judicial review in the event of disputes. At the end of this process, the investigation team will

---

[14] In addition to the presence of a third party, other circumstances may indicate that a communication was not intended to be private—for example, if the communication was made using an employer-provided email account, see United States v. Hamilton, 701 F.3d 404, 407–09 (4th Cir. 2012), or was sent through a regulated system in which communications were not confidential, see Griffin, 440 F.3d at 1144–45 (letters from prison).

receive both the relevant documents not subject to filter review and those deemed not privileged upon review. The balances of the equities tip decidedly in Target's favor.

Finally, the injunction is in the public interest. The marital communications privilege reflects society's determination that its protection is "so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." Wolfle, 291 U.S. at 14. The notion that a person has no power to shield their spousal communications, no matter how intimate, from government investigators offends and violates the "sacred" nature of the marital relationship recognized by the Supreme Court. Against the very real violation of Target's marital confidences, the detrimental effect on the factfinding process is, in this particular case, speculative.

One more argument by the government bears mentioning here. The government sketches out several hypothetical scenarios in which its criminal investigation may be hampered if the target of an investigation (or their spouse) could assert the privilege over evidence it would otherwise seize. Doc. No. 4 at 16–19. Its most vivid hypothetical involves a wife's refusal, after she anonymously called the FBI, to turn over to the government a note in which her husband tacitly confessed to an assassination and identified the location to which he fled. Id. at 17–18. On the facts it lays out, government investigators may be able to access the note by showing that the joint participant exception applies: investigators could determine that their anonymous tipster called the FBI from the couple's home, yet the wife is "evasive[]" and "denies any relevant knowledge" during law enforcement's interview, suggesting she is covering up for her husband. See Bey, 188 F.3d at 5–6 (noting that a "spouse's involvement in the criminal activity . . . need not be particularly substantial to obviate the privilege"). A slight adjustment to the hypothetical more sharply frames the government's concern. Consider the following: In the absence of the

18

anonymous call, but as a result of information collected at the scene, the FBI obtains a warrant to search for evidence at the marital home; the government has no reason to suspect that the wife is a joint participant. The marital communications privilege, as articulated in this decision, would seemingly (but not necessarily) permit the wife to invoke the privilege to preclude review of the note, thereby hampering law enforcement's investigation.[15] But cf. Jaffee, 518 U.S. at 18 n.19 (observing there are likely "situations in which the [psychotherapist] privilege must give way, for example, if a serious threat of harm . . . can be averted only by means of a disclosure by the therapist"). In short, this privilege—as is true with all privileges—imposes, in some circumstances, real consequences on the truth-seeking function of the legal system.

But the Supreme Court, "in the light of reason and experience," has concluded that the values served by the marital privilege "outweigh the disadvantages to the administration of justice that the privilege entails." Fed. R. Evid. 501; Wolfle, 291 U.S. at 14; see also Blau, 340 U.S. at 334. It is not for this Court to second-guess that conclusion. The Court is asked only whether the privilege has any force during criminal investigations. Precedent and reason command that it does.

---

[15] Of course, if the perpetrator communicated face-to-face with his wife, the government would have no opportunity to access or use the communication because there would be nothing tangible to seize. Nor could the government compel the wife to reveal what the husband said during grand-jury testimony. Blau, 340 U.S. at 334. Moreover, the privilege would preclude even her compelled, immunized testimony about those oral, confidential communications. See Trammel, 445 U.S. at 42–43 (noting that wife, who was granted use immunity to testify against husband, was barred from testifying about any confidential marital communications); Wright & Miller, supra, § 5576 ("Of course, a grant of immunity does not overcome the privilege for confidential marital communications since the purpose of that privilege is to prevent disclosure, not use.").

III.   CONCLUSION

For the foregoing reasons, Target's Motion to Enjoin the Government Search (Doc. No. 3) is ALLOWED subject to the following limitations.

The government suggested this outcome could require a substantial change in its practice, at least within this District—one that may deviate from present DOJ practice.  Doc. No. 4 at 14. The Court also notes that no Circuit or Supreme Court decision has required the specific outcome directed herein.  For these reasons, the parties shall submit a joint status report stating their joint or separate positions as to (1) whether the Court should stay this decision pending the government's decision whether to pursue an appeal, (2) the terms of the Order the Court should issue whenever it takes effect, and (3) whether the Court should extend the one-year review period established by the search warrant.  The parties shall file this status report by December 5, 2025.  The Court's injunction will not take effect at least until the Court issues an order responding to the parties' joint status report.  In the interim, the Court orders the government to abstain from reviewing the challenged communications (as it voluntarily has done to date).

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

20