UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: SEARCH OF THE PREMISES LOCATED AT 2260 E SANTA PAULA DR, BREA, CALIFORNIA 92821 | )<br>)<br>)<br>)<br>)<br>)<br>) | No. 25-MC-91442-LTS<br><br>**Filed Under Seal** |

# GOVERNMENT'S MOTION FOR RECONSIDERATION
# OF THE COURT'S NOVEMBER 21, 2025 ORDER
# ENJOINING THE SEARCH OF MARITAL COMMUNICATIONS

LEAH B. FOLEY
United States Attorney


WILLIAM F. ABELY
DAVID J. D'ADDIO
SETH B. KOSTO
KAITLIN R. O'DONNELL
IAN J. STEARNS

**TABLE OF AUTHORITIES**

**Cases**

Beacon Theatres, Inc. v. Westover,
    359 U.S. 500 (1959)................................................................................................ 15

Blau v. United States,
    340 U.S. 332 (1951)............................................................................................ 5, 8

Charlesbank Equity Fund II v. Blinds To Go, Inc.,
    370 F.3d 151 (1st Cir. 2004).................................................................................. 14

Consumer Fin. Prot. Bureau v. MacKinnon,
    2021 WL 4461695 (W.D.N.Y. Sept. 29, 2021) ....................................................... 3

Cushing v. Packard,
    30 F.4th 27 (1st Cir. 2022)...................................................................................... 14

Dalia v. United States,
    441 U.S. 238 (1979)................................................................................................ 10

Drimal v. Tai,
    786 F.3d 219 (2d Cir. 2015).................................................................................... 8

E.E.O.C. v. Astra U.S.A., Inc.,
    94 F.3d 738 (1st Cir. 1996).................................................................................... 15

G-Fours, Inc. v. Miele,
    496 F.2d 809 (2d Cir. 1974).................................................................................... 3

In re Reserve Fund Securities and Derivative Litigation,
    275 F.R.D. 154 (S.D.N.Y. 2011) ............................................................................ 4

In re Sealed Search Warrant,
    11 F.4th 1235 (11th Cir. 2021) .............................................................................. 15

In re Witness Before Grand Jury,
    791 F.2d 234 (2d Cir. 1986).................................................................................... 4

Lamport v. Williams,
    2014 WL 12605141 (S.D. Fla. May 30, 2014) ....................................................... 3

Martino v. United States,
    2024 WL 3963681 (3d Cir. Aug. 28, 2024)............................................................ 15

Mazurek v. Armstrong,
    520 U.S. 968 (1997)................................................................................................ 14

Munaf v. Geren,
  553 U.S. 674 (2008) ........................................................................... 14

Pereira v. United States,
  347 U.S. 1 (1954) ............................................................................... 3

Rosario-Urdaz v. Rivera-Hernandez,
  350 F.3d 219 (1st Cir. 2003) ........................................................... 14

SEC v. Lavin,
  111 F.3d 921 (D.C. Cir. 1997) ......................................................... 10

State v. Gutierrez,
  482 P.3d 700 (N.M. 2019) ................................................................. 5

Trammel v. United States,
  445 U.S. 40 (1980) ........................................................... 5, 7, 16, 19

United States v. Acker,
  52 F.3d 509 (4th Cir. 1995) ............................................................... 6

United States v. Alexio,
  2015 WL 6181752 (D. Haw. Oct. 21, 2015) ................................... 11

United States v. Allen,
  573 F.3d 42 (1st Cir. 2009) ............................................................... 1

United States v. Bahe,
  128 F.3d 1440 (10th Cir. 1997) ......................................................... 6

United States v. Baiyewu,
  2025 WL 2180800 (D.P.R. Aug. 1, 2025) ........................................ 3

United States v. Banks,
  556 F.3d 967 (9th Cir. 2009) ........................................................... 19

United States v. Breton,
  740 F.3d 1 (1st Cir. 2014) ..................................... 2, 4, 6, 11, 16, 17

United States v. Brock,
  724 F.3d 817 (7th Cir. 2013) ............................................................. 6

United States v. Broome,
  732 F.2d 363 (4th Cir. 1984) ............................................................. 5

United States v. Carlson,
  946 F. Supp. 2d 1115 (D. Or. 2013) ........................... 6, 7, 10, 11, 13

ii

United States v. Cintron,
724 F.3d 32 (1st Cir. 2013) ................................................................................ 1

United States v. Duran,
884 F. Supp. 537 (D.D.C. 1995) ......................................................................... 6

United States v. Ellefsen,
2008 WL 2977347 (W.D. Mo. July 30, 2008) .................................................. 13

United States v. Evans,
966 F.2d 398 (8th Cir. 1992) ............................................................................... 3

United States v. Frank,
869 F.2d 1177 (8th Cir.) ...................................................................................... 4

United States v. Giavasis,
1986 WL 18086 (6th Cir. 1986) ............................................................... 4, 7, 13

United States v. Goffer,
756 F. Supp. 2d 588 (S.D.N.Y. 2011)............................................................. 8, 11

United States v. Griffin,
440 F.3d 1138 (9th Cir. 2006) ........................................................................... 10

United States v. Hamilton,
19 F.3d 350 (7th Cir. 1994) ............................................................................... 19

United States v. Hamilton,
701 F.3d 404 (4th Cir. 2012) ............................................................................... 4

United States v. Harding,
2025 WL 3295130 n.9 (W.D. Pa. Nov. 26, 2025) ............................................ 10

United States v. Harper,
450 F.2d 1032 (5th Cir. 1971) ............................................................................. 7

United States v. Hook,
781 F.2d 1166 (6th Cir.1986) ............................................................................... 4

United States v. Irons,
646 F. Supp. 2d 927 (E.D. Tenn. 2009)............................................... 8, 9, 10, 13

United States v. Lefkowitz,
464 F. Supp. 227 (C.D. Cal. 1979) ................................................................. 9, 13

