UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| IN RE: SEARCH OF THE PREMISES | ) | Case No. 25-mc-91442-LTS |
| LOCATED AT 2260 E SANTA PAULA | ) | |
| DR, BREA, CA 92821 | ) | **<u>Filed Under Seal</u>** |
| | ) | |
| _____ | ) | |

**<u>OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION</u>**

Now comes the Movant, Nowel Milik, and hereby responds to the government's Motion

for Reconsideration. For all of the reasons detailed herein, including the failure to identify any

"manifest error of law" in the Court's November 21, 2025 Order on Movant's motion to enjoin

("Order," herein), the government's motion should be denied.

## I. <u>Introduction.</u>

The Court's Order rests firmly on the footing of more than a century of bedrock Supreme

Court precedent. Almost 100 years ago, in *Wolfle v. United States*, 291 U.S. 7, 14 (1934), the

Supreme Court held that "[c]ommunications between spouses, privately made, are generally

assumed to have been intended to be confidential, and hence they are privileged." Moreover, as

the Court there explained, any *arguendo* harm imposed by the privilege upon the "paramount

judicial goal of truth seeking," *Swidler & Berlin v. United States*, 524 U.S. 399, 410 (1998), is

outweighed by the transcendent importance of the marital union:

> The basis of the immunity given to communications between husband and wife is
> the protection of marital confidences, regarded as so essential to the preservation
> of the marriage relationship as to outweigh the disadvantages to the
> administration of justice which the privilege entails.

1

*Wolfle*, 291 U.S. at 14; *see also Stein v. Bowman*, 13 Pet. 209, 223 (1839) (characterizing marital union as "the best solace of human existence").

Undeterred, the government insists the privilege has no application "at the investigative, pre-charge stage" of proceedings. Govt. Motion at 3. The Supreme Court squarely rejected this argument seventy-five years ago, in *Blau v. United States*, 340 U.S. 332 (1951), which the government essentially ignores in its submission. In *Blau*, the Court held a husband lawfully invoked the marital communications privilege before a federal grand jury, ruling the husband's invocation of the privilege was "both understandable and lawful," and there was "*no doubt* that he was entitled to claim his privilege." *Blau*, 340 U.S. at 334 (emphasis added). As this Court noted in its Order, "[t]wo decades later, the Supreme Court reaffirmed and broadened this holding when it ruled: '[T]he grand jury's subpoena power is not unlimited. . . . [I]t may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law. . . . *Judicial supervision is properly exercised in such cases to prevent the wrong before it occurs*.'" Order at 4 (emphasis added) (quoting *United States v. Calandra*, 414 U.S. 338, 346 (1974)).

The government's other threshold argument, that the attorney-client privilege is "an independent Rule of Evidence," which does not "fall[]under Rule 501's general language on common law privileges," Govt. Motion at 3, is likewise belied by a century-plus of Supreme Court jurisprudence. *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (the attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law"). Stated simply, "[t]he marital communications privilege is not, as the

2

government seems to imply, 'of a lower order of privilege.'" Order at 9 (quoting *In re Grand Jury Investigation of Hugle*, 754 F.2d 863, 864 (9th Cir. 1985)).

For these and other reasons detailed herein, the Court should deny the government's motion for reconsideration.

**II.     Standard of Review.**

Because the government offers no newly discovered evidence and there has been no intervening change in the law, the only question is whether it was a "manifest error of law" and/or "clearly unjust" for the Court to hold the government is not entitled to free reign to review Movant's privileged communications with his spouse.[1]  *See* Govt. Motion at 1 (quoting *United States v. Cintron*, 724 F.3d 32, 36 n.5 (1st Cir. 2013)).

**III.     Argument.**

> A.     *The government threshold position is a non-starter: the marital communications privilege applies pre-charge and the attorney-client privilege is a common law privilege interpreted under Rule 501.*

The government's threshold argument—that "the attorney-client privilege is an independent Rule of Evidence," while the marital communications privilege falls under Rule 501's general language on common law privileges," Govt. Motion at 3, is a non-starter.  This

---

[1] As the Court has previously observed, "[t]he Supreme Court has cautioned that 'as a rule courts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Benchmark Techs., Inc. v. Tu*, No. 22-CV-10227, 2023 WL 4399979, at *1 (D. Mass. Jan. 20, 2023) (Sorokin, J.) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).  "Motions for reconsideration 'are not to be used as a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment.'"  *Id.* (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)).

primary argument for reconsideration, presented without a single judicial authority, flatly misstates the law.

