UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  | ) | |
| --- | --- | --- |
|  | ) | |
|  | ) | |
| IN RE SEARCH OF THE PREMISES | ) | Case No. 25-mc-91442-LTS |
| IN CALIFORNIA | ) | |
|  | ) | |
|  | ) | |
|  | ) | |

ORDER ON MOTION FOR RECONSIDERATION (DOC. NO. 21)

March 20, 2026

SOROKIN, J.

The government asks the Court to reconsider its order enjoining the warrant-authorized search of Target's electronic devices as to confidential marital communications. Doc. No. 21. After careful consideration, and with recognition of both the importance of this issue and the legal landscape's opacity, the motion for reconsideration is DENIED.

## I. BACKGROUND

The Court presumes familiarity with the facts and analysis underlying its prior order. See Doc. No. 13.

The parties fully briefed Target's motion to enjoin the search of Target's marital communications, Doc. Nos. 3, 4, 6, and the Court heard argument on November 12, 2025, Doc. No. 10. On November 21, the Court issued an order granting Target's request. Doc. No. 13. The Court declined to enter the injunction until after the parties provided their positions as to certain implications of the decision. Id. at 20. The Court ordered the government to abstain from reviewing the challenged communications as it had voluntarily done to date. Id.; see also Doc. No. 22 (ordering maintenance of status quo while motion for reconsideration is pending).

On December 19, 2025, the government moved for reconsideration. Doc. No. 21. Target opposed, Doc. No. 22, and the government did not file a reply or seek leave to do so. The Court now resolves the motion on the papers.

## II. LEGAL STANDARD

Reconsideration is appropriate under limited circumstances—if (1) the movant "presents newly discovered evidence," (2) "there has been an intervening change in the law," or (3) the movant "can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Cintron, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)). The government raises only the third basis for reconsideration—that the Court's original decision was "based on a manifest error of law [and] was clearly unjust." Doc. No. 21. "The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation modified); accord 11 Wright & Miller's Federal Practice & Procedure § 2810.1 (3d ed. 2025). "Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Palmer, 465 F.3d at 30 (citation modified).

## III. DISCUSSION

The Court's original analysis was driven by foundational principles established by the United States Supreme Court. Doc. No. 13 at 4–7, 19. The Supreme Court has disapproved the compelled disclosure of confidential marital communications for investigative use when the privilege is timely asserted. Blau v. United States, 340 U.S. 332, 334 (1951). It has defined the privilege's essential function as "protect[ing] information privately disclosed" between spouses "in the confidence of the marital relationship." Trammel v. United States, 445 U.S. 40, 51

(1980).  It has concluded that the "protection of marital confidences" is "so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails," <u>Wolfle v. United States</u>, 291 U.S. 7, 14 (1934), such that the privilege may be asserted during grand jury investigations, <u>Blau</u>, 340 U.S. at 334.  And the Supreme Court has ruled that, when a grand jury's subpoena power threatens to violate a privilege, "[j]udicial supervision is properly exercised . . . to prevent the wrong before it occurs." <u>United States v. Calandra</u>, 414 U.S. 338, 346 (1974).

In its motion to reconsider, the government does not meaningfully engage with any of these principles.  Instead, its arguments largely boil down to the same ones that were considered, discussed, and ultimately rejected by the Court in its original order.  The Court stands by its original decision.  Below, the Court addresses the handful of contentions that are newly raised or that apply a new gloss to prior ones, and it explains why none of these arguments persuade the Court that reconsideration is required.

A.     <u>Attorney-Client Privilege Comparison</u>

The Court's original order analogized the marital communications privilege to the attorney-client privilege; although the two privileges are not identical, the Court found no principled basis to treat the marital communications privilege differently under these circumstances.  Doc. No. 13 at 7–9, 12.  The government asserts that this analogy was error. Doc. No. 21 at 9–12.  Yet it articulates no persuasive basis to distinguish between the privileges <u>for present purposes</u>—that is, why the attorney-client privilege may be asserted in response to a search warrant, but the marital communications privilege may not.[1]

---

[1] The government does not argue that the attorney-client privilege may not be asserted in response to a search warrant or that courts lack authority to order a filter-team review to protect the attorney-client privilege.

First, the government claims that the attorney-client privilege is "an independent Rule of Evidence" codified in Federal Rule of Evidence 502, as distinguished from the other common-law privileges recognized in Rule 501. Doc. No. 21 at 9. Not so. Rule 502 merely sets out the circumstances in which the attorney-client privilege is waived by disclosure; it "makes no attempt to alter federal or state law on whether a communication or information is protected under the attorney-client privilege or work-product immunity as an initial matter," nor does it "purport to supplant applicable waiver doctrine generally." Fed. R. Evid. 502, explanatory note (2007). Rule 501 provides that the federal common law, "as interpreted by United States courts in the light of reason and experience," governs privilege claims unless the Constitution, a federal statute, or other rules provide otherwise. Fed. R. Evid. 501. Both the attorney-client privilege and the marital communications privilege are common-law privileges within the meaning of Rule 501. See, e.g., Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998); United States v. Breton, 740 F.3d 1, 9–10 (1st Cir. 2014). Rule 502 does not provide a basis to treat the privileges differently here.