United States v. Lefkowitz,
618 F.2d 1313 (9th Cir. 1980) ........................................................................... 10

United States v. Marashi,
913 F.2d 724 (9th Cir. 1990) ................................................................ 6, 11, 13, 16

United States v. Martinez,
44 F. Supp. 2d 835 (W.D. Tex. 1999)................................................................. 3

United States v. Mavroules,
813 F. Supp. 115 (D. Mass. 1993) .................................................................... 4

United States v. Miller,
588 F.3d 897 (5th Cir. 2009) ............................................................................ 6

United States v. Montgomery,
384 F.3d 1050 (9th Cir. 2004) ........................................................................ 13

United States v. Morgan,
2001 WL 1402998 (D. Me. Nov. 8, 2001)......................................................... 7

United States v. Nicholas,
594 F. Supp. 2d 1116 (C.D. Cal. 2008) .......................................................... 4, 9

United States v. Nixon,
418 U.S. 683 (1974)........................................................................................ 18

United States v. Nocito,
64 F.4th 76 (3d Cir. 2023) ............................................................................. 15

United States v. Porter,
986 F.2d 1014 (6th Cir. 1993) ........................................................................ 16

United States v. Pugh,
945 F.3d 9 (2d Cir. 2019).................................................................................. 6

United States v. Richter,
2021 WL 6197899 (N.D. Ohio Dec. 30, 2021) .................................................. 7

United States v. Roberson,
859 F.2d 1376 (9th Cir. 1988) ..................................................................... 4, 16

United States v. Robinson,
763 F.2d 778 (6th Cir. 1985) ............................................................................ 4

United States v. Shiver,
2006 WL 3248544 (M.D. Ala. Nov. 8, 2006)..................................................... 7

United States v. Simels,
2009 WL 1924746 (E.D.N.Y. July 2, 2009)....................................................... 8

United States v. Sims,
  755 F.2d 1239 (6th Cir. 1985) ................................................................................ 4

United States v. Singleton,
  260 F.3d 1295 (11th Cir. 2001) ..................................................................... 4, 6, 17

United States v. Underwood,
  859 F.3d 386 (6th Cir. 2017) ................................................................................ 6

United States v. Vo,
  413 F.3d 1010 (9th Cir. 2005) ........................................................................ 2, 16

United States v. White Owl,
  39 F.4th 527 (8th Cir. 2022) ................................................................................ 6

United States v. White,
  974 F.2d 1135 (9th Cir. 1992) .............................................................................. 3

United States v. Wilson,
  505 F. Supp. 3d 3 (D. Mass. 2020) ................................................. 5, 9, 12, 13, 16

Veracities PBC v. Strand,
  602 F. Supp. 3d 1354 (D. Or. 2022) ..................................................................... 3

Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,
  645 F.3d 26 (1st Cir. 2011) ................................................................................. 13

Wolfe v. United States,
  291 U.S. 7 (1934) ...................................................................................... 2, 6, 17

Yoder v. United States,
  80 F.2d 665 (10th Cir. 1935) ................................................................................ 4

## Rules, Regulations and Other Authorities

Fed. R. Crim. P. 41 ................................................................................................ 10

Fed. R. Evid. 1101 ................................................................................................ 10

Fed. R. Evid. 1101(d)(2) ......................................................................................... 7

Fed. R. Evid. 501 .................................................................................................... 3

Fed. R. Evid. 502 .................................................................................................... 3

Handbook of Federal Evidence § 505:2 (10th ed. 2025) ...................................... 6

## I.     <u>INTRODUCTION</u>

The government respectfully moves this Court to reconsider its November 21, 2025 order enjoining investigators from reviewing Intervenor's spousal communications because the communications are presumptively privileged.  Dkt. 13 ("the Order").  The Order is based on a manifest error of law—that investigators' review of spousal communications would violate the marital communications privilege.  It would not.  The marital communications privilege is an evidentiary privilege, and investigators' review of spousal communications does not cause the conversations to lose their privileged character.  The Order's requirement that the government use a filter protocol also results in an unjust outcome by imposing a remedy where there has been no violation and by significantly hampering the truth-seeking process underlying all investigations.  Lastly, the Order granted the extraordinary remedy of injunctive relief despite Intervenor establishing no irreparable harm from investigators' review of his spousal communications.  For all of the reasons discussed more fully below, the Court should reconsider its Order.

## II.     <u>LEGAL STANDARD</u>

A court may grant a motion to reconsider: "[1] if the moving party presents newly discovered evidence, [2] if there has been an intervening change in the law, or [3] if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  <u>United States v. Cintron</u>, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (quoting <u>United States v. Allen</u>, 573 F.3d 42, 53 (1st Cir. 2009)).

The Order concluded—contrary to precedent—that investigators' review of spousal communications[1] violates the marital communications privilege.  The Court also held that

---

[1] At this time, the government and Court operate in a vacuum as to whether any of the spousal communications are in fact privileged.  Unlike numerous other cases discussing the marital

1

investigators' review of such communications would result in irreparable harm to Intervenor.  The Court accordingly ordered the government to implement a filter review protocol on all of Intervenor's spousal communications, restricting the investigative team to those spousal communications that ultimately will be admissible in any hypothetical future criminal proceedings. In doing so, the Court incorrectly equated the marital communications privilege with the attorney-client privilege, a holding that is contrary to established precedent (including in this district) on how privileges are to be interpreted, i.e., "narrowly" and "without thwarting the administration of justice."  United States v. Vo, 413 F.3d 1010, 1016 (9th Cir. 2005); Wolfe v. United States, 291 U.S. 7, 17 (1934); United States v. Breton, 740 F.3d 1, 11 (1st Cir. 2014).