The attorney-client privilege is a common law privilege whose interpretation is governed by Rule 501, as the Supreme Court has made perfectly clear, in case after case (after case). For example, in *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), in addressing the scope of the attorney-client privilege in the corporate context, the Court began its analysis by noting that "Federal Rule of Evidence 501 provides that 'the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience,'" and then observed that the "attorney–client privilege is the oldest of the privileges for confidential communications *known to the common law*." (emphasis added) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). Eight years later, in *United States v. Zolin*, 491 U.S. 554, 568 (1989), yet another seminal Supreme Court decision addressing the reach of the attorney-client privilege, the Court held that, "[h]aving determined that Rule 104(a) does not prohibit the *in camera* review sought by the IRS, we must address the question as a matter of the federal common law of privileges," once again explicitly citing Rule 501. In *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998), the Court wrote that its "interpretation of the [attorney-client] privilege's scope is guided by 'the principles of the common law ... as interpreted by the courts ... in the light of reason and experience,'" citing Rule 501.[2] Likewise, in *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011), another

---

[2] *See Id*. at 405-406 (relying on Rule 501 language to hold that burden fell on Independent Counsel "to show that 'reason and experience' require a departure from this rule"); *id*. at 410-411 (again relying on Rule 501).

decision addressing the reach of the attorney-client privilege, the Court once again began its analysis by noting that Rule 501 governed the analysis.[3]

In short, the attorney-client privilege is a creature of common law, dating back to the "Tudor dynasty at least," *In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006), and is decidedly not "an independent Rule of Evidence." Govt. Motion at 3. Just like the marital communications privilege, the attorney-client privilege "falls under Rule 501's general language on common law privileges." *Id.* The only authority the government cites for its contrary assertion is Fed. R. Evid. 502, which is clearly and facially limited to ***waiver*** of attorney-client privilege. As this Court correctly held, the attorney-client privilege and the marital communications privilege do not differ in "a manner that matters for present purposes." Order at 9.

Secondly, application of the marital communications privilege is not limited to post-charge events, nor is it applied only when a party seeks to admit evidence during a judicial proceeding. *Cf.* Govt. Motion at 3 (asserting the Court erred in "treat[ing] inter-spousal communications—at the investigative, pre-charge stage—as standing on equal footing with attorney-client communications"). The Supreme Court, in *Blau*, squarely held that a husband's invocation of the privilege *before a federal grand jury* was "both understandable and lawful," and there was "*no doubt* that he was entitled to claim his privilege." *Blau*, 340 U.S. at 334 (emphasis added); Order at 4 ("Supreme Court has expressly held that the marital communications privilege is not limited to excluding evidence at trial") (citing *Blau).* The

---

[3] *See also In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011); *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002); *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998).

government fails to grapple with *Blau*, relegating it to a single "*cf.*" citation in a footnote. Govt. Motion at 8 n.14. In any event, *Blau* facially defeats the government's fundamental claim of error here: that the Court manifestly erred in holding the marital communications privilege applicable "at the investigative, pre-charge stage." Govt. Motion at 3. *Blau* compels that result.

That some courts have referred to the marital communications privilege as an "evidentiary" privilege is the product of the context of the discussion, and is entirely beside the point. *Cf.* Govt. Motion at 6 ("That is why the marital communications privilege is routinely defined as an **evidentiary** privilege (not constitutionally based) applying to evidence and/or testimony that a party seeks to admit in a judicial proceeding") (emphasis original). Indeed, the Supreme Court has repeatedly referred to the attorney-client privilege as an "evidentiary" privilege. *See, e.g.*, *Jicarilla Apache Nation*, 564 U.S. at 165 ("attorney-client privilege ranks among the oldest and most established *evidentiary* privileges known to our law") (emphasis added); *id.* at 169 (noting "that evidentiary privileges 'shall be governed by the principles of the common law…'"); *Fisher v. United States*, 425 U.S. 391, 401 (1976) ("or *evidentiary* privileges such as the attorney-client privilege") (emphasis added).

The government does not, in any meaningful way, address the Court's finding that "[l]imiting the application of the marital communications privilege to the exclusion of evidence at trial would eviscerate the very purpose of the privilege, as defined by the Supreme Court," namely "'[p]rotect[ing] information privately disclosed' between spouses 'in the confidence of the marital relationship.'" Order at 4-5 (quoting *Trammel*, 445 U.S. at 51). Indeed, despite claiming a "manifest error of law," the government has failed to cite a single new precedent supporting its position.