Second, the government points out that "courts have identified multiple scenarios in which inter-spousal communications are not confidential (and thus, not privileged), even if transmitted directly from one spouse to the other in the absence of any third party." Doc. No. 21 at 9. But many of these cases simply clarify that the privilege is, by definition, limited to confidential marital communications. See, e.g., United States v. Hamilton, 701 F.3d 404, 407–09 (4th Cir. 2012) (holding communications not confidential when sent using company email system); United States v. Roberson, 859 F.2d 1376, 1380–81 (9th Cir. 1988) (assessing whether privilege applied to statements made while couple irreconcilably separated); United States v. Hook, 781 F.2d 1166, 1173 n.11 (6th Cir. 1986) (distinguishing "acts" from "communications"

and noting former not protected by privilege).  Others set out certain exceptions to the privilege, see, e.g., Breton, 740 F.3d at 11 (recognizing "offense against spouse" exception), or acknowledge that the privilege is subject to waiver, see, e.g., United States v. Nicholas, 594 F. Supp. 2d 1116, 1124–28 (C.D. Cal. 2008).  The fact that there are exceptions to and limitations on the privilege does not distinguish it from the attorney-client privilege, which is itself "riddled with many exceptions."  United States v. Almeida, 341 F.3d 1318, 1324 (11th Cir. 2003).

Finally, the government argues that the marital communications privilege is different from the "attorney-client, priest-penitent, and physician-patient privileges" because the latter privileges "apply to specific types of relationships that are far more limited in scope and (typically) duration than the marital communications privilege," and the communications they protect are "focused on targeted objectives."  Doc. No. 21 at 11; see also Doc. No. 21 at 24.  At bottom, the government here argues that the marital communications privilege imposes a higher cost on the truth-seeking function than other common-law privileges do, and that the marital privilege must be further restricted than those other privileges.  As a policy matter, this argument has some force.  But the Court deals in law, not policy.  The marital communications privilege is not "of a lower order of privilege" than other common-law privileges.  In re Grand Jury Investigation of Hugle, 754 F.2d 863, 864 (9th Cir. 1985); cf. Jaffee v. Redmond, 518 U.S. 1, 10 (1996) (likening psychotherapist-patient privilege to spousal and attorney-client privileges as all "rooted in the imperative need for confidence and trust" (quoting Trammel, 445 U.S. at 51)); Stein v. Bowman, 38 U.S. (13 Pet.) 209, 223 (1839) (privilege protects the "best solace of human existence").  The Supreme Court has concluded that the marital communications privilege's value outweighs its costs, see Wolfle, 291 U.S. at 14; Blau, 340 U.S. at 334—a conclusion of law this Court is not free to disregard.

B. <u>Marital Privilege Case Law</u>

Next, the government points to a variety of cases that refer to the marital communications privilege as "evidentiary," grapple with the admissibility of potentially privileged communications, or decline to order suppression of privileged communications and their fruits.[2] Doc. No. 21 at 12–19.  The government reads this body of case law to imply that the marital privilege has no purchase in a pre-charge investigation—if it did, the government argues, it would be surprising that none of the cases "rebukes the government and/or investigative team" for failing to screen out privileged marital communications during the investigative process.  <u>Id.</u> at 18.  The Court's original order explained why it does not draw the same inference.  Doc. No. 13 at 9–13.  Nothing in the case law cited by the government suggests that courts routinely countenance compelled disclosure of privileged marital communications for investigative use.[3]

The cited Title III cases do not compel a different conclusion.[4]  Doc. No. 21 at 14.  Those cases explain that while Title III contemplates the interception of privileged conversations, it requires that privileged conversations between spouses—like those between client and attorney—be reasonably minimized.  <u>United States v. Goffer</u>, 756 F. Supp. 2d 588, 593–94

---

[2] The government cited these cases or substantially similar ones in its initial briefing.  <u>Compare</u> Doc. No. 4 at 9–15, <u>with</u> Doc. No. 21 at 12–19.