Put simply, the Court's holding conflates investigators' review of spousal communications with a total loss of the marital communications privilege's protections.  Precedent makes clear that is not so.  To the contrary, the law accepts that investigators may obtain, and derivatively use, marital communications without destroying their privileged nature.  The privilege remains protected, and any privilege claims may be raised and addressed—if implicated—in any future criminal proceedings.  Thus, there is no resulting irreparable harm to Intervenor.  And in the absence of a violation, no remedy (i.e., filter review) is required.  Moreover, requiring a filter review in this context significantly impedes investigators' ability to execute search warrants effectively, identify inculpatory and/or exculpatory material, and pursue investigative leads.  It also untethers the marital communications privilege from its evidentiary and narrow-application moorings in a way that will significantly hamper the truth-seeking objectives underlying investigations.

---

communications privilege, only Intervenor and his counsel—but neither the Court nor the government—know the actual content and scope of the spousal communications at issue.

## III.    ARGUMENT

### 1.    The Court's Ruling on the Merits is Based on a Manifest Error of Law

The Court's ruling treats inter-spousal communications—at the investigative, pre-charge stage—as standing on equal footing with attorney-client communications.  But as the Court has acknowledged, the two privileges are not the same.  <u>See</u> Ord. at 9 (the attorney-client privilege differs from the marital communications privilege).

The attorney-client privilege is an independent Rule of Evidence, <u>see</u> Fed. R. Evid. 502; in contrast, the marital communications privilege falls under Rule 501's general language on common law privileges, <u>see</u> Fed. R. Evid. 501.  And unlike the attorney-client privilege, courts have identified multiple scenarios in which inter-spousal communications are not confidential (and thus, not privileged), even if transmitted directly from one spouse to the other in the absence of any third party.  Those scenarios include where the communications involve, <u>inter alia</u>, business matters, financials, property,[2] child abuse,[3] and/or information intended to be relayed to a third party.[4]  Courts have similarly deemed spousal communications to be not confidential or privileged where the content shows the spouse to be a joint participant in criminal conduct, or alternatively,

---

[2] <u>See</u>, <u>e.g.</u>, <u>G-Fours, Inc. v. Miele</u>, 496 F.2d 809, 811-813 (2d Cir. 1974) (communications relating solely to business matters are not covered by the marital privilege because the information is not confidential); <u>see</u> <u>also</u> <u>Veracities PBC v. Strand</u>, 602 F. Supp. 3d 1354, 1358–59 (D. Or. 2022) (citing cases); <u>Consumer Fin. Prot. Bureau v. MacKinnon</u>, 2021 WL 4461695, at *5 (W.D.N.Y. Sept. 29, 2021); <u>Lamport v. Williams</u>, 2014 WL 12605141, at *3 (S.D. Fla. May 30, 2014).

[3] <u>United States v. Martinez</u>, 44 F. Supp. 2d 835 (W.D. Tex. 1999) (no spousal communications privilege where mother was accused of abusing her minor children); <u>United States v. White</u>, 974 F.2d 1135 (9th Cir. 1992) (marital communications privilege did not apply to statements relating to crime in which wife's child was victim).

[4] <u>Pereira v. United States</u>, 347 U.S. 1, 6 (1954); <u>United States v. Evans</u>, 966 F.2d 398, 401 (8th Cir. 1992) (to be subject to marital confidential communications privilege, communicating spouse cannot intend for communication to be passed onto others); <u>United States v. Baiyewu</u>, 2025 WL 2180800, at *8 (D.P.R. Aug. 1, 2025) (intention that information conveyed to spouse be transmitted to third person removes confidentiality presumption).

a victim.[5]  A spouse's statements about another spouse's conduct similarly have been held to not

be confidential or privileged,[6] nor have courts extended the privilege to instances where a marriage

is no longer valid,[7] where communications were transmitted over a work email account,[8] or where

a spouse left a communication out in an unidentified location.[9]  Relatedly, courts have allowed

spousal communications to be introduced as co-conspirator statements, for impeachment purposes,

or to be turned over to a third party where material to his/her defense.[10]  In short, there are

---

[5] See United States v. Sims, 755 F.2d 1239, 1241-42 (6th Cir. 1985) (confidential marital communications are not protected if they pertain to joint criminal activity of the spouses (citing cases)); Breton, 740 F.3d at 10 (recognizing exception to spousal communications privilege where one spouse commits an offense against the other).

[6] See United States v. Hook, 781 F.2d 1166, 1173 n.11 (6th Cir.1986) (rejecting defendant's "contention that acts of giving his wife money to pay household bills were communicative acts protected by the federal common law privilege for confidential marital communications"); United States v. Robinson, 763 F.2d 778, 783 (6th Cir. 1985) (holding wife's testimony about finding bill of sale and her husband tearing it up related to actions rather than expressions and, thus, marital communications privilege not applicable); see also United States v. Giavasis, 1986 WL 18086, at *3 (6th Cir. 1986) (the marital communications privilege does not prevent a spouse's "testimony as to acts" of the defendant spouse).

[7] See United States v. Mavroules, 813 F. Supp. 115, 119 (D. Mass. 1993) (assessing marital privilege in context of alleged spousal separation); see also United States v. Singleton, 260 F.3d 1295, 1298 (11th Cir. 2001) (assessing privilege where spouses still cohabitating); United States v. Frank, 869 F.2d 1177, 1179 (8th Cir.), cert. denied, 493 U.S. 839 (1989) (assessing privilege where couple permanently separated); United States v. Roberson, 859 F.2d 1376, 1381 (9th Cir. 1988) (considering whether couple's permanent separation was irreconcilable and applicability of privilege); In re Witness Before Grand Jury, 791 F.2d 234, 238-39 (2d Cir. 1986) (considering length of time couple had been living apart).

[8] See United States v. Hamilton, 701 F.3d 404 (4th Cir. 2012) (no reasonable expectation of privacy in email communications transmitted to spouse using company email system, and therefore, communications were not subject to protections of marital communications privilege); In re Reserve Fund Securities and Derivative Litigation, 275 F.R.D. 154 (S.D.N.Y. 2011) (same).