Finally, in stressing the ostensible importance of the subject communications to its investigation, the government runs directly into the Supreme Court's rejection of a balancing test in *Jaffee v. Redmond*, 518 U.S. 1, 17-18 (1996):

> We part company with the Court of Appeals on a separate point. We reject the balancing component of the privilege implemented by that court and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

B.      *Exceptions and limitations to privileges—including the attorney-client privilege— are routine and ordinary.*

In a second attempt to distinguish the attorney-client privilege from the marital communications privilege, the government argues that "courts have identified multiple scenarios in which inter-spousal communications are not confidential (and thus, not privileged), even if transmitted directly from one spouse to the other in the absence of any third party."  Govt. Motion at 3.  The mere fact that the marital communications privilege is subject to exceptions and limitations is not at all "unlike the attorney-client privilege."  Govt. Motion at 3.  To the contrary, "[t]he attorney-client privilege is riddled with many exceptions . . . ."  *United States v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003).  In fact, the vast majority of the purported limitations to the marital communications privilege noted by the government are directly analogous to well-established limitations on the attorney-client privilege.

The first purported limitation cited by the government, that the marital communications privilege does not apply to communications regarding "business matters, financials, [or]

7

property," Govt. Motion at 3, was directly rejected by the First Circuit. *See Rakes*, 136 F.3d at 3 ("The government suggests that some general rule deprives spousal conversations of the privilege if they relate to financial matters . . . . The marital communications privilege contains no such limitation: the cases say, at most, that a discussion of financial matters between husband and wife may not be intended to be confidential."). In any event, the attorney-client privilege applies only to legal advice, and has been repeatedly held not applicable to mere business advice. *See United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984); *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984); *Rain v. Connecticut Gen. Corp.*, No. 17-CV-30115, 2022 WL 2294061, at *3 (D. Mass. June 23, 2022). "[I]nformation intended to be relayed to a third party," Govt. Motion at 3, is likewise not protected by attorney-client privilege. *See United States v. Schussel*, 291 F. App'x 336, 347 (1st Cir. 2008) (unpublished); *O'Neill v. City of Springfield*, No. 20-CV-30036, 2023 WL 3394489, at *3 (D. Mass. May 11, 2023). Just as the marital communications privilege may not apply where the spouse is a "joint participant in the criminal conduct," Govt. Motion at 3, courts have long recognized the "crime-fraud" exception to attorney-client privilege. *Zolin*, 491 U.S. at 556. Just as the marital communications privilege may not apply where the spouse is a victim, ethical rules permit attorneys to "reveal confidential information" where necessary "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . ." Mass. R. of Prof'l Conduct 1.6(b)(5). Just as "[a] spouse's statement about another spouse's conduct" is not protected, Govt. Motion at 4, the attorney-client privilege is limited to "communications," *Rakes*, 136 F.3d at 3-4. The attorney-client privilege, like the marital communications privilege, may not apply to communications "transmitted over a work email

8

account" that is subject to third-party monitoring. Govt. Motion at 4; *see United States v. Finazzo*, 682 F. App'x 6, 16 (2d Cir. 2017) (unpublished); *In re Reserve Fund Secs. & Derivative Litig.*, 275 F.R.D. 154, 163 (S.D.N.Y. 2011) (relying on caselaw applying attorney-client privilege). Given the requirement of confidentiality, it is difficult to imagine attorney-client privilege being held applicable to a note "written on a large cardboard box" that was left "in a conspicuous place." Govt. Motion at 4 n.9 (quoting *Yoder v. United States*, 80 F.2d 665, 668 (10th Cir. 1935)).[4]

Moreover, while legally irrelevant, it is not necessarily true that other privileges "are far more limited in scope and (typically) duration than the marital communications privilege."