[3] The Supreme Court's dicta in a footnote in <u>Trammel</u> is not to the contrary.  <u>Trammel</u>, 445 U.S. at 53 n.12.  The <u>Trammel</u> Court explained that nothing "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension."  <u>Id.</u> As this Court has explained, the marital communications privilege shields against compelled disclosure; voluntary cooperation by a spouse does not raise the same concerns.  In context, the <u>Trammel</u> Court's further remark that "[i]t is only the spouse's testimony in the courtroom that is prohibited" plainly refers to the spousal testimonial privilege.  <u>Trammel</u> narrowed the spousal testimonial privilege, and, by its own terms, it did not disturb the confidential marital communications privilege as set out in <u>Wolfle</u> and <u>Blau</u>.  <u>Id.</u> at 45 n.5.  The Supreme Court has since likened the marital communications privilege to the attorney-client and psychotherapist-patient privileges in that all three protect certain relationships by shielding against compelled disclosure of confidential communications made within them.  <u>Jaffee</u>, 518 U.S. at 10.

[4] The government's original opposition did not discuss Title III, though counsel for the government briefly mentioned that statute at oral argument.  <u>See</u> Doc. No. 4; Doc. No. 19 at 41.

(S.D.N.Y. 2011) (citing United States v. Hyde, 574 F.2d 856, 870 (5th Cir. 1978); United States v. Loften, 507 F. Supp. 108 (S.D.N.Y. 1981)); Drimal v. Tai, 786 F.3d 219, 224 (2d Cir. 2015). The statute provides that no otherwise-privileged communication "shall lose its privileged character" by virtue of a Title III interception. 18 U.S.C. § 2517(4). One may draw the reasonable inference that, absent this provision, lawful interception by government investigators could or would vitiate a privilege—an inference that cuts against the government's position here.

C.     Scope of Remedy

Next, the government interprets Federal Rule of Evidence 1101(d) to limit the scope of the privilege's application to the issuance of search warrants, not their execution. Doc. No. 21 at 16 & n.15.[5] Rule 1101(c) makes clear that common-law privileges "apply to all stages of a case or proceeding." Fed. R. Evid. 1101(c). The proceedings enumerated in Rule 1101(d) are those in which the rules of evidence "except for those on privilege" do not apply. The rules therefore provide that "issuing a[] . . . search warrant" is one "miscellaneous proceeding" in which the general rules of admissibility do not apply but privileges do. Fed. R. Evid. 1101(d)(3). They do not purport to offer an exhaustive list of the proceedings in which privileges apply.

Moreover, Target does not rely on Rule 1101 alone. Target invokes Rule 41(g) of the Federal Rules of Criminal Procedure, which (as the parties agreed, see Doc. No. 3 at 2; Doc. No. 4 at 7) is the mechanism through which filter-team requests are advanced and litigated. See, e.g., Application for a Warrant by Tel. or Other Reliable Elec. Means, 11 F.4th 1235, 1245 n.6 (11th Cir. 2021). Although "courts traditionally are not involved in the . . . execution" of warrants they

---

[5] The cases on which the government relies discuss only the inclusion of privileged materials in applications for search warrants—not whether a court may impose privilege-protective conditions on warrants. Doc. No. 21 at 16 (citing United States v. Carlson, 946 F. Supp. 2d 1115, 1126 (D. Or. 2013); United States v. Harding, No. 2:25-cr-00044, 2025 WL 3295130, at *7 n.9 (W.D. Pa. Nov. 26, 2025)).

issue, Doc. No. 21 at 16 n.15, a Rule 41(g) motion requests such an intervention by the court. That courts can and do impose privilege-protective conditions on the execution of search warrants, including those targeting electronic devices, appears beyond dispute.[6] The government's arguments about Rules 1101 and 41(g) do not provide a basis for reconsideration.

Finally, the government argues that the Court's remedy creates an unjust outcome. Doc. No. 21 at 23–25. This argument repackages its earlier contention that application of the marital communications privilege comes at too high a cost to the truth-seeking process. To the extent the government argues that investigatory-team review would be equally protective of the privilege as filter-team review, the Court has already rejected that argument, Doc. No. 13 at 15 n.13, and it is belied by the government's own representation that investigators "will be keen on swiftly identifying communications relevant to a criminal investigation (regardless of their privileged nature)," Doc. No. 21 at 24. Authorizing government investigators, over Target's objection, to review and use Target's confidential marital communications would vitiate the privilege as the Court has construed it. Doc. No. 13 at 19.

The government argues that the Court's order could have far-reaching implications, necessitating burdensome filter-team reviews in a wide array of cases. Doc. No. 21 at 23. The

---

[6] See, e.g., In re O'Donovan, 635 F. Supp. 3d 40, 42–46 (D. Mass. 2022) (imposing modified filter-team protocol for privileged materials); United States v. Taylor, No. 10-cr-86-P-H, 2010 WL 2924414, at *1–2 (D. Me. July 16, 2010) (imposing filter-team process on emails seized pursuant to search warrant and adding sua sponte "certain additional protections for the benefit of the defendant"); In re Sealed Search Warrant & Application for a Warrant, No. 20-mj-03278, 2020 WL 5658721, at *1 (S.D. Fla. Sep. 23, 2020) (noting that magistrate judge had imposed attorney-client filter review protocol as attachment to search warrant); United States v. Avenatti, 559 F. Supp. 3d 274, 281–85 (S.D.N.Y. 2021) (noting that district judge had "approved [the use of a 'filter team'] in the warrant" and remarking that "use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications" (citation modified) (collecting cases)); United States v. Vepuri, 585 F. Supp. 3d 760, 763–65 (E.D. Pa. 2021) (imposing filter-team protocol); see also Doc. No. 13 at 7–9.