[9] Yoder v. United States, 80 F.2d 665, 668 (10th Cir. 1935) (affirming that wife could testify to contents of note husband left her where written on a large cardboard box "and doubtless in a conspicuous place").

[10] United States v. Nicholas, 594 F. Supp. 2d 1116, 1128 (C.D. Cal. 2008) (coconspirator entitled to access email from defendant to his spouse, even though email was privileged marital communication, because it could still be admissible at trial (despite spousal privilege) to impeach the defendant, as a coconspirator admission, and/or as material to coconspirator's defense); see

4

numerous carveouts to the spousal communication privilege, many of which do not apply in the attorney-client privilege context.[11]  Consistent with these carveouts (and as another court in this same District has observed), the Justice Manual regulations do not even reference the marital communications privilege when cautioning about government searches of third-party privileged materials.  See United States v. Wilson, 505 F. Supp. 3d 3, 13 (D. Mass. 2020); see also Justice Manual § 9-19.220 (Jan. 2025) (referencing attorney, doctor, and clergyman privileges).

That makes sense.  The attorney-client, priest-penitent, and physician-patient privileges apply to specific types of relationships that are far more limited in scope and (typically) duration than the marital communications privilege.  Trammel v. United States, 445 U.S. 40, 51 (1980) (describing the religious, health, and advocacy underpinnings of the priest-penitent, physician-patient, attorney-client privileges).  The privilege holders' communications in the former three scenarios are focused on targeted objectives, such as securing legal advice, spiritual guidance, or medical treatment.  But marriages can span a lifetime, and "[n]ot every communication between husband and wife is blessed with the privilege" or intended to remain private.  Blau v. United States, 340 U.S. 332, 335 (1951) (Minton, J., dissenting).  There are countless quotidian communications that occur between spouses, the majority of which are not intended to be confidential, even if transmitted directly in person or between electronic devices or accounts.

---

also United States v. Broome, 732 F.2d 363 (4th Cir. 1984) (marital communications privilege does not limit the applicability of the coconspirator exception to the hearsay rule).

[11] A state supreme court has gone so far as to prospectively abolish the marital communications privilege altogether.  See State v. Gutierrez, 482 P.3d 700, 711 (N.M. 2019) (stating "the purported benefits of the spousal communication privilege are questionable, the resulting loss of evidence is nearly certain"; "we cannot accept that [the privilege] meaningfully encourages marital confidences, promotes marital harmony, or produces any substantial public benefit that justifies its continued recognition," but rather, "believe that the privilege is a vestige of a vastly different society than the one we live in today").

If the two privileges are not the same, then they should not be treated the same. The Court's Order nevertheless requires that the government impose the strictures of an attorney-client filter review onto the entirety of the Intervenor's spousal communications. See Ord. at 17-18. The Court's rationale is that the attorney-client and spousal privileges are different, "but not in a manner that matters for present purposes." Ord. at 9. In so holding, the Order blurs the confidentiality of inter-spousal communications and their privileged nature.

The Court deems investigators' review of spousal communications (pursuant to a court-authorized search warrant) as a violation of the marital communications privilege. Ord. at 11 ("[T]he present case involves an *ex ante* motion to safeguard the privilege before the communications are reviewed by investigators—**to prevent a violation rather than to remedy one**." (emphasis added)); id. at 15 ("The government's position—that its investigators may, over Target's objection, review any and all spousal communications responsive to the search warrant, whether mundane or intimate—would render the privilege close to meaningless."). It is not.

"The very concept of 'privileged information' is intrinsically linked to court proceedings." United States v. Carlson, 946 F. Supp. 2d 1115, 1126 (D. Or. 2013). That is why the marital communications privilege is routinely defined as an **evidentiary** privilege (not constitutionally based) applying to evidence and/or testimony that a party seeks to admit in a judicial proceeding. See, e.g., Breton, 740 F.3d at 9–10;[12] see also Handbook of Federal Evidence § 505:2 (10th ed. 2025) (marital communications privilege "bars testimony" in civil and criminal cases "concerning

---

[12] See also United States v. White Owl, 39 F.4th 527, 532-33 (8th Cir. 2022) (marital communications privilege is evidentiary privilege); United States v. Pugh, 945 F.3d 9 (2d Cir. 2019); United States v. Underwood, 859 F.3d 386, 389-90 (6th Cir. 2017); United States v. Brock, 724 F.3d 817, 820 (7th Cir. 2013); United States v. Miller, 588 F.3d 897, 904-05 (5th Cir. 2009); Singleton, 260 F.3d at 1301; United States v. Bahe, 128 F.3d 1440, 1445-46 (10th Cir. 1997); United States v. Duran, 884 F. Supp. 537 (D.D.C. 1995); United States v. Acker, 52 F.3d 509, 514-15 (4th Cir. 1995); United States v. Marashi, 913 F.2d 724, 730 (9th Cir. 1990).

interspousal confidential expressions made during the marital relationship"). The Federal Rules of Evidence codify the same, stating that evidentiary privileges also apply to "grand-jury proceedings" and "miscellaneous proceedings" like "issuing . . . [a] search warrant." Fed. R. Evid. 1101(d)(2) & (3).