---

[4] The government's final purported limitation on the marital communications privilege, namely that "courts have allowed spousal communications to be introduced as co-conspirator statements, for impeachment purposes, or to be turned over to a third party where material to his/her defense," is a broad and unjustified generalization from a single out-of-circuit precedent, lacking important context. Govt. Motion at 4. *United States v. Nicholas*, 594 F. Supp. 2d 1116 (C.D. Cal. 2008), involved an email sent by the defendant to his wife via his employer's account that the employer, five years later, voluntarily provided to the government. The contents of the email were subsequently published in the *Orange County Register*. *See id.* at 1122. Regarding impeachment, the court held that the email "may be admissible to impeach [the defendant] ***if he gives exculpatory testimony that contradicts his incriminating statements in the Email***." *Id.* at 1124 (emphasis added). This is a straightforward and unremarkable application of waiver principles that apply equally to many other privileges, including attorney-client privilege. *See id.* at 1124-25 ("[T]he Ninth Circuit has recognized that the attorney-client privilege can be waived when a defendant testifies about the substance of privileged communications."). Regarding admissibility as co-conspirator statements, *Nicholas* held that the co-defendant did "not have standing to assert the marital privilege because [the primary defendant] and his wife alone [we]re the holders of the privilege. . . . [I]t is well settled that although the introduction of evidence may violate one party's rights, it may nonetheless be admissible against a party who lacks standing to object." *Id.* at 1126-27. Given the email's potential admissibility, *Nicholas* held that it must be disclosed to the co-defendant who already "presumably" knew "about the email in light of its publication in the *Orange County Register*." *Id.* at 1128. It is far from clear that the result, on these unique facts, would have been any different had the email implicated attorney-client privilege.

Govt. Motion at 5.  While a marriage can last a lifetime, many marriages do not.  And a relationship with a priest, physician, or attorney can similarly span many years or even decades. The only authority cited by the government in support of this purported distinction, *Trammel v. United States*, 445 U.S. 40, 51 (1980), actually described the marital communications privilege as similar to these other privileges in protecting "private communications."  *See also Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (describing "spousal and attorney-client privileges" as both "rooted in the imperative need for confidence and trust" (citation omitted)).  *Trammell* distinguished only the spousal testimony privilege, which has no bearing here.[5]

While the government notes that the DOJ Manual does not provide for filter review of marital communications, Government Motion at 5, it neglects to mention that an article in the DOJ's Journal of Federal Law and Practice, authored by a two-time U.S. Attorney, matter-of-factly states that, "[a]s with the attorney-client or work product privilege, a filter team protocol may be necessary to review materials seized or subpoenaed that may be subject to" marital privilege.  Gretchen C. F. Shappert & Christopher J. Costantini, *Recent Case Law Developments Involving the Crime-Fraud Exception: The Attorney-Client Privilege, Filter Team Protocols, and Other Privileges*, 69 DOJ J. Fed. L. & Prac. 289, 335 & n.239 (2021).  The article reflects no hint of the parade of horribles now offered by the government.

For all of these reasons, the government's foundational argument, that "[i]f the two

---

[5] The government asserts that one "state supreme court has gone so far as to prospectively abolish the marital communications privilege altogether," Govt. Motion at 5 n.11, neglecting to mention that the opinion it cites was subsequently retracted.  *See State v. Gutierrez*, 482 P.3d 700, 724 (N.M. 2019).  In any event, whatever its status under New Mexico state law, binding Supreme Court precedent makes clear that the marital communications privilege continues to apply under federal common law and Fed. R. Evid. 501.

privileges are not the same, then they should not be treated the same," Govt. Motion at 6, must

be rejected. And, given the government's concession that attorney-client privileged

communications are appropriately subjected to filter review, the foregoing should be sufficient to

deny the government's Motion. Regardless, even setting aside the government's failed effort to

distinguish attorney-client privilege, the government falls well short of demonstrating any

manifest error of law.[6]

C. _The hodgepodge of cases offered by the government does not alter the analysis._

The government boldly asserts that "it defies logic to say that investigators may obtain

and/or utilize spousal communications, without violating the privilege, (1) when seeking the

issuance of search warrants, (2) when a privilege-holder spouse discloses privileged

communications to law enforcement, (3) when intercepting communications in a court-

authorized wiretap investigation, (4) when monitoring recorded spousal communications, or even

(5) when disclosing evidence that supports a third party's defense," but "when investigators seek

to execute a court-authorized search warrant, those same spousal communications must be _per se_

segregated from the investigative team, siphoned off into a filter review, and reduced to

---

[6] The government also seeks to distinguish attorney-client privilege (and other privileges), positing that "exchanges involving legal advice, spiritual guidance or health or medical information will largely be **immediately and facially apparent** with no greater context or investigative background being required." Government Motion at 18 (emphasis added). Any attorney who has conducted a privilege review knows this to be a vast oversimplification. "While the standard for determining whether a communication is protected by the attorney-client privilege is straightforward, the application of that standard sometimes requires nuance. The line between legal advice and non-legal advice is hazy." _Weinstein v. Univ. of Connecticut_, No. 11-CV-1906, 2013 WL 2244310, at *5 (D. Conn. May 21, 2013); _see also Int'l Tel. & Tel. Corp. v. United Tel. Co. of Fla._, 60 F.R.D. 177, 184 (M.D. Fla. 1973) ("[T]he determination of whether a communication falls within the scope of privilege, be it attorney-client or otherwise, is a complex conclusion of law."). The situation only becomes more complicated where analysis of the myriad exceptions to the privilege and/or waiver is required.

evidentiarily admissible communications to prevent a violation of the privilege." Govt. Motion

at 11. Cobbled together by a misread of a litany of non-binding cases, this argument is likewise

without merit.