government—at least in this District—presently conducts investigations and reviews material seized pursuant to search warrants without imposing restrictions on investigators' use of confidential marital communications.[7] No doubt, if a filter team is required whenever the target of a search warrant makes a good-faith assertion of the marital communications privilege, such a requirement would impose a burden on government agents and attorneys.[8] But that is work the government must do if required by law.

What the Court has done in this case, as it does in every case, is evaluate and resolve the legal issues raised by the parties on the facts presented. The Court does not resolve cases not before it, and its order does not require an overhaul of the government's investigatory procedures. Other district judges or the Court of Appeals might reach a contrary conclusion when presented with the question. As the Court's prior order recognized, the law of the marital communications privilege is something less than crystal clear, see Doc. No. 13 at 9–13,[9] and the issues presented in this case may be ripe for considered appellate review. See 18 U.S.C. § 3731.

---

[7] The DOJ Justice Manual details filter-team procedures to protect other privileges but does not mention the marital communications privilege. U.S. Dep't of Just., Just. Manual § 9-13.420 (Jan. 2025) (detailing procedures to protect attorney-client privilege during execution of search warrant); id. § 9-19.220 (detailing procedures for obtaining evidence from "disinterested third party [who] is a physician, lawyer, or clergyman"). But see Doc. No. 13 at 13 n.11 (collecting cases involving filter protocol for confidential marital communications); Gretchen C.F. Shappert & Christopher J. Costantini, Recent Case Law Developments Involving the Crime–Fraud Exception: The Attorney–Client Privilege, Filter Team Protocols, and Other Privileges, DOJ J. Fed. L. & Prac., May 2021, at 289, 335 (noting that "[a]s with the attorney–client or work product privilege, a filter team protocol may be necessary to review materials seized or subpoenaed that may be subject to a privilege" and citing case involving marital privilege).

[8] The government also asserts that it and the Court currently "operate in a vacuum as to whether any of the spousal communications are in fact privileged." Doc. No. 21 at 7 n.1. But this is not a case in which the existence of confidential marital communications is purely speculative. Target has asserted the privilege through counsel, and nothing before the Court suggests this assertion was made in bad faith. In any event, the filter-team process (including, as needed, judicial review) will reveal whether all, some, or none of the communications are "in fact" privileged.

[9] Although no case cited by the government is directly contrary to the Court's original order, many cases discuss the privilege in terms that imply it would not apply in the present

For all the reasons explained in its prior order—particularly the rulings of the United States Supreme Court, <u>see</u> Doc. No. 13 at 4–5, 14–19—as well as those elaborated herein, the Court stands by its decision.  Recognizing both this issue's importance and the legal landscape's opacity, however, the Court is inclined to stay its order pending the government's determination whether to pursue an appeal.  It seeks the parties' input on that and other matters below.

IV.     <u>CONCLUSION</u>

The government's motion for reconsideration (Doc. No. 21) is DENIED.

By April 3, 2026, the parties shall file a joint status report setting out their joint or separate positions as to: (1) whether the Court should unseal its merits orders, (2) whether the Court should stay its order pending the government's decision whether to pursue an appeal, (3) the terms of the order the Court should issue whenever it takes effect, and (4) whether the Court should extend the one-year review period established by the search warrant.  As to the first two issues, the Court is inclined to unseal its orders and to temporarily stay its decision.  The Court's injunction will not take effect at least until the Court issues an order responding to the parties' joint status report.  In the interim, the parties shall maintain the status quo.

SO ORDERED.

      /s/ Leo T. Sorokin
United States District Judge

---

circumstances.  <u>See, e.g.</u>, <u>Nicholas</u>, 594 F. Supp. 2d at 1124.  The case law also largely has not applied the privilege to order the government to screen communications over which the target asserts the marital communications privilege.  <u>But see</u> <u>Matter of Search of Info. Associated With "Staceypromrenke@gmail.com" Located at Google, Inc.</u>, No. 1:16-mj-00073, 2016 WL 9752136, at *2–4 (W.D. Va. June 21, 2016); <u>cf.</u> <u>United States v. Griffin</u>, 440 F.3d 1138, 1144 (9th Cir. 2006) (citing <u>SEC v. Lavin</u>, 111 F.3d 921 (D.C. Cir. 1997)).