Courts recognize that "the disclosure of the same [privileged] information outside of a courtroom—for example, to a police officer—is most accurately described as a breach of confidentiality, **not as a violation of privilege**." <u>Carlson</u>, 946 F. Supp. 2d at 1126 (emphasis added); <u>United States v. Richter</u>, 2021 WL 6197899, at *4-*5 (N.D. Ohio Dec. 30, 2021) (same).[13] For example, the Supreme Court stated in <u>Trammel</u> that neither the spousal testimonial privilege "nor any other privilege[] prevents the government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension" because "[i]t is only the spouse's testimony in the courtroom that is prohibited," <u>i.e.</u>, not the disclosure to investigators. <u>Trammel</u>, 445 U.S. at 53 n.12 (cleaned up). Circuit courts similarly hold that marital communications may be disclosed to law enforcement without losing their privileged character, the latter of which remains preserved by preventing disclosure—where warranted—in any court (or grand jury) proceedings. <u>See</u> <u>United States v. Harper</u>, 450 F.2d 1032, 1042 (5th Cir. 1971) (concluding "the Government did not violate the privilege for confidential marital communications when it used [spouse's] statements as a basis for its investigation of [defendant's] illegal activities," but "did not attempt to introduce any such statements into evidence at . . . trial"); <u>Giavasis</u>, 1986 WL 18086,

---

[13] <u>Cf.</u> <u>United States v. Shiver</u>, 2006 WL 3248544, at *2-*3 (M.D. Ala. Nov. 8, 2006) (psychotherapist-patient privilege "is an evidentiary one"; finding a "marked difference between state confidentiality requirements and federal testimonial privileges"); <u>United States v. Morgan</u>, 2001 WL 1402998, at *4 (D. Me. Nov. 8, 2001) (psychotherapist's out-of-court disclosures of communications with defendant to law enforcement may have breached confidence but did not warrant suppression of evidence).

at *3 (privileges "only protect against the disclosure of marital confidences **in testimony**, not cooperation with law enforcement officials" (emphasis added)).[14]

In the Title III context, courts have held that the wiretap "statute expressly contemplates that privileged communications will be intercepted[] and provides that such communications . . . shall not lose their privileged character." United States v. Goffer, 756 F. Supp. 2d 588, 593 (S.D.N.Y. 2011) (quoting United States v. Simels, 2009 WL 1924746 (E.D.N.Y. July 2, 2009)); cf. Drimal v. Tai, 786 F.3d 219, 224 (2d Cir. 2015) ("[N]othing in Title III prohibits outright the interception or monitoring of privileged conversations," requiring instead that they be minimized like all other non-pertinent communications). That is, courts authorize investigators to obtain, review, and minimize—based on pertinency—oral and/or wire communications (including spousal communications) during Title III investigations, accepting that investigators' review does not strip any such communications of their privileged nature. Goffer, 756 F. Supp. 2d at 593 ("[T]o the extent that these conversations retain their privileged character, they are not admissible as evidence"); id. ("The fact that such communications are ultimately inadmissible, however, does not mean that their monitoring constitutes a violation of Title III.").

In an analogous scenario, a district court held that investigators' monitoring of recorded phone conversations between spouses did "not defeat the confidentiality of the[] communications" or their privileged nature, the latter of which was protected by excluding at trial the spouses' recorded phone communications and the defendant's recorded messages on his spouse's cellphone. United States v. Irons, 646 F. Supp. 2d 927, 953, 958 (E.D. Tenn. 2009). The court similarly

---

[14] Cf. Blau, 340 U.S. at 333-34 (noting defendant-witness's ability to choose between right to testify in grand jury proceeding or to assert privilege against self-incrimination and/or marital communications privilege in response to government's issuance of a summons).

rejected the defendant's argument that all evidence directly or indirectly derived from the recorded telephone messages' disclosure to law enforcement should be suppressed on the grounds that it constituted the "fruit of the primary illegality—revelation of privileged marital communications to [] agents." Id. at 956-57. The court stated that "[t]he marital communications privilege is a product of federal common law" and "does not arise from Fourth Amendment protections, nor does it enjoy any constitutional basis." Id. at 957 (citing cases). Thus, investigators could review, and make derivative use of, the spousal communications—without violating the privilege—and the privilege remained protected through exclusion of the same at trial. Id.; see also United States v. Lefkowitz, 464 F. Supp. 227, 233 n.3 (C.D. Cal. 1979), aff'd, 618 F.3d 1313 (9th Cir. 1980) (the evidentiary rule of marital privilege does not implicate other constitutional rights; providing information to a government agency does not equate with testifying in terms of an evidentiary privilege).

In yet another matter, a district court held that disclosure of a (previously reviewed) email containing confidential spousal communications to a third-party co-defendant did not violate the marital communications privilege, particularly where it was material to that individual's defense, contained a co-conspirator's admissions, and could be used for impeachment purposes. United States v. Nicholas, 594 F. Supp. 2d 1116, 1128 (C.D. Cal. 2008). The court held that the spousal communications privilege remained intact and protected by virtue of the court's issuance of a protective order, which "prevents the disclosure of the [e]mail 'in judicial or grand jury proceedings to the full extent of the marital communications privilege.'" Id. (cleaned up); see also Wilson, 505 F. Supp. 3d at 13 (affirming use of protective order when producing defendant's emails, some of which contained spousal communications, to co-defendants).

In the search warrant context, courts have stated that Rule 1101's requirements regarding the "issuing of" search warrants are "directed at the courts, **not at the law enforcement officers who apply for a warrant**."[15] Carlson, 946 F. Supp. 2d at 1126 ("[T]he Federal Rules of Evidence govern how a court conducts its business in the courthouse.") (emphasis added); see also United States v. Lefkowitz, 618 F.2d 1313, 1317 n.5 (9th Cir. 1980) ("The Federal Rule of Evidence with respect to privileges applies to proceedings for the issuance of search warrants."). That is why investigators may properly incorporate (and identify) privileged communications in search warrant affidavits, and judicial officers may "consider," United States v. Harding, 2025 WL 3295130, at