First, many of the cases cited by the government dealt exclusively with voluntary

disclosure of potentially privileged communications to law enforcement. *See United States v.*

*Alexio*, No. 13-CR-01018, 2015 WL 6181752, at *2 (D. Haw. Oct. 21, 2015) ("Courts have

consistently held that the government may use confidential marital communications to

investigate crimes, ***particularly when one spouse has volunteered the information***" (emphasis

added));[7] *United States v. Richter*, No. 21-CR-355, 2021 WL 6197899, at *4 (N.D. Ohio Dec.

30, 2021) (distinguishing *Jaffee*, in context of psychotherapist-patient privilege, as "exclusively"

protecting against "compelled disclosure"); *United States v. Carlson*, 946 F. Supp. 2d 1115,

1118-20 (D. Or. 2013) (defendant's wife called FBI and voluntarily participated in interviews);

*United States v. Shiver*, No. 05-CR-256, 2006 WL 3248544, at *3 (M.D. Ala. Nov. 8, 2006)

(counselor "voluntarily contacted law enforcement officers and disclosed to them [defendant's]

confidential communications to her"); *United States v. Morgan*, No. 01-CR-45, 2001 WL

1402998, at *4 (D. Me. Nov. 8, 2001) ("Common sense dictates that an evidentiary privilege,

intended to protect someone from court *compelled* disclosures of secrets or confidences, is not

applicable to voluntary, unsolicited disclosure made to a law enforcement officer and then

incorporated into an affidavit in support of a search warrant."); *United States v. Harper*, 450 F.2d

1032, 1044 (5th Cir. 1971) (defendant's wife, "thinking that it would enable [him] to get medical

---

[7] In quoting *Alexio,* the government notably omits the highlighted phrase. Govt. Motion at 11.

and psychiatric care, informed federal agents that [defendant] was engaged in the illegal manufacture of methadone”);[8] *United States v. Giavasis*, 805 F.2d 1037, at *1 (6th Cir. Oct. 15, 1986) (unpublished) (detailing voluntary disclosures by defendant's wife); *United States v. Irons*, 07-CR-95 (E.D. Tenn.), Dkt. 23 (motion to suppress consensual recordings by defendant's wife).

As this Court's Order made clear (repeatedly), the privilege protects against compelled (not voluntary) disclosure. *See* Order at 5 (“[T]he possibility of ***forced*** disclosure to government investigators would destroy the assurance of confidentiality at the heart of the privilege.” (emphasis added)); *id.* (“[P]rivileges have an important role as a pre-trial constraint on ***compulsory*** process such as criminal subpoenas and civil discovery demands.” (emphasis added) (citation omitted)); *id.* at 6 (citing definition of “privileges” as “rules that allow a person who communicated in confidence . . . to shield the communication . . . from ***compelled*** disclosure during litigation” (emphasis added) (citation omitted)); *id.* at 7, 15 (same).

Many of the cases cited by the government are doubly distinguishable because they addressed *post-hoc* arguments for suppression of evidence, rather than “an ex ante motion to safeguard the privilege before the communications are reviewed by investigators,” Order at 11, like Movant's here. *See Carlson*, 946 F.2d at 1115 (“[T]he Court is not convinced that an evidentiary mistake can render a probable cause finding *constitutionally* deficient.”); *United States v. Irons*, 646 F. Supp. 2d 927, 957 (E.D. Tenn. 2009) (“The marital communications privilege . . . does not arise from Fourth Amendment protections, nor does it enjoy any

---

[8] The *Harper* Court also noted it was “doubtful that the privilege for confidential communications between spouses would” even apply because “[t]he illegal manufacture of methadone would not seem to be the kind of communicative act the privilege seeks to protect” and because “several persons . . . also knew of [defendant's] confidential information” and defendant “made no effort to keep the fact of his illegal activity secret.” *Id.* at 1046 n.9.