---

[15] The Order cites to Rule 1101 as applicable authority allowing it to "impos[e] restrictions or filtering processes on the information seized pursuant to the warrant." Ord. at 7-8. But Rule 1101's plain language makes clear that it applies to search warrants' **issuance**, not their execution. See Fed. R. Evid. 1101. And while the issuance of search warrants under Fed. R. Crim. P. 41 involves close judicial scrutiny and supervision, courts traditionally are not involved in the warrants' execution. See Dalia v. United States, 441 U.S. 238, 257-58 (1979) (a search warrant's execution is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant," and "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness"); cf. Irons, 646 F. Supp. 2d at 957 (marital communications privilege does not arise from Fourth Amendment protections and has no constitutional underpinnings). That law enforcement only may obtain a search warrant if authorized by an issuing judicial officer is the "guardrail" to communications' confidentiality that the Order seeks to safeguard anew through a filter review at the execution stage. See Ord. at 8. Similarly, the Court's citations to United States v. Griffin, 440 F.3d 1138 (9th Cir. 2006) and SEC v. Lavin, 111 F.3d 921 (D.C. Cir. 1997) to support its ability to impose a filter review protocol are likewise inapposite. Griffin affirmed the disclosure of marital communications (letters) between a defendant and his spouse, who was also his attorney, ultimately determining that they were not protected by the attorney-client privilege or the work product doctrine. Id. at 1140, 1145. The marital communications privilege was deemed inapplicable and did not protect against the correspondence's disclosure to the government. Id. at 1145. And Lavin is a civil matter addressing a different issue, namely, government's use of compulsory process (an SEC subpoena) to obtain marital confidences. 111 F.3d 921. Notably, the D.C. Circuit remanded the case so that the parties could conduct further discovery to assess whether the privilege could be viably asserted based on whether the communications were in fact confidential. Id. at 924, 934.

*7 n.9 (W.D. Pa. Nov. 26, 2025), or "disregard" any such privileged information when reviewing search warrant applications, Carlson, 946 F. Supp. at 1126.

In sum, courts have "consistently held that the government may use confidential marital communications to investigate crimes" without disturbing the communications' privileged nature. United States v. Alexio, 2015 WL 6181752, at *2 (D. Haw. Oct. 21, 2015) (citing cases). Indeed, it defies logic to say that investigators may obtain and/or utilize spousal communications, without violating the privilege, (1) when seeking the issuance of search warrants, (2) when a privilege-holder spouse discloses privileged communications to law enforcement, (3) when intercepting communications in a court-authorized wiretap investigation, (4) when monitoring recorded spousal communications, or even (5) when disclosing evidence that supports a third party's defense. But, when investigators seek to execute a court-authorized search warrant, those same spousal communications must be per se segregated from the investigative team, siphoned off into a filter review, and reduced to evidentiarily admissible communications to prevent a violation of the privilege. Cf. Goffer, 756 F. Supp. 2d at 593-94 (finding "no per se bar to monitoring privileged calls"; declining to read a heightened requirement into Title III as to the interception of privileged communications). Such a determination effectively suppresses evidence—evidence that may be relevant, material, inculpatory, and/or exculpatory—from an investigation, and eliminates it from total use, derivative or otherwise. The law is clear that the marital communications privilege was not intended to be enforced with this expansive, truth-impeding objective. See Breton, 740 F.3d 10-11; United States v. Marashi, 913 F.2d 724, 730 (9th Cir. 1990) ("[W]e will narrowly construe the marital communications privilege because it obstructs the truth-seeking process.").

The Order's premise also runs counter to decades of case law litigating the admissibility of confidential spousal communications (evidence presumably previously reviewed by an investigative team). None of those cases rebukes the government and/or the investigative team for having obtained, reviewed, and/or derivatively used such spousal communications (to the contrary, many accept investigators' ability to do so, see infra & supra). It asks much to believe that attorneys and courts, ranging from lower courts to the Supreme Court, have routinely turned a blind eye to what the Order identifies as a clear privilege violation, limiting their focus strictly to the admissibility (or lack thereof) of privileged spousal communications obtained during a government investigation. The Order seeks to distance itself from such cases stating, "th[o]se opinions appropriately recite a definition [of the marital communications privilege] that applies to the issue presented in those cases: whether a defendant may invoke the privilege to limit certain trial testimony." Ord. at 10 (stating the "toothpaste was already out of the tube" in such matters). But if true, that means judicial officers and counsel nationwide, for nearly a century, have largely and improbably stayed silent when faced with (what the Court has described as) continuous violations of the privilege.

Moreover, in cases where counsel has alleged a privilege violation based on investigators' review of spousal communications, courts have swiftly rejected such arguments—including in this district and Circuit. See Wilson, 505 F. Supp. 3d at 12 (finding "government did not violate the reasonableness requirement of the Fourth Amendment in reviewing and retaining [defendant's] spousal emails because the marital communications privilege is a testimonial privilege applicable only at trial"). Interestingly, the Order states it "concurs with the result reached in [Wilson]." Ord. at 10. But Wilson found no violation of the marital communications privilege resulting from investigators' "obtain[ing], pursuant to a valid warrant, evidence," including confidential spousal

communications, or from the investigative and prosecutorial team's review of such evidence. <u>Id.</u> at 13 (denying disqualification motion). Relatedly, the Order states that "any violation of the marital communication that occurred in <u>Wilson</u>" (of which there was none), or "any other case," would not result in suppression, "but at most only in the exclusion of the privileged material from a later trial." Ord. at 11. That still assumes some suppression-like remedy exists for any supposed illegality in securing privileged communications: it does not. <u>Wilson</u>, 505 F. Supp. 3d at 12-13; <u>see accord</u> Ord. at 12 (acknowledging that no suppression of fruits is available as a remedy).[16] When courts exclude privileged spousal communications, it is not to remedy a privilege violation; it is because no privilege exception allows for their admissibility. <u>Cf.</u> <u>United States v. Montgomery</u>, 384 F.3d 1050, 1057-1060 (9th Cir. 2004) (holding district court erred in admitting letter protected by marital communications privilege for which no exception applied).