constitutional basis."); *Richter*, 2021 WL 6197899, at \*1 (involving motion to suppress); *Shiver*, 2006 WL 3248544, at \*1 (same); *Morgan*, 2001 WL 1402998, at \*1 (same); *United States v. Wilson*, 505 F. Supp. 3d 3, 12 (D. Mass. 2020) (same); *United States v. Harding*, No. 25-CR-44, 2025 WL 3295130, at \*1 (W.D. Pa. Nov. 26, 2025) (same). Movant does not here contend that the marital communications privilege is constitutional, or that it provides grounds for suppression under the fruit-of-the-poisonous-tree doctrine. Indeed, the attorney-client privilege likewise supports no such remedy. Order at 12 n.9 (citing *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010)). As the Court appropriately recognized, the foregoing authority and other similar caselaw "is ultimately beside the point. Movant does not seek suppression . . . ." Order at 12. Not a single case cited by the government involved any request, like Movant's here, to require a filter review of marital communications prior to those communications being reviewed by investigators.

The government's reliance upon Title III wiretap caselaw is likewise misplaced. As the government correctly notes, the relevant statute "expressly contemplates that privileged communications will be intercepted[] and provides that such communications . . . shall not lose their privileged character." Govt. Motion at 8 (quoting *United States v. Goffer*, 756 F. Supp. 2d 588, 593 (S.D.N.Y. 2011)). Because Rule 501 explicitly affords Congress the power to limit privileges by "federal statute," it is unsurprising that courts have declined to find privilege violations in that context. *Cf. United States v. Zigmond*, No. 15-CR-20283, 2017 WL 3149207, at \*4 (E.D. Mich. July 25, 2017) ("[T]here is no statutory requirement that attorney-client privileged calls be minimized, *per se*." (citation omitted)); *United States v. Gotti*, 771 F. Supp. 535, 544 (E.D.N.Y. 1991) ("[T]he statutes authorizing electronic surveillance which were

14

enacted with a sensitive concern for constitutional rights make no special provision for [attorney-client] privileged communications beyond requiring that the interception be minimized.").

Finally, the government's emphatic suggestion that "Rule 1101's plain language makes clear that it applies to search warrants' **issuance**, not their execution," Govt. Motion at 10 n.15 (emphasis original), is simply wrong. Rule 1101 explicitly provides that the rules of privilege apply to "**all stages** of a case or proceeding," F.R.E. 1101(c) (emphasis added), without any limitations. Here, the issuance of the subject search warrant, formally designated with its own independent case number, resulted in the initiation of a "case or proceeding," and hence the rules of privilege apply here.[9] That Rule 1101 later provides that the rules of evidence, *except for privilege*, do not apply to certain miscellaneous proceedings, *see* F.R.E. 1101(d), does not alter or limit the breadth of Rule 1101(c), and certainly does not preclude application of the rules of privilege to a proceeding challenging the government's contemplated execution of the search warrant. *See* Order at 7 ("The Federal Rules of Evidence give force to these principles, providing that the rules of privilege apply to 'all stages of a case or proceeding,' including those stages to which evidentiary rules generally do not apply") (citing Fed. R. Evid. 1101(c)–(d)); *see also Matter of Search of Info. Associated With "Staceypromrenke@gmail.com" Located at Google, Inc.*, No. 16-MJ-00073, 2016 WL 9752136, at *3 (W.D. Va. June 21, 2016) (citing Rule 1101 in requiring filter review of spousal communications). Indeed, judicial authority to prevent

---

[9] Rule 41 explicitly authorizes a person "aggrieved" by an unlawful search and seizure of property to move for its return, which likewise initiates a "case or proceeding." *See In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1247 (11th Cir. 2021) ("Rule 41(g) . . . offers the remedy of returning . . . any improperly seized documents protected by privilege before the government has reviewed them") (cited in Order at 11-12). And, the common law of privilege applies regardless.

15

the government from violating a citizen's lawful privilege during execution of a search warrant clearly exists—otherwise, there would be no apparent basis for the imposition of filter review protocols in searches implicating attorney-client privilege, which, again, the government concedes is required.