### 2. Because the Court's Ruling is Based on a Manifest Error of Law, Injunctive Relief Is Not Warranted

The Court concluded that the government's review of Intervenor's spousal communications—via investigative team members—would violate the marital communications privilege, but that government review—via independent filter team members—would not. <u>See</u> Ord. at 15-19. Accordingly, it granted the "'extraordinary and drastic remedy'" of a preliminary injunction. <u>Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st

---

[16] <u>See also</u> <u>Marashi</u>, 913 F.2d at 729-731 & n.11; <u>Carlson</u>, 946 F. Supp. 2d at 1129 ("Because the marital privileges are not grounded in the Constitution, federal and state courts have refused to suppress evidence obtained as a result of one spouse's disclosure of confidential marital communications to the police"); <u>Irons</u>, 646 F. Supp. 2d at 956-57 (rejecting application of fruit-of-poisonous-tree doctrine to disclosure of marital communications to law enforcement and any evidence derived therefrom); <u>Lefkowitz</u>, 464 F. Supp. at 233 n.3; <u>United States v. Ellefsen</u>, 2008 WL 2977347, at *2 (W.D. Mo. July 30, 2008); <u>Giavasis</u>, 1986 WL 18086, at *5 (DeMascio, J., dissenting).

13

Cir. 2011) (quoting <u>Munaf v. Geren</u>, 553 U.S. 674, 689–90 (2008)).  Such relief is only available where a movant satisfies by a clear showing the following four elements: "(1) [his] likelihood of success on the merits; (2) the likelihood of [his] suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest."  <u>Cushing v. Packard</u>, 30 F.4th 27, 35–36 (1st Cir. 2022); <u>see</u> <u>also</u> <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).  Applying each factor shows that no such relief was warranted in this case.

First, Intervenor cannot prevail on the merits.  As discussed above, precedent makes clear that investigators may lawfully obtain, review, and derivatively use spousal communications, without depriving them of their privileged character.  <u>See</u> <u>supra</u>.  Intervenor also remains free to challenge the communications' admissibility in any future court proceedings.

Second, there is no irreparable harm resulting from investigators' review of spousal communications.  The law clearly provides that "[a] finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."  <u>Charlesbank Equity Fund II v. Blinds To Go, Inc.</u>, 370 F.3d 151, 162 (1st Cir. 2004); <u>see also</u> <u>Rosario-Urdaz v. Rivera-Hernandez</u>, 350 F.3d 219, 221 (1st Cir. 2003) (irreparable harm is harm that cannot be avoided and has no "adequate remedy at law").  The harm the marital communications privilege shields against is disclosure of marital confidences in court proceedings, which plainly has not materialized yet.  And the remedy at law available to Intervenor—exclusion of privileged communications—will be available to him <u>if</u> the government eventually charges him with a crime, brings him to trial, and seeks to introduce privileged materials at such proceedings. <u>See</u> Ord. at 16-17 (relying on cases discussing the attorney-client privilege and one case in which spouse was also defendant's attorney but in which irreparable harm centered on disclosure of

14

attorney-client communications). That hypothetical scenario does not rise to irreparable harm.[17]

See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 743 (1st Cir. 1996) (stating "this court has consistently emphasized the importance of a showing of irreparable harm in the calculus of injunctive relief").

Lastly, neither the balance of equities nor the public interest support injunctive relief. The government has a clear interest in this insider trading investigation in seeking to review Intervenor's spousal communications based on his trading, his statements to law enforcement about that trading (including in his wife's account), and his communications with multiple other family members about such trading. That is, the government—and public—have a strong interest in protecting and efficiently pursuing[18] the truth-seeking process, including inculpatory and exculpatory information. Balanced against this is Intervenor's concern about protecting his marital confidences from disclosure. But the law is clear that his marital confidences remain privileged, and even inadmissible, in court proceedings; protected in discovery via methods like redactions

---

[17] The Court dismisses a recent Third Circuit opinion, Martino v. United States, that is squarely on point with Intervenor's request (seeking filter review of communications) and the government's position (no such filter review required). 2024 WL 3963681, at *3 (3d Cir. Aug. 28, 2024) (assessing filter review in context of psychotherapist-patient privilege). The Court does so noting that the decision was unpublished, and the appellant was pro se. See Ord. at 11-12. But neither of these points meaningfully detracts from the fact that the Third Circuit rejected the exact same type of injunctive relief that Intervenor here sought, and which this Court granted. Martino, 2024 WL 3963681, at *3. And the Third Circuit did so finding no irreparable harm because the privilege that appellant sought to protect was evidentiary and able to be addressed in any future proceedings. Id. That holds true here, as well. The Court also cites another case to support its finding of irreparable harm, In re Sealed Search Warrant, 11 F.4th 1235, 1247 (11th Cir. 2021), but that case is inapposite because it involved potential government review of "improperly seized documents protected by privilege." Id. Here, communications were lawfully seized pursuant to a court-issued search warrant.

[18] Cf. United States v. Nocito, 64 F.4th 76, 81 (3d Cir. 2023) (noting that a successful Rule 41(g) motion can be misused as a "delay tactic" that "stalls the implementation of justice" and "hinder[s] criminal prosecutions").

and/or protective orders; and that investigators' review of the same (pursuant to a court-issued search warrant) does not violate the privilege (nor the sanctity of his marriage). See Wilson, 505 F. Supp. 3d at 13 (no violation of marital communications privilege where government seized emails containing spousal communications, filtered out unresponsive materials, redacted explicit content interspersed with responsive materials prior to production, and produced pursuant to a protective order to co-defendants).