The government is simply wrong in portraying the Order as "counter to decades of case law litigating the admissibility of confidential spousal communications . . . ." Government Motion at 12. The Court's Order does not assume "that attorneys and courts, ranging from lower courts to the Supreme Court, have routinely turned a blind eye to . . . a clear privilege violation, limiting their focus strictly to the admissibility (or lack thereof) of privileged spousal communications obtained during a government investigation." Govt. Motion at 12. As an initial matter, the government argument ignores the familiar rule that courts generally decide only those questions presented to them. Even overlooking this point, however, the government reads far too much into the caselaw. The government's timeline ("nearly a century," Govt. Motion at 12) and its focus on the Supreme Court presumably refer to the 1934 *Wolfle* decision. That precedent found admissible the testimony of a stenographer who had been hired by the defendant to transcribe a letter to his wife, because the act of dictating the letter to the stenographer brought it beyond the privilege's protection of confidential marital communications. *See* 291 U.S. at 16-17. The opinion provides no information at all about how investigators became aware of the letter, which, in any event, was found not to be privileged. Accordingly, *Wolfle* provides no indication whatsoever that investigators may engage in unrestricted review of communications that ***are***, in fact, protected by privilege. *United States v. Montgomery*, 384 F.3d 1050 (9th Cir. 2004), did involve a letter obtained by search warrant executed on a residence. However, there

16

is no indication that the defendant made any assertion of privilege until the government sought to introduce the letter at trial. In any event, *Montgomery* was a 2004 decision, long preceding modern electronic searches like that at issue here and the popularization of filter reviews.[10] Simply put, cases from decades (or even a century) ago could not possibly have envisioned the wholesale seizure of electronic evidence which now appears to be a regular practice by prosecutors in this District investigating suspected financial crimes. *See, e.g.*, *United States v. Kanodia*, No. 15-CR-10131, 2016 WL 3166370, at *6-7 (D. Mass. June 6, 2016); *United States v. Klyushin*, 643 F. Supp. 3d 261, 270 (D. Mass. 2022). In the end, whether or not arguments have (or have not) been made in *other* cases, the privilege has been timely and lawfully asserted here. And, the plenary review of wholesale seizures, often implicating years-long correspondence between spouses, violates the privilege, absent an appropriate filter protocol that eliminates investigators' ability to review presumptively privileged marital communications.

> D. *Establishing irreparable harm not required in Rule 41 context.*

While Movant presented his Rule 41 argument to this Court in terms of the four-factor test traditionally applied to motions for preliminary injunctions, *see* Motion to Intervene and Enjoin Govt. Search at 2, a showing of irreparable harm is no longer required in the context of a Rule 41 Motion. The requirement of irreparable harm is rooted in "case law referring to an outdated version of the Federal Rules of Criminal Procedure." *Carpenter v. Koskinen*, No. 13-CV-563, 2015 WL 3510300, at *6 (D. Conn. June 4, 2015). Rule 41 was amended in 1989 to eliminate the previous requirement of automatic suppression of any property subject to a

---

[10] The first published decision in this District that undersigned counsel has located referencing filter review for attorney-client privilege was issued eight years later in 2012.

successful Rule 41 motion. Many district court judges have concluded that judicial interpretations of the pre-amendment Rule, which often required, *inter alia*, a showing of irreparable harm, do not apply post-amendment. *See, e.g., Carpenter*, 2015 WL 3510300, at *7; *Doane v. United States*, No. 08-MAG-0017, 2009 WL 1619642, at *8 (S.D.N.Y. June 5, 2009); *In re Application of Madison*, 687 F. Supp. 2d 103, 109–10 (E.D.N.Y. 2009); *United States v. Lamplugh*, 956 F. Supp. 1204, 1207 (M.D. Pa. 1997); *United States v. E. Side Ophthalmology*, No. 95-MAG-2424, 1996 WL 384891, at *4 (S.D.N.Y. July 9, 1996). While other courts have continued to require a showing of irreparable harm, the Movant respectfully submits that such decisions fail to adequately account for the 1989 amendment to Rule 41, or the Rule's facial language that does not require irreparable harm.

    E.    <u>*Movant has established irreparable harm and the balance of equities clearly weighs in his favor*</u>.

To the extent it is required, Movant has firmly established irreparable harm. The government's argument on this point is entirely circular, in that it depends upon the merits position that the marital communications privilege does not apply at the investigatory stage. *See* Govt. Motion at 14 ("The harm the marital communications privilege shields against is disclosure of marital confidences in court proceedings, which plainly has not materialized yet."). The government argument on this point is unconvincing for all the reasons set forth *supra* and in the Court's Order. Indeed, as the Court noted, "[t]he harm against which the privilege protects is unconsented intrusion into a confidential sphere, not any harm that the particular information disclosed may cause." Order at 7. As the Court correctly observed:

> The privilege's protection of the marital relationship is destroyed—and the privilege holder is harmed—when the government compels one spouse to disclose their private communications in service of a criminal investigation, regardless of

whether the communications are later used as evidence. "The very idea" of such government intrusion "is repulsive to the notions of privacy surrounding the marriage relationship." Subsequent exclusion of privileged communications from evidence does not repair the harm to marital privacy caused by compelled disclosure.

Order at 16 (internal citations omitted).[11] The government's discussion of a supposed alternative remedy facially emphasizes that no such remedy is assured. *See* Govt. Motion at 14 ("[T]he remedy at law available to Intervenor—exclusion of privileged communications—will be available to him <u>if</u> the government eventually charges him with a crime, brings him to trial, and seeks to introduce privileged materials at such proceedings." (emphasis in original)); Order at 17 (observing that Movant will have no redress if charges are not brought).[12]

On the other side of the balance, the harm asserted by the government from having to undertake filter review of marital communications is significantly overblown. Requiring filter review of spousal communications imposes only a "modest" burden on the government. Order at 17. "As illustrated by the widespread use of such a protocol to protect the attorney-client

---

[11] To be clear, Movant does not seek suppression in this matter. Indeed, a large subset of the communications subject to the Court's Order likely will have nothing whatsoever to do with the government investigation and, accordingly, suppression is beside the point.

[12] The government continues to misconstrue the Ninth Circuit's opinion in *United States v. Griffin*, 440 F.3d 1138 (9th Cir. 2006). Govt. Motion at 10. As Movant has already explained, *see* Reply to Government's Opp'n to Def.'s Motion to Enjoin Search at 11-12, in *Griffin*, the district court ordered disclosure of only those letters that were not protected by the attorney-client privilege or work-product doctrine. Accordingly, the finding of irreparable harm supporting immediate appeal was based solely and exclusively upon the claimed violation of the marital communications privilege. The government's attempt to distinguish *In re Sealed Search Warrant*, 11 F.4th 1235, 1247 (11th Cir. 2021) as "inapposite" merely "because it involved potential government review of 'improperly seized documents protected by privilege,'" Govt. Motion at 15 n.17, similarly falls flat. The documents were only improperly seized because they were privileged, just like the marital communications at issue here.

privilege, the government is equipped to filter out privileged spousal communications." *Id.* Indeed, as Movant previously noted, the government has agreed in several cases to employ such a filter review. *See* Reply to Government's Opp'n to Def.'s Mot. to Enjoin Search at 8-9 (citing cases).[13] And, the government is wrong in suggesting that the Court's Order would require filter reviews for spousal privilege whenever "investigators conduct search warrants on . . . electronic devices, electronic accounts . . . , residences, businesses, vehicles, belongings (e.g., luggage, bags, packages, wallets), mail, and/or persons." Govt. Motion at 17. Not every seizure contains confidential communications between spouses, and a filter review is only required when the privilege is asserted.

In the end, though, whatever challenge is posed by a filter review, the government has no choice but to undertake the task when the privilege has been asserted. That is the cost of the privilege, which the Supreme Court has specifically held to be justified by the benefits. *See Wolfle*, 291 U.S. at 14.

## IV.    **Conclusion.**

Wherefore, for the foregoing reasons, the Movant respectfully submits the Government's Motion for Reconsideration should be denied.

---

[13] As to these cases, the government professes that it "does not know whether spousal communications were even of interest to investigators before a defendant requested that they be sent to a filter . . . ." Govt. Motion at 16 n.19. That claim does not withstand scrutiny. For example, *United States v. Cummings*, No. 17-CR-518, 2019 WL 9240240, at *1 (D. Ariz. Dec. 12, 2019), was a prosecution of a husband and wife charged with conspiring together to commit social securities fraud and to receive stolen public money. It is difficult to imagine that, in this context, the communications between the two defendants may not "even" have been "of interest to investigators." *See also United States v. Aguilar*, 831 F. Supp. 2d 1180 (C.D. Cal. 2011).

Respectfully Submitted,  
Nowel Milik,  
By His Attorney,

Respectfully Submitted,  
Nowel Milik,  
By His Attorney,

**/s/ Robert M. Goldstein**  
Robert M. Goldstein, Esq.  
BBO# 630584  
20 Park Plaza, Suite 1000  
Boston, MA 02116  
(617) 742-9015  
rmg@goldstein-lawfirm.com

**/s/ Michael Pabian**  
Michael Pabian, Esq.  
BBO# 684589  
20 Park Plaza, Suite 1000  
Boston, MA 02116  
(617) 227-3700  
pabianlaw38@gmail.com

Dated: January 9, 2026

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby certify that on this date, January 9, 2026, a copy of the foregoing document has been served via electronic mail on counsel for the government.

**/s/ Robert M. Goldstein**  
Robert M. Goldstein, Esq.