### 3. The Court's Ruling Presents an Unjust Outcome

Reconsideration is also warranted because the Order, which the Court seeks to unseal, Dkt. 15, produces an unjust outcome.[19] The marital communications privilege (like all privileges) is to be "strictly construed," United States v. Porter, 986 F.2d 1014, 1019 (6th Cir. 1993) (quoting Trammel, 445 U.S. at 50), "without thwarting the administration of justice," Vo, 413 F.3d at 1016; Breton, 740 F.3d at 11 (stating "the marital privileges hamper the truth-seeking process and must be interpreted narrowly").[20] The core of the Court's holding, however, presents significant

---

[19] The Court acknowledges "the dearth of case law" addressing the use of filter reviews to protect spousal communications. Ord. at 13; see also id. at 8. It also cites several cases (previously cited by the Intervenor) in which the government agreed to use a filter protocol on communications that consisted of attorney client communications, doctor-patient communications, and/or spousal communications. See Ord. at 13 n. 11 (citing cases). For those cases that involved spousal communications, the government does not know whether spousal communications were even of interest to investigators before a defendant requested that they be sent to a filter (along with other communications that might be subject to privilege). In contrast, in this case, the government presented facts to the court issuing the search warrant showing that communications between the Intervenor and his spouse would be of interest based on both his trading and his statements to law enforcement about that trading; the issuing court flagged no need for a filter protocol. See Gov. Opp'n at 25. Further, the government's **agreement**, of its own volition, to use a filter protocol to screen marital communications in a handful of cases does not mean that such is **required** here.
[20] See Marashi, 913 F.2d at 730 ("[W]e will narrowly construe the marital communications privilege because it obstructs the truth-seeking process."); see Roberson, 859 F.2d at 1378, 1380 (use of privilege in criminal proceedings requires particularly narrow construction because of society's strong interest in the administration of justice).

implications that will impede the truth-seeking function and administration of justice—squarely contrary to precedent. Cf. Breton, 740 F.3d at 10 (the marital communications privilege should only be applied "to the extent necessary to achieve its underlying goals" (citation omitted)). For example, under the Order's logic, filter reviews presumably would be required when investigators conduct search warrants on, inter alia, electronic devices, electronic accounts (e.g., emails, iClouds), residences, businesses, vehicles, belongings (e.g., luggage, bags, packages, wallets), mail, and/or persons, in case any seized evidence reasonably risked containing privileged spousal communications so as to prevent a violation of the same (or claims of prosecutorial misconduct). Not every target or defendant will have an attorney, but many will have spouses (or at a minimum, claim to have spouses).

The Court is right to be concerned about maintaining the privileged nature of confidential spousal communications. Ord. at 12; id. at 15 ("The privilege's raison d'être is to keep confidential marital communications confidential."). But extensive precedent establishes both the lawfulness of investigators' review of marital confidences and a clear mechanism for asserting that evidentiary privilege, i.e., in criminal proceedings. The Supreme Court has made clear that the spousal communications privilege centers on "holding [spouses'] confidences **immune from proof in court**," but not from investigators seeking to verify the nature and scope of criminal conduct (or victims thereof). Wolfe, 291 U.S. at 16 (emphasis added). Put another way, the marital communications privilege "is not limitless." Breton, 740 F.3d at 10.

In addition to finding a violation that the law has not recognized, see supra, the Order proposes a remedy—a filter team—that expands an evidentiary privilege's otherwise narrow application, creates harm to the truth-seeking process underscoring all privileges, and does little to rectify the Court's principal concern of protecting the communications' privileged nature. United

17

States v. Singleton, 260 F.3d 1295, 1300 (11th Cir. 2001) ("The need for a search for truth in judicial proceedings weighs against construing the [marital communications] privilege any more broadly than necessary to achieve its ends."); see also United States v. Nixon, 418 U.S. 683, 709–10 (1974). The communications remain privileged, regardless of whether Agent/Attorney A (on the investigative team) or Agent/Attorney B (on the filter team) reviews them. But a greater overall harm to the truth-seeking process will result if Agent/Attorney B does so.

That is because there is a material difference between a review of evidence, seized pursuant to a search warrant, conducted by filter review agents/attorneys versus investigative team agents/attorneys. Cf. Ord. at 15 n.13 (citing cases involving government use of compulsory process and attorney-client privilege). The former group will be focused on whether a communication is privileged but will otherwise possess minimal knowledge or context as to the significance any communications hold (no matter how mundane and regardless of their privileged nature) within the scope of an ongoing criminal investigation. More importantly, unless marital confidences are blatantly confidential, a filter team will be ill-equipped to make important judgment calls when parsing through and identifying otherwise innocuous or humdrum marital exchanges that may in fact be presumptively privileged. That contrasts with other privileges, where exchanges involving legal advice, spiritual guidance, or health or medical information will largely be immediately and facially apparent with no greater context or investigative background being required. As such, information pertinent to criminal investigations essentially will be suppressed and lost, including possibly exculpatory information. The latter group will be keen on swiftly identifying communications relevant to a criminal investigation (regardless of their privileged nature), including those that may allow for derivative use and/or that may be relevant to third parties' ability to defend themselves in any future criminal proceedings. The investigative

team's review prevents an unjust outcome, guards against the privilege's detrimental impact on, and obstruction of, the truth-seeking process,[21] and minimally intrudes upon Intervenor's interest in preserving the sanctity of his marital confidences by (1) limiting review of the communications to the investigative team, who are best situated to identify those communications that are pertinent to the investigation and within the search warrant's parameters, and (2) maintaining their privileged character (to the extent they are in fact privileged) through to any future court proceedings.

## IV.    CONCLUSION

For all of these reasons, the Court's Order resulted in a manifest error of law and presents an unjust outcome that warrants reconsideration.

The government has conferred with Intervenor, who intends to oppose this motion. The parties jointly agree that the filing of a joint status report at this time is premature until the Motion for Reconsideration has been fully briefed and ruled upon.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ Kaitlin R. O'Donnell*
WILLIAM F. ABELY
DAVID J. D'ADDIO
SETH B. KOSTO
KAITLIN R. O'DONNELL
IAN J. STEARNS
Assistant United States Attorneys

Date:  December 19, 2025

---

[21] See Trammel, 445 U.S. at 49; United States v. Hamilton, 19 F.3d 350, 353–54 (7th Cir. 1994); United States v. Banks, 556 F.3d 967, 974 (9th Cir. 2009).

# CERTIFICATE OF SERVICE

       I hereby certify that this document filed under seal will be served upon counsel of record for all parties.

By:    */s/ Kaitlin R. O'Donnell*
KAITLIN R. O'DONNELL
Assistant United States Attorney

Dated:  December 19, 